**UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA**

_____
                                )
JENSINE ANDRESEN,               )
                                )
              Plaintiff,        )
                                )
         v.                     ) Civil Action No. 15-446 (EGS)
                                )
INTEPROS FEDERAL, INC.,         )
                                )
              Defendant.        )
_____)

### MEMORANDUM OPINION

   Dr. Jensine Andresen brings this lawsuit against defendant IntePros Federal, Inc. Dr. Andresen asserts various federal and District of Columbia statutory claims, including claims under the Age Discrimination in Employment Act of 1967; Title VII of the Civil Rights Act of 1964; the Fair Labor Standards Act; the District of Columbia Human Rights Act; and the District of Columbia Wage Payment and Collection Law. Pending before the Court is IntePros' renewed motion to compel arbitration and to stay this litigation pending arbitration. Upon consideration of the motion, the response and reply thereto, the parties' supplemental filings, the applicable law, and the entire record, the Court **GRANTS** IntePros' renewed motion to compel arbitration and **STAYS** this action during the pendency of the arbitration. IntePros will be responsible for arbitral fees and expenses in the manner specified herein.

## I.    Background

On June 13, 2013, Dr. Andresen entered into a written
contract with IntePros entitled "Sub Contractor Agreement IT
Consulting" ("the Agreement"), wherein Dr. Andresen contracted
with IntePros to perform work on a government contract with
TRICARE Management Activity, which has since become the Defense
Health Agency ("DHA"). Am. Compl., ECF No. 10-1 ¶ 13; Sub
Contractor Agreement IT Consulting ("Agreement"), Ex. 2, ECF No.
12-1. The Agreement contains an arbitration clause that reads in
full:

> Any and all disputes, controversies and claims
> arising out of or relating to this Agreement
> or concerning the respective rights or
> obligation [sic] hereunder of the parties
> hereto shall be settled and determined by
> arbitration before the Commercial Panel of the
> American Arbitration Association in
> accordance with the Commercial Arbitration
> Rules. The arbitrators shall have the power to
> award specific performance or injunctive
> relief and reasonable attorneys' fees and
> expenses to any party in any such arbitration.
> However, in any arbitration proceeding arising
> under this Agreement, the arbitrators shall
> not have the power to change, modify or alter
> any express condition, term or provision
> hereof, and to that extent the scope of their
> authority is limited. The arbitration award
> shall be final and binding upon the parties
> and judgment thereon may be entered in any
> court having jurisdiction thereof.

Agreement, Provision 9(f), Ex. 2, ECF No. 12-1 at 4. Dr.
Andresen worked for IntePros pursuant to the Agreement as an
"Information Technology Analyst I" at DHA until she was

2

terminated on June 16, 2014. Am. Compl., ECF No. 10-1 ¶¶ 15, 174.

On March 26, 2015, Dr. Andresen filed a complaint against IntePros in this Court alleging age discrimination, sex discrimination, unlawful retaliation, and failure to pay overtime compensation. Compl., ECF No. 1 ¶¶ 204-31. IntePros subsequently filed a motion to compel arbitration. Def.'s Mot. to Compel Arbitration, ECF No. 5. Prior to the Court resolving that motion, on November 25, 2015, Dr. Andresen filed a motion to amend the complaint, seeking to add two additional claims of unlawful termination. *See* Mot. to Amend Compl., ECF No. 10. IntePros opposed the motion to amend the complaint and filed a renewed motion to compel arbitration. *See* Def.'s Renewed Mot. to Compel Arbitration, ECF No. 11; Def.'s Mem. in Supp. of Renewed Mot. to Compel Arbitration and Opp. to Mot. to Amend Compl. ("Def.'s Mem. Supp."), ECF No. 12. The parties briefed the motion to amend and the renewed motion to compel arbitration. *See* Def.'s Mem. Supp., ECF No. 12; Pl.'s Opp. to Renewed Mot. to Compel Arbitration and Reply to Opp. to Mot. to Amend Compl. ("Pl.'s Opp."), ECF No. 13; Def.'s Reply, ECF No. 15. On March 29, 2016, the Court granted Dr. Andresen's motion to amend her complaint and, in light of the renewed motion to compel arbitration, denied as moot IntePros' initial motion to compel arbitration. *See* Minute Entry of March 29, 2016. Upon review of

3

the parties' briefing of IntePros' renewed motion, the Court concluded that supplemental briefing would greatly aid in the resolution of that motion.[1] Having received that supplemental briefing, IntePros' renewed motion is ready for adjudication.

## II.  Standard of Review

A motion to compel arbitration is examined under the summary judgment standard of Federal Rule of Civil Procedure 56(c), as if it were "'a request for summary disposition of the issue of whether or not there had been a meeting of the minds on the agreement to arbitrate.'" *Mercadante v. XE Servs., LLC*, 78 F. Supp. 3d 131, 136 (D.D.C. 2015) (quoting *Aliron Int'l, Inc. v. Cherokee Nation Indus., Inc.*, 531 F.3d 863, 865 (D.C. Cir. 2008)). Under Rule 56(c), summary judgment is appropriate only if "'there is no genuine issue as to any material fact and . . . the moving party is entitled to a judgment as a matter of law.'" *Id.* (quoting *Aliron Int'l*, 531 F.3d at 865). "'The party seeking

---

[1] The Court directed the parties to respond to the following: "(1) whether *Cole v. Burns Int'l Sec. Servs.*, 105 F.3d 1465 (D.C. Cir. 1997) announces a per se rule invalidating employee-employer arbitration agreements that permit arbitral fee- and cost-sharing, and, if it does, whether that rule applies in the context of a challenge to a delegation provision in light of *Green Tree Fin. Corp.-Ala. v. Randolph*, 531 U.S. 79 (2000), and (2) assuming the multi-factor analysis contemplated by *Green Tree* applies to the challenge to the delegation provision in this case, brief Dr. Andresen's likelihood of incurring burdensome expenses that would prohibit her from vindicating her statutory claims in an arbitral forum." Minute Entry of September 14, 2016.

to compel arbitration must present evidence sufficient to demonstrate an enforceable agreement to arbitrate.'" *Id.* (quoting *Haire v. Smith, Currie & Hancock LLP*, 925 F. Supp. 2d 126, 129 (D.D.C. 2013)). "The burden then shifts to plaintiffs to show that there is a genuine issue of material fact as to the making of the agreement." *Id.* (internal quotation marks omitted). "The Court will compel arbitration if the pleadings and the evidence show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." *Id.* (internal quotation marks omitted).

## III. Analysis

Congress enacted the Federal Arbitration Act ("FAA") to counteract "widespread judicial hostility to arbitration." *Am. Express Co. v. Italian Colors Rest.*, 133 S. Ct. 2304, 2308-09 (2013). Section 2 is "the primary substantive provision of the [FAA]." *Moses H. Cone Mem'l Hosp. v. Mercury Constr. Corp.*, 460 U.S. 1, 24 (1983). It provides that "[a] written provision in . . . a contract evidencing a transaction involving commerce to settle by arbitration a controversy thereafter arising out of such contract . . . shall be valid, irrevocable, and enforceable, save upon such grounds as exist at law or in equity for the revocation of any contract." 9 U.S.C. § 2. The FAA "also establishes procedures by which federal courts implement § 2's substantive rule." *Rent-A-Center, West, Inc. v. Jackson*, 561

U.S. 63, 68 (2010). "Under § 3, a party may apply to a federal court for a stay of the trial of an action 'upon any issue referable to arbitration under an agreement in writing for such arbitration.'" *Id.* (quoting 9 U.S.C. § 3). "Under § 4, a party 'aggrieved' by the failure of another party 'to arbitrate under a written agreement for arbitration' may petition a federal court 'for an order directing that such arbitration proceed in the manner provided for in such agreement.'" *Id.* (quoting 9 U.S.C. § 4).

The "question whether the parties have submitted a particular dispute to arbitration"——that is, the gateway "question of arbitrability"——is usually "an issue for judicial determination." *Howsam v. Dean Witter Reynolds, Inc.*, 537 U.S. 79, 83 (2002) (internal quotation marks omitted). That usual rule is upended, however, when the parties "clearly and unmistakably" agree that the question of arbitrability should be reserved for arbitral resolution. *Id.* A written agreement memorializing the parties' agreement to arbitrate the threshold question of arbitrability has come to be known as a "delegation provision." *See Rent-A-Center*, 561 U.S. at 68. A delegation provision "is simply an additional, antecedent agreement the party seeking arbitration asks the federal court to enforce, and the FAA operates on this additional arbitration agreement just as it does on any other." *Id.* at 70.

6

Thus, when a valid and enforceable delegation provision is in place, a court is prohibited from reaching the gateway question of arbitrability and must reserve that question for arbitral resolution. *See id.*; *Howard v. Rent-A-Center, Inc.*, No. 10-103, 2010 WL 3009515, at *3 (E.D. Tenn. July 28, 2010) ("If the court concludes the parties intended such a delegation and concludes that delegation is enforceable, the court must compel arbitration on issues relating to arbitrability along with the underlying dispute."). However, when a delegation provision is invalid or unenforceable, that opens the door for judicial resolution of the question of arbitrability. Thus "before an arbitrator can determine the question of arbitrability, the Court must consider any challenges to the validity of the delegation provision." *Mercadante*, 78 F. Supp. 3d at 137. If the challenges of a party opposed to arbitration are directed at the "primary" arbitration clause generally——as opposed to being directed at the delegation provision specifically——the delegation provision must be treated as valid and enforceable and, accordingly, the question of arbitrability must be reserved for an arbitrator. *Rent-A-Center*, 561 U.S. at 72. Thus, in sum, where a primary arbitration clause and a delegation provision are both in place, a party opposed to arbitration must overcome two hurdles to entirely avoid arbitration: (1) She must demonstrate that the delegation provision, separate and apart

7

from the primary arbitration clause, is invalid or unenforceable such that the threshold question of arbitrability should be subject to judicial, rather than arbitral, resolution; and, once she has cleared that first hurdle, (2) she must demonstrate that the primary arbitration clause is invalid or unenforceable such that the merits question——that is, the underlying substantive claims——should be subject to judicial, rather than arbitral, resolution.

Here, Dr. Andresen does not dispute that the Agreement includes a delegation provision. *See* Pl.'s Opp., ECF No. 13 at 3. The first sentence of the Agreement's arbitration clause states that "[a]ny and all disputes, controversies and claims arising out of or relating to this Agreement or concerning the respective rights or obligation [sic] hereunder of the parties hereto shall be settled and determined by arbitration before the Commercial Panel of the American Arbitration Association in accordance with the Commercial Arbitration Rules." Agreement, Provision 9(f), Ex. 2, ECF No. 12-1 at 4. The parties agree that the arbitration clause's incorporation of the American Arbitration Association ("AAA") rules——which, in turn, empower an arbitrator to rule on the question of arbitrability, *see* AAA Commercial Arbitration Rules and Mediation Procedures (effective

October 1, 2013), Rule 7[2]——constitutes clear and unmistakable
evidence that they intended to delegate the question of
arbitrability to an arbitrator. Def.'s Mem. Supp., ECF No. 12 at
4-6; Pl.'s Opp., ECF No. 13 at 3. "While the D.C. Circuit has
not addressed the issue, courts both within and outside this
jurisdiction have held that an arbitration clause adopting the
rules of the AAA makes the issue of arbitrability one for the
arbitrator, not the court." *W & T Travel Servs., LLC v. Priority
One Servs., Inc.*, 69 F. Supp. 3d 158, 167-68 (D.D.C. 2014)
(collecting cases). Thus, the parties are on solid ground in
agreeing that their Agreement includes a delegation provision
that delegates the question of arbitrability to an arbitrator.

---

[2] Both parties appear to rely upon the current version of the AAA
Commercial Arbitration Rules that became effective October 1,
2013 rather than the previous version, applicable at the time
that they entered the Agreement in June 2013, that were
effective as of June 1, 2009. *See, e.g.*, Def.'s Reply, ECF No.
15 at 2 (citing AAA Commercial Arbitration Rule 47 as pertaining
to apportionment of fees; Rule 47 under the October 2013 Rules
concerns the apportionment of fees, whereas the analogous Rule
under the June 2009 Rules is Rule 43); AAA Commercial
Arbitration Rules and Mediation Procedures, (effective October
1, 2013), Rules 47-57, Ex. 3, ECF No. 18-1 at 1-4. The Rules
relevant to this case do not appear to have undergone any
meaningful substantive changes, so the Court will follow the
parties' lead in relying upon the Rules that became effective
October 1, 2013. The parties also both rely upon the
Administrative Fee Schedules of the AAA Commercial Arbitration
Rules that became effective July 1, 2016. *See* AAA Commercial
Arbitration Rules and Mediation Procedures, Administrative Fee
Schedules, (effective July 1, 2016), Ex. 1, ECF No. 18-1 at 1-3;
Def.'s Suppl. Br., ECF No. 16 at 18. Because the parties agree
that those July 2016 fee schedules are the operative ones, the
Court applies them.

Seeking to avoid arbitration of her claims despite the Agreement's delegation provision and primary arbitration clause, Dr. Andresen launches the requisite two-step attack: She first argues that the delegation provision is unenforceable such that the question of arbitrability is subject to judicial resolution, *see* Pl.'s Opp., ECF No. 13 at 3-5; Pl.'s Suppl. Br., ECF No. 17 at 2-13, and then, assuming that she has prevailed on that argument, she argues that the arbitration clause is unenforceable such that her substantive claims are subject to judicial resolution. *See* Pl.'s Opp., ECF No. 13 at 6-9. The Court can only reach the second prong of this attack if Dr. Andresen prevails on the first.

As to that first prong, Dr. Andresen argues that the delegation provision is unenforceable under the effective vindication of statutory rights doctrine of the federal common law. First, she states that the arbitration clause here contains no express statement regarding the allocation of arbitral expenses and fees, "making the AAA rules controlling authority for the arbitrator's compensation and other arbitration fees." Pl.'s Opp., ECF No. 13 at 4.[3] She asserts that those Rules

---

[3] Contrary to Dr. Andresen's position, the arbitration clause here *does* have an express statement regarding fees and expenses: "The arbitrators shall have the power to award . . . reasonable attorneys' fees and expenses to any party in any such arbitration." Agreement, Provision 9(f), Ex. 2, ECF No. 12-1 at 4. But the discretion given to the arbitrator by this express

provide that the "'arbitrator may apportion such fees, expenses and compensation among the parties in such amounts as the arbitrator deems appropriate.'" *Id.* at 4-5 (quoting AAA Commercial Arbitration Rules and Mediation Procedures, Rule 47).[4] Relying on *Cole v. Burns International Security Services*, 105 F.3d 1465, 1483-86 (D.C. Cir. 1997), she argues that the possibility that she might have to pay some portion of arbitral fees and expenses to resolve the threshold question of arbitrability runs afoul of *Cole*'s per se prohibition of an employee having "to pay any of the arbitrator's fees when pursuing federal statutory claims." Pl.'s Opp., ECF No. 13 at 3-5; *see also* Pl.'s Suppl. Br., ECF No. 17 at 2-3. She further argues that *Cole*'s per se rule remains viable——at least where federal statutory claims in the employer-employee context are concerned——after *Green Tree Financial Corp.-Alabama v. Randolph*, 531 U.S. 79 (2000). *See* Pl.'s Suppl. Br., ECF No. 17 at 3-9. In *Green Tree*, the Supreme Court rejected a cost-prohibitiveness

---

provision does not appear to differ from the same discretion called for by the incorporated AAA Commercial Arbitration Rules, so the fact that Dr. Andresen has overlooked this express term does not impact the relevant analysis.

[4] Dr. Andresen conveys the proper substance of the Rule but the actual wording is as follows: "The arbitrator may apportion such fees, expenses, and compensation among the parties in such amounts as the arbitrator determines is appropriate." AAA Commercial Arbitration Rules and Mediation Procedures, (effective October 1, 2013), Rule 47(c), Ex. 3, ECF No. 18-1 at 2.

unenforceability challenge to an arbitration clause in a case involving a claim under the federal Truth in Lending Act, announcing that "where . . . a party seeks to invalidate an arbitration agreement on the ground that arbitration would be prohibitively expensive, that party bears the burden of showing the likelihood of incurring such costs." 531 U.S. at 92. Second, Dr. Andresen argues that even if *Cole*'s per se rule does not apply in this case, she has carried her burden under *Green Tree* of demonstrating that arbitrating arbitrability would be prohibitively expensive. Pl.'s Suppl. Br., ECF No. 17 at 9-13. The Court turns now to an assessment of these arguments.

**A.** *Cole* **Announced a Per Se Rule Prohibiting Arbitral Fee-Sharing Between an Employee and an Employer But, Assuming that Per Se Rule Remains Viable, It Does Not Apply in the Context of a Challenge to a Delegation Provision**

In *Cole*, an employee had filed a Title VII discrimination claim against his employer, and the employer sought to compel arbitration under an arbitration agreement between the parties. 105 F.3d at 1467. The arbitration agreement was silent when it came to who would pay the arbitrator's fees and thus contemplated that the employee would have to shoulder some share of arbitral expenses. *See id.* at 1485. "The court reasoned that requiring an employee to pay arbitration fees, other than 'reasonable costs' analogous to federal court 'filing fees and other administrative expenses,' would be 'prohibitively

12

expensive' and deter the employee from 'pursu[ing] his statutory claims.'" *Fox v. Comput. World Servs. Corp.*, 920 F. Supp. 2d 90, 100-01 (D.D.C. 2013) (quoting *Cole*, 105 F.3d at 1484). Accordingly, the court was only willing to find the arbitration agreement valid and enforceable as to the Title VII claim by reading it as allocating all of the costs of arbitration to the employer, in turn giving rise to a per se rule invalidating arbitration agreements that require an employee "to pay all or part of the arbitrator's fees and expenses." *See* 105 F.3d at 1485. Thus, the court held, "an employee can never be required, as a condition of employment, to pay an arbitrator's compensation in order to secure the resolution of statutory claims." *Id.* at 1468.

There is little doubt that *Cole* announced a per se rule that arbitration agreements that contemplate an employee paying arbitral expenses other than those analogous to federal court filing fees and administrative expenses are unenforceable unless the arbitrator's fees are paid by the employer. *See Bradford v. Rockwell Semiconductor Sys., Inc.*, 238 F.3d 549, 554 (4th Cir. 2001) (describing *Cole* as announcing a per se rule); *Fox*, 920 F. Supp. 2d at 101 (same); *Toledano v. O'Connor*, 501 F. Supp. 2d 127, 148 (D.D.C. 2007) (same); *Nelson v. Insignia/Esg, Inc.*, 215 F. Supp. 2d 143, 154 (D.D.C. 2002) (same). But the Supreme Court's post-*Cole* decision in *Green Tree* puts *Cole*'s per se rule

under serious strain. In *Green Tree*, the Court considered whether an arbitration agreement that was silent as to arbitration costs and fees was unenforceable as to a federal statutory claim because the agreement failed to affirmatively protect a party from potentially steep arbitration costs. 531 U.S. at 82. The Court held that the agreement was not unenforceable on the ground that the "risk" of prohibitive costs was "too speculative" to justify invalidation of the arbitration agreement. *Id.* at 91. Thus, the Court concluded, when "a party seeks to invalidate an arbitration agreement on the ground that arbitration would be prohibitively expensive, that party bears the burden of showing the likelihood of incurring such costs." *Id.* at 92.

This Court is not the first to recognize that, in light of *Green Tree*, "which eschews any per se ban on fee shifting in the arbitral context," *Cole*'s per se rule is "on shaky ground." *See Shatteen v. Omni Hotels Mgmt. Corp.*, 113 F. Supp. 3d 176, 182 n.3 (D.D.C. 2015). The D.C. Circuit has not definitively pronounced *Cole*'s per se rule a dead letter, but "[f]ollowing the *Green Tree* decision, [it] has placed limits on the per se application of its holding in *Cole*." *Nelson*, 215 F. Supp. 2d at 155. In *Brown v. Wheat First Securities, Inc.*, 257 F.3d 821 (D.C. Cir. 2001), the Circuit Court "assume[d]" that *Green Tree* "leaves *Cole* fully intact" but still concluded that *Cole*'s per

14

se invalidation rule did not extend to the context of common law claims in large part because the "opinion in *Cole* is limited at vital points to statutory rights." 257 F.3d at 824-26. In *LaPrade v. Kidder, Peabody & Co., Inc.*, 246 F.3d 702 (D.C. Cir. 2001), the Circuit Court, in the course of upholding an arbitration award requiring an employee "to pay a portion of the forum fees for arbitration of her statutory and non-statutory claims against her former employer," 246 F.3d at 704, indicated that non-federal statutory claims were beyond the purview of *Cole*'s per se rule. *See id.* at 708; *see also Nelson*, 215 F. Supp. 2d at 156-57. And even when a plaintiff has asserted federal statutory claims, courts in this jurisdiction, post-*Green Tree*, have been reluctant to apply *Cole*'s per se rule. *See, e.g., Shatteen*, 113 F. Supp. 3d at 182 & n.3 (recognizing the "shaky ground" on which *Cole*'s per se rule now rests and refusing to apply it in the context of an employee's claim under the Family Medical Leave Act of 1993); *Toledano*, 501 F. Supp. 2d at 148 (recognizing that the "continuing vitality of *Cole*'s 'per se' rule . . . is in some doubt" and refusing to apply it "in light of *Green Tree*" outside the employer-employee context even though the plaintiff had asserted federal statutory claims).

The teaching of these post-*Green Tree* cases is that even if *Green Tree* leaves a per se rule from *Cole* "fully intact," *Brown*, 257 F.3d at 824, what is left intact is a per se rule exactly as

15

it applied under *Cole*'s facts: that requiring an (1) <u>employee</u> to
pay part or all of the arbitral expenses that would not
otherwise arise in the judicial context and that arise from the
arbitration of (2) <u>federal statutory claims</u> makes (3) *<u>a primary
arbitration agreement</u>* unenforceable as to those federal
statutory claims. Here, Dr. Andresen was an employee of IntePros[5]
and certain of her claims are federal statutory claims but,
critically, she seeks to apply *Cole*'s per se rule to the context
of a delegation provision. Although a delegation provision is a
type of arbitration agreement, *see Rent-A-Center*, 561 U.S. at
70, it is subtly different from a primary arbitration clause——of
the sort at issue in *Cole*——that mandates the arbitration of
substantive claims. *See id.* at 72 n.3 (explaining that the
primary agreement to arbitrate substantive claims is severable
from an agreement to arbitrate arbitrability). Although it might
seem like the Court is splitting hairs here, not applying *Cole*'s
per se rule in the context of a challenge to a delegation
provision specifically——as opposed to in the context of a
challenge to a primary arbitration clause——is consistent with
the post-*Green Tree* reluctance of both the D.C. Circuit and

---

[5] To the extent that Dr. Andresen was an independent contractor,
*see* Agreement, Provision 8, Ex. 2, ECF No. 12-1 at 3-4, her
status vis-à-vis IntePros is sufficiently analogous to the
status of the employee in *Cole* vis-à-vis his employer to
categorize Dr. Andresen as an "employee" as that term was
understood in *Cole*.

District Courts in this Circuit to expand whatever remains of
*Cole*'s per se rule beyond its original reach.

Dr. Andresen's arguments to the contrary are unavailing.
Dr. Andresen suggests that *Green Tree* should not be understood
to compel a narrow construal of *Cole*'s per se rule because *Green
Tree* concerned federal statutory claims outside of the employer-
employee context and that employer-employee context was so
central to the decision in *Cole*. *See* Pl.'s Suppl. Br., ECF No.
17 at 4. This argument is unpersuasive, however, because the
D.C. Circuit decisions strongly counseling narrow construal of
*Cole*'s per se rule in light of *Green Tree* involved claims made
in the employer-employee context. *See, e.g.*, *Brown*, 257 F.3d at
823 ("Appellant Ronald Brown was employed by the Washington,
D.C. office of Wheat First Securities . . . ."); *LaPrade*, 246
F.3d at 704 ("Linda E. LaPrade appeals the confirmation of an
arbitration award requiring her to pay a portion of the forum
fees for arbitration of her statutory and non-statutory claims
against her former employer.").

Dr. Andresen also argues that she is seeking to enforce, at
least in part, her federal statutory rights and courts to-date
have only narrowly construed the reach of *Cole*'s per se rule to
forbid that rule from applying in the context of non-federal
statutory and common law claims. *See* Pl.'s Suppl. Br., ECF No.
17 at 4-6. But Dr. Andresen's line of reasoning here overlooks

17

the cases where plaintiffs made federal statutory claims and *Cole*'s per se rule still did not apply, *see, e.g.*, *Shatteen*, 113 F. Supp. 3d at 182;[6] *Toledano*, 501 F. Supp. 2d at 148, and, more importantly, overlooks the broader proposition, elucidated above, that emerges from the post-*Green Tree* cases: that *Cole*'s per se rule should be applied only when the circumstances exactly match those in *Cole*. Those circumstances include a challenge to a primary arbitration clause as opposed to a challenge to a delegation provision. The Court fully recognizes that some of the rights Dr. Andresen *ultimately* seeks to enforce are federal rights and, accordingly, is unconvinced by IntePros' argument that "the discrete antecedent issue of whether the Agreement can be arbitrated is separate from the actual arbitration of [Dr. Andresen's] statutory rights." *See* Def.'s Suppl. Br., ECF No. 16 at 12. That Dr. Andresen ultimately seeks to enforce federal statutory rights does make her situation similar to the situation of the plaintiff in *Cole*. But, contrary to her assertion otherwise, *see* Pl.'s Suppl. Br., ECF No. 17 at

---

[6] Dr. Andresen argues that the arbitration agreement in *Shatteen* only required the plaintiff to pay a $125.00 filing fee and to split the cost of the first arbitral hearing day and so the agreement there did not contemplate disproportionate fee sharing and thus was consistent with *Cole*. Pl.'s Suppl. Br., ECF No. 17 at 8. But the *Shatteen* court's assessment of whether arbitration was cost-prohibitive based on the relevant facts and circumstances is the antithesis of the application of a per se rule and, instead, is consistent with the case-by-case analysis contemplated by *Green Tree*.

6 n.1, the difference between a challenge to a primary arbitration clause (as was the case in *Cole*) and a challenge to a delegation provision (as is the case here) is a difference that is dispositive in concluding that *Cole*'s per se rule should not apply in this case.

Two additional considerations bolster the Court's conclusion here. First, *Cole*'s per se rule was grounded in a concern that "prohibitively expensive" arbitration costs would deter an employee from "pursu[ing] his statutory claims." *See* 105 F.3d at 1484. Such prohibitive costs are less likely to arise in the relatively straightforward context of arbitrating arbitrability than in the context of arbitrating the underlying "more complex and fact-related aspects of the alleged employment discrimination." *See Rent-A-Center*, 561 U.S. at 74. Thus *Cole*'s concern with not deterring employment discrimination claims will not likely be frustrated over the run of cases by not extending whatever remains of *Cole*'s per se rule to a challenge to a delegation provision. Second, the Court is guided by the well-established principle that "'any doubts concerning the scope of arbitrable issues should be resolved in favor of arbitration.'" *Dowley v. Dewey Ballantine, LLP*, No. 05-622, 2006 WL 1102768, at *2 (D.D.C. Apr. 26, 2006) (quoting *Moses H. Cone Mem'l Hosp.*, 460 U.S. at 24-25). In light of that principle, any doubts the Court has about the reach of *Cole*'s per se rule should be

resolved by narrowly construing that rule. Accordingly, for all of these reasons, *Cole*'s per se rule does not apply in the context of Dr. Andresen's challenge to the Agreement's delegation provision.[7]

> **B.   The Delegation Provision is Enforceable as to Dr. Andresen's District of Columbia Statutory Claims But, Under *Green Tree*, the Delegation Provision is Unenforceable as to Her Federal Statutory Claims**

Having concluded that whatever remains of *Cole*'s per se rule does not apply in the context of a challenge to a delegation provision, the Court turns to assessing whether Dr. Andresen carries her burden under *Green Tree* of demonstrating that arbitrating arbitrability would be prohibitively expensive, thereby frustrating the effective vindication of her statutory rights. *See* 531 U.S. at 92. At the outset, the Court notes that whether or not the *Green Tree* analysis applies in the context of a cost-prohibitiveness challenge to a delegation provision where Dr. Andresen's claims under *federal* statutes are concerned, the *Green Tree* analysis is foreclosed where her claims under *District of Columbia* statutes——which are "akin to state

---

[7] Even if *Cole*'s per se rule could be understood to apply in the context of a challenge to a delegation provision where federal statutory claims are at issue, it still would not apply in the context of Dr. Andresen's District of Columbia statutory claims. *See Nelson*, 215 F. Supp. 2d at 157 ("[T]he per se invalidation rule announced in *Cole* does not apply to this case since only District of Columbia statutory and common law claims are being pursued.").

statutes," *Nelson*, 215 F. Supp. 2d at 157 n.12——are concerned. To be sure, in the past District Courts in this Circuit have taken conflicting approaches when deciding whether effective vindication of statutory rights doctrine——of which *Green Tree* is a part——applies in the context of state and District of Columbia law claims. *Compare Toledano*, 501 F. Supp. 2d at 147, 150 & n.8 (refusing to apply the *Green Tree* analysis in the context of state law claims but applying it to federal statutory claims because "the two types of claims implicate different bodies of legal precedent"), *with Fox*, 920 F. Supp. 2d at 101-02 (applying *Green Tree* in the context of District of Columbia statutory and common law claims). And in *Booker v. Robert Half International, Inc.*, 413 F.3d 77 (D.C. Cir. 2005), the D.C. Circuit applied effective vindication doctrine in the context of a District of Columbia statutory claim. *See* 413 F.3d at 79-86. But *Booker* was decided before *AT&T Mobility LLC v. Concepcion*, 563 U.S. 333 (2011), where the Supreme Court impliedly clarified that effective vindication doctrine does not apply where state law is concerned. *See Italian Colors*, 133 S. Ct. at 2319-20 (explaining that *AT&T Mobility* held that the FAA preempted a state law conditioning enforcement of arbitration on the availability of class procedure but did not cite the Court's effective vindication precedents because "*AT&T Mobility* involved a *state* law, and therefore could not possibly implicate the effective-

vindication rule.") (Kagan, J., dissenting); *see also Torres v. CleanNet, U.S.A, Inc.*, 90 F. Supp. 3d 369, 378 & n.6 (E.D. Pa. 2015) (distinguishing *Booker* because it pre-dated *AT&T Mobility* and Justice Kagan's explanation of *AT&T Mobility*'s implication and holding that effective vindication doctrine does not apply where state statutes are concerned). Accordingly, an effective vindication analysis under *Green* Tree is inapposite where Dr. Andresen's District of Columbia statutory claims are concerned. The delegation provision as to those claims is thus enforceable.

Having determined that *Green Tree*, as part of the effective vindication doctrine, can only apply where federal statutory claims are concerned, the Court must next determine whether *Green Tree* applies in the context of a challenge to a delegation provision even when the underlying claims are federal ones. IntePros argues that the analysis under *Green Tree* is inapplicable in the context of a challenge to a delegation provision. *See* Def.'s Suppl. Br., ECF No. 16 at 13-15; Def.'s Suppl. Reply Br., ECF No. 19 at 6-7. It argues that the *Green Tree* analysis "only applies . . . where a party is *directly* seeking to vindicate statutory rights." Def.'s Suppl. Br., ECF No. 16 at 13-14 (emphasis added). In other words, IntePros' position is that the *Green Tree* analysis only applies when the challenge is to a primary arbitration clause as opposed to a delegation provision. Because an effective vindication of

statutory rights argument under *Green Tree* is foreclosed in the delegation provision context, IntePros reasons, the only cost-prohibitiveness argument available to Dr. Andresen is one sounding in the doctrine of state law substantive unconscionability and she failed to make any such argument. *See id.* at 14-15.

The Court is not convinced that the *Green Tree* analysis is inapposite where the underlying claims are federal statutory ones and the cost-prohibitiveness challenge is posed to a delegation provision. IntePros has not pointed to a case where a court has held that the *Green Tree* analysis is foreclosed where a plaintiff has made federal statutory claims and has mounted a challenge to a delegation provision,[8] and the small amount of

_____

[8] IntePros points to *Mercadante* as supporting the conclusion that *Green Tree* only applies when a challenge is made to a primary arbitration clause, as opposed to when a challenge is made to a delegation provision. *See* Def.'s Suppl. Reply Br., ECF No. 19 at 7. In that case, the plaintiffs had asserted state common law and federal statutory claims and one of their challenges to the delegation provision at issue was cost-prohibitiveness stemming from the arbitration agreement's shifting of attorneys' fees and expenses from the defendants to the plaintiffs. 78 F. Supp. 3d at 133, 143-44. According to IntePros, that the court there did not apply——or even mention——*Green Tree* even though there were federal statutory claims and the plaintiffs had asserted a cost-prohibitiveness challenge to a delegation provision indicates that the *Green Tree* analysis is inapposite in the context of a delegation provision. *See* Def.'s Suppl. Reply Br., ECF No. 19 at 7. But the reason the *Mercadante* court did not apply *Green Tree* seems to be because the plaintiffs there did not rely on it under a federal common law effective vindication of statutory rights theory and, instead, put all of their eggs in a state law unconscionability basket. If the *Mercadante* court had meant to

relevant authority seems to suggest otherwise. *See, e.g.*, *Mohamed v. Uber Techs., Inc.*, Nos. 15-16178, 15-16181, 15-16250, 2016 WL 7470557, at *6-7 (9th Cir. Sept. 7, 2016) (indicating that application of the effective vindication of federal statutory rights doctrine in the context of a cost-prohibitiveness challenge to a delegation provision is appropriate but concluding that such application was unnecessary given that the defendant had promised to pay the full costs of arbitration).[9]

The Court is also not convinced by IntePros' reasoning that when the issue is merely arbitrability the connection to statutory rights is too attenuated to implicate the effective

---

suggest that the *Green Tree* analysis is foreclosed in the context of a challenge to a delegation provision, it likely would have said so explicitly.

[9] Although IntePros does not rely upon *Italian Colors* in its argument that *Green Tree* does not apply in the context of a delegation provision, the Court notes that even if IntePros had made such an argument the Court would have found it unavailing. As noted by the Ninth Circuit when it indicated that it would apply effective vindication doctrine in the context of a delegation provision, in *Italian Colors* the Supreme Court acknowledged that effective vindication may "'cover filing and administrative fees attached to arbitration that are so high as to make access to the forum impracticable.'" *Mohamed*, 2016 WL 7470557, at *6 (quoting *Italian Colors*, 133 S. Ct. at 2310-11). Filing and administrative fees that are so high that they bar access to arbitrating arbitrability have the same effect as fees that are so high that they bar access to arbitrating substantive claims. It follows, then, that *Green Tree* is applicable in the context of a challenge to a delegation provision just as much as it is applicable in the context of a challenge to a primary arbitration clause.

vindication of federal statutory rights doctrine and the analysis under *Green Tree* that is part of that doctrine. Even when the question at issue is the antecedent question of arbitrability, federal statutory rights are still implicated when a plaintiff has asserted federal statutory claims; the federal statutory rights are just one step removed, so to speak, when the issue is the question of arbitrability. Accordingly, it is appropriate to apply the *Green Tree* analysis to Dr. Andresen's cost-prohibitiveness challenge to the delegation provision as concerns her federal statutory claims.[10]

---

[10] The Court is of the view that it is doctrinally consistent not to apply *Cole*'s per se rule in the context of a challenge to a delegation provision but to apply the *Green Tree* analysis in that same context. Although the Court recognizes that both *Cole* and *Green Tree* are part of the federal common law doctrine of effective vindication of statutory rights, their differing treatment seems warranted for two reasons. First, part of the rationale for the per se rule in *Cole* was a fear that arbitral expenses would deter the bringing of federal employment discrimination claims over the run of cases. *See* 105 F.3d at 1484. As already explained, that fear is lessened in the context of arbitrating arbitrability as compared to the context of arbitrating substantive claims. *See supra* Part III.A. That difference has bolstered the Court's conclusion that even if a per se rule could apply in the context of a challenge to a primary arbitration clause, a per se rule should not apply in the context of a challenge to a delegation provision. *See id.* The *Green Tree* Court, unlike the *Cole* court, did not heavily rely on a deterrence-of-claims rationale and, instead, explained that "even claims arising under a statute designed to further important social policies may be arbitrated." *See* 531 U.S. at 90. Thus there does not appear to be the same opening to distinguish the primary arbitration clause and delegation provision contexts when it comes to the *Green Tree* analysis. Second, *Cole* has been subject to a consistent treatment of narrow construal by both the D.C. Circuit and other District

*Green Tree* requires that "where . . . a party seeks to invalidate an arbitration agreement on the ground that arbitration would be prohibitively expensive, that party bears the burden of showing the likelihood of incurring such costs." 531 U.S. at 92. "The majority of courts that have had occasion to apply *Green Tree*'s burden-shifting approach to claims of prohibitively expensive arbitration fees have . . . adopted a case-by-case analysis." *Toledano*, 501 F. Supp. 2d at 148; *see also Dowley*, 2006 WL 1102768, at *6; *Nelson*, 215 F. Supp. 2d at 155. This case-specific inquiry "focuses, among other things, upon the claimant's ability to pay the arbitration fees and costs, the expected cost differential between arbitration and litigation in court, and whether that cost differential is so substantial as to deter the bringing of claims." *Bradford*, 238 F.3d at 556.

Dr. Andresen has adequately demonstrated that arbitrating arbitrability as to her federal statutory claims would be cost-prohibitive for her.[11] In her complaint, Dr. Andresen seeks

---

Courts in this Circuit since *Green Tree* was decided. That continued whittling of *Cole*'s reach counsels extreme caution when applying *Cole*'s per se rule. No similar caution seems warranted where *Green Tree* is concerned.

[11] Along with her supplemental brief requested by the Court, Dr. Andresen filed various exhibits to support her assertion that arbitrating arbitrability would be prohibitively expensive. One of those exhibits is her Financial Status Declaration. *See* Financial Status Decl., Ex. 4, ECF No. 18-1 at 1-4. Subsequent to the filing of IntePros' supplemental reply brief, Dr.

$300,000 in compensatory damages, in addition to unpaid overtime wages, liquidated damages, double back pay, interest on lost wages, punitive damages, and attorneys' fees and costs. Am Comp., ECF No. 10-1 at 113. Her claim amount thus appears to fall in the $300,000 to $500,000 range, which calls for a $4,000 initial arbitration filing fee and a $3,500 final fee under the applicable AAA Commercial Arbitration Rules. AAA Commercial Arbitration Rules and Mediation Procedures, Administrative Fee Schedules, (effective July 1, 2016), Ex. 1, ECF No. 18-1 at 1. Thus arbitral filing fees alone sum to $7,500. The filing fee in this court is $400. Fee Schedule, Ex. 8, ECF No. 18-1 at 1. The total arbitral filing fee in this case thus is just a shade under *19 times* more expensive than the judicial filing fee.

---

Andresen filed a motion for leave to submit a Supplemental Financial Status Declaration. *See* Pl.'s Mot. for Leave to Submit Suppl. Financial Status Decl., ECF No. 21. IntePros argues that the Court should not consider Dr. Andresen's supplemental declaration because it was not sworn or signed under penalty of perjury. Def.'s Opp. to Mot. for Leave to Submit Suppl. Financial Status Decl., ECF No. 22 at 1-4. In light of these deficiencies, the Court **DENIES** Dr. Andresen's motion for leave to file and will not consider her supplemental declaration. *See Malik v. Equifax Info. Servs., LLC*, No. 16-10477, 2016 WL 3900829, at *5 n.6 (E.D. Mich. July 19, 2016) (explaining that although the court "accepted" the plaintiff's declaration that was unsworn and not signed under penalty of perjury when ruling on a motion to compel arbitration, it "was not required to do so" because "[t]he standard for resolution of a motion to compel arbitration is the summary-judgment standard, and an unsworn affidavit cannot be used to support or oppose a motion for summary judgment") (internal quotation marks and alteration omitted).

Total arbitral cost must, however, also account for the arbitrator's compensation. IntePros suggests that an arbitrator might demand $400 per hour, *see* Def.'s Suppl. Br., ECF No. 16 at 18, and Dr. Andresen, relying on the AAA Consumer Arbitration Rules, suggests that an arbitrator serving on a case with a hearing would demand $1,500 per day and that an arbitrator serving on a case with a desk arbitration would demand $750 for the whole case. AAA Consumer Arbitration Rules, Costs of Arbitration, (effective January 1, 2016), Ex. 2, ECF No. 18-1 at 2.[12] Even assuming the very low estimate of $750 is accurate, arbitral compensation plus filing fees sum to $8,200. Additional fees——hearing room rental fees, AAA Commercial Arbitration Rules and Mediation Procedures, Administrative Fee Schedules, (effective July 1, 2016), Ex. 1, ECF No. 18-1 at 2, and travel and other expenses of the arbitrator, AAA Commercial Rules and Mediation Procedures, (effective October 1, 2013), Rule 54, Ex. 3, ECF No. 18-1 at 3-4——must be added on top. Thus, at a very

---

[12] Even though the parties' arbitration agreement incorporates the AAA Commercial Arbitration Rules, Dr. Andresen relies on the compensation scheme under the AAA Consumer Arbitration Rules as her best estimate of compensation rates because the Commercial Arbitration Rules do not specify compensation rates and instead call for each arbitrator to be compensated at his or her "stated rate of compensation." *See* Pl.'s Suppl. Br., ECF No. 17 at 7 n.2. There is every reason to think that the arbitrator's fee under the *Consumer* Arbitration Rules are lower than the rates that are typical under the *Commercial* Arbitration Rules that are applicable in this case.

conservative *minimum*, arbitral fees and expenses in this case
are $8,200.

But acknowledging that a minimum of $8,200 in expenses that
would not arise in the judicial context will arise in the
arbitral context does not end the Court's analysis; it is
necessary to measure a possible share of this cost against Dr.
Andresen's ability to pay. *See Bradford*, 238 F.3d at 556.
Between credit cards and her mortgage, Dr. Andresen has
$379,780.14 in debt, Financial Status Decl., Ex. 4, ECF No. 18-1
at 1, and her recurrent monthly expenses total $2,780.62.[13] *Id.*
She is currently making $3,791.14 per month after taxes, and has
$5,043.10 in savings and checking accounts and $70,706.84 in
retirement accounts. *Id.* at 1-2. She also has a condominium in
Washington, D.C.——from which she moved upon accepting her
current job in New York——listed for sale at $439,000. *Id.* at 1-
2; Zillow Listing, Ex. C, ECF No. 19-3 at 1.

That Dr. Andresen is currently earning a monthly income
that marginally exceeds her monthly outlays, has some money in
savings and retirement accounts, and has a real property asset
that——if there is a willing buyer——might offset her debt does
not convince the Court that a share of at least $8,200 in

---

[13] Dr. Andresen included $1,468.52 in monthly mortgage payments
in her monthly expenses, but that mortgage debt has already been
accounted for in her total debt calculation.

arbitral expenses would not be cost-prohibitive. It appears that Dr. Andresen, thankfully, is not completely destitute. But to prevail on the cost-prohibitiveness analysis under *Green Tree* does not require a party to prove abject poverty. Instead, it only requires a party to demonstrate, under all the facts and circumstances, "prohibitive expense." *Green Tree*, 531 U.S. at 92. Dr. Andresen has demonstrated that she has to pay rent, pay a mortgage, pay credit card debt, and pay for utilities, while relying on a modest monthly salary and modest savings and retirement accounts. Anyone who has ever been in her shoes can attest that a potential multi-thousand dollar expense is prohibitive. To demand that someone sell her one valuable asset and run the risk of depleting her savings and dipping into her modest retirement funds as the price of merely determining whether her federal discrimination, retaliation, and unpaid wages claims should be subject to judicial or arbitral resolution is, quite simply, preposterous.

None of IntePros' arguments otherwise are convincing. First, IntePros alleges that Dr. Andresen has not sufficiently established the total costs of arbitration. Def.'s Suppl. Reply Br., ECF No. 19 at 8-9. Not so. Dr. Andresen does not need to *exactly* specify the costs of arbitration and, in any event, the undisputed $7,500 filing fee, standing alone, is more than

sufficient to demonstrate cost-prohibitiveness when measured
against Dr. Andresen's modest financial circumstances.

Second, IntePros argues that because the arbitrator
ultimately gets to allocate arbitral fees and expenses and can
allocate those fees and expenses in interim or interlocutory
orders, any claim of cost-prohibitiveness is foreclosed at the
outset as too speculative. Def.'s Reply, ECF No. 15 at 2-3;
Def.'s Suppl. Br., ECF No. 16 at 17; Def.'s Suppl. Reply Br.,
ECF No. 19 at 9-10. *Fox* adopted just such a line of argument,
reasoning that "[s]ince the Agreement gives the arbitrator
discretion to apportion the arbitrator's fees between the
parties, Fox's speculation regarding the costs that he might
incur from the arbitration is insufficient to render it
unenforceable." 920 F. Supp. 2d at 102. Although it is true that
a party's "mere speculation" about how an arbitrator might
interpret or apply an arbitration agreement is not enough to
demonstrate cost-prohibitiveness, *see Booker*, 413 F.3d at 81,
there is no such speculation here and, accordingly, this Court
parts ways with *Fox*. The parties agree that under the Agreement
and under the incorporated AAA Commercial Arbitration Rules the
arbitrator would be allowed to allocate fees and expenses as he
or she deems appropriate in an interim or interlocutory order
and as part of the final award. *See* Pl.'s Opp., ECF No. 13 at 4-
5; Def.'s Suppl. Br., ECF No. 16 at 17. Even so, Dr. Andresen

31

would be forced to immediately front the $4,000 filing fee just to get her foot in the arbitral door. *See* AAA Commercial Arbitration Rules and Mediation Procedures, (effective October 1, 2013), Rule 53, Ex. 3, ECF No. 18-1 at 3 ("The filing fee shall be advanced by the party or parties making a claim or counterclaim, subject to final apportionment by the arbitrator in the award."). And, given that arbitration is expeditious—a reality that IntePros itself emphasizes, *see* Def.'s Suppl. Br., ECF No. 16 at 16 (explaining that a party chooses arbitration to benefit from "simplicity, informality, and expedition") (internal quotation marks omitted)—an arbitral hearing would likely soon follow on the heels of Dr. Andresen's payment of the $4,000 filing fee. But the mere scheduling of that hearing would require Dr. Andresen to advance the additional $3,500 final fee. *See* Commercial Arbitration Rules and Mediation Procedures, Administrative Fee Schedules, (effective July 1, 2016), Ex. 1, ECF No. 18-1 at 2 ("The Final Fee . . . is payable in advance at the time the first hearing is scheduled."). There is thus no speculation that Dr. Andresen will have to advance, at a minimum, $4,000—but, more likely, $7,500—as soon as she proceeds to arbitration and, all the while, have her fingers crossed that she gets any of that money back at some point during the arbitration or when all is said and done. In short, even assuming that Dr. Andresen's condominium is sold and the

proceeds are enough to offset her sizable debt, there is no speculation that it is cost-prohibitive for someone making $3,791.14 per month with monthly outlays of $2,780.62 and just over $5,000 in the bank and modest retirement savings to advance $4,000 to $7,500 in an arbitration.

Third, IntePros argues that finding arbitration cost-prohibitive now would be unfair because when Dr. Andresen's relationship with IntePros concluded in June 2014, Dr. Andresen had the financial means to pay the expenses of arbitration. Def.'s Suppl. Reply Br., ECF No. 19 at 11-12. Although IntePros can point to cases where courts have weighted a party's "financial condition when the contract was formed or during the intervening time when [it] was eligible to file for arbitration" more heavily than its "present financial condition" in the cost-prohibitiveness analysis, *see, e.g.*, *Zumpano v. Omnipoint Commc'ns*, No. 00-595, 2001 WL 43781, at *11 (E.D. Pa. Jan. 18, 2001), this Court is of the view that that approach is misguided and that the better approach is to assess a party's "*current* ability to pay." *Toledano*, 501 F. Supp. 2d at 149 (citing *Bradford*, 238 F.3d at 558 n.7). The last thing a typical person is going to be thinking about at the time of contract formation is asserting federal statutory claims, and even when someone becomes "eligible" to file for arbitration, it often takes some time for that person to assess her options and to decide how to

33

proceed. Accordingly, looking to present financial condition makes the most sense. IntePros' assertion that looking to Dr. Andresen's current strained financial situation will incentivize others to wait to file claims at the time of a "preferred, tactical financial situation," *see* Def.'s Suppl. Reply Br., ECF No. 19 at 11, is totally unconvincing. It strains credulity to think that someone would purposely subject himself to financial strain in order to potentially avoid the costs of arbitration in the future.

Fourth, IntePros points to *Koridze v. Fannie Mae Corp.*, 593 F. Supp. 2d 863 (E.D. Va. 2009) to support the position that Dr. Andresen's "current financial condition is insufficient to make a showing of inability to pay any arbitration costs and fees." Def.'s Suppl. Reply Br., ECF No. 19 at 12-13. In *Koridze*, even though the plaintiff had demonstrated that, among other indicia of financial strain, she was unemployed and was not receiving an income, had minimal bank account and retirement funds, had over $3,000 in monthly expenses, had negligible equity in her condominium, and was supporting her children and extended family, the court held she had not demonstrated cost-prohibitiveness because, in part, she had the "ability to obtain gainful employment" and had "exemplary employment qualifications." 593 F. Supp. 2d at 869-70. IntePros reasons that because Dr. Andresen is in better financial shape than the

plaintiff in *Koridze* and, like the plaintiff in *Koridze*, has educational and employment qualifications, it follows that Dr. Andresen fails to demonstrate cost-prohibitiveness. Not so. This Court parts ways with *Koridze*'s suggestion that a hypothetical possibility of a better financial future forecloses a demonstration of cost-prohibitiveness. An assessment of "the claimant's *ability* to pay the arbitration fees and costs," *Bradford*, 238 F.3d at 556 (emphasis added), must mean a claimant's *present and actual* ability to pay arbitral fees and costs because the effective vindication doctrine places a premium on avoiding "speculative" assessments. *See Green Tree*, 531 U.S. at 91; *Booker*, 413 F.3d at 81. Accordingly, what income Dr. Andresen *might* make given her credentials is of little moment in this analysis. In any event, what the *Koridze* court found "most important[ ]" in its own analysis was that the plaintiff there had not provided any evidence of the baseline cost of litigation. *See* 593 F. Supp. 2d at 870-71. Here, Dr. Andresen has demonstrated that the filing fee in this Court is $400 and that she would have to advance at a minimum $4,000 and, more likely, $7,500 in the arbitral forum. That discrepancy, standing alone, is sufficient to demonstrate that arbitrating arbitrability is cost-prohibitive.

Fifth, IntePros argues that the Court should give little weight to Dr. Andresen's Financial Status Declaration. Def.'s

Suppl. Reply Br., ECF No. 19 at 13-16. It first asserts that, as
a general rule, unsupported declarations should be afforded
little weight in this context. *Id.* at 13-14. But that argument
ignores that courts do indeed rely on such declarations when
considering cost-prohibitiveness. *See, e.g.*, *Nesbitt v. FCNH,
Inc.*, 74 F. Supp. 3d 1366, 1374 (D. Colo. 2014), *aff'd*, 811 F.3d
371 (10th Cir. 2016) ("Ms. Nesbitt has filed an affidavit
establishing that she cannot afford the costs of proceeding
under the Commercial Rules."). IntePros then argues that Dr.
Andresen failed to indicate in her Declaration that she has a
Washington, D.C. condominium listed for sale at $439,000 and
that she has failed to explain why she has not rented that
condominium if she is not living in it. Def.'s Supply Reply Br.,
ECF No. 19 at 14-16. But the virtue of a burden-shifting
framework is that it has given IntePros the opportunity "to come
forward with contrary evidence" to try to demonstrate that
arbitral "expenses are not, in fact, prohibitive," *Nelson*, 215
F. Supp. 2d at 157 (internal quotation marks and alteration
omitted), and, by bringing Dr. Andresen's condominium to the
Court's attention, IntePros has done well to take advantage of
that opportunity. But what IntePros has presented does not lead
the Court to waiver in its conclusion that the costs of
arbitrating arbitrability would be cost-prohibitive for Dr.
Andresen. Regarding possible rent, Dr. Andresen did not start

her current job in New Yok until July 2016, *see* Financial Status
Decl., Ex. 4, ECF No. 18-1 at 1, so, assuming she were able to
obtain a tenant, given the limited amount of time that elapsed
between June 2016 and the filing of her Declaration in October
2016, it does not appear that her financial situation would have
markedly changed due to any rent received during that period.
Regarding the sale of the condominium, assuming that a sale were
to occur, the proceeds would essentially offset her debt of
approximately $380,000, leaving her to rely on about $5,000 in
savings and modest retirement funds to advance a $4,000 to
$7,500 arbitral filing fee. Again, even if Dr. Andresen has not
been reduced to abject poverty, the arbitral costs here are
prohibitive. Accordingly, given this cost-prohibitiveness, the
delegation provision is unenforceable as to Dr. Andresen's
federal statutory claims.

> **C.**   **The Delegation Provision is Made Enforceable as to Dr.
> Andresen's Federal Statutory Claims by Severing the
> Offensive Cost- and Fee-Shifting Provisions
> in the Agreement by Allocating to IntePros the Costs
> of Arbitrating Arbitrability as to the Federal
> Statutory Claims**

Having concluded that the delegation provision is
unenforceable as to Dr. Andresen's federal statutory claims, the
Court cannot necessarily proceed to answering the question of
arbitrability as concerns those claims. A delegation provision,
after all, is just a specific version of an arbitration

37

agreement. *See Rent-A-Center*, 561 U.S. at 70. And when a primary arbitration agreement is deemed unenforceable as written, the subsequent question a court must answer is whether to "decline to enforce the agreement and allow the statutory claims to proceed in court, or sever the offensive provision and require arbitration under the remainder of the agreement[.]" *Booker*, 413 F.3d at 79. Accordingly, when a delegation provision is deemed unenforceable as written, the subsequent question a court must answer is whether to decline to enforce the delegation provision and allow the question of arbitrability to proceed in court, or sever the offensive portion of the delegation provision and require the parties to arbitrate arbitrability under what remains of the delegation provision.

"When an arbitration agreement contains invalid terms but the overarching contract has a severability clause, the FAA requires that we turn to state law to determine whether the contract's severability clause may be used to remove the offending terms in the arbitration agreement." *Bodine v. Cook's Pest Control Inc.*, 830 F.3d 1320, 1325 (11th Cir. 2016); *see Booker*, 413 F.3d at 83 (noting that District of Columbia law permits courts "to sever provisions in violation of public policy, while enforcing the remainder of the agreement"). If the severability clause is enforceable under the relevant state law, "any invalid provisions in the arbitration agreement are

severable." *Bodine*, 830 F.3d at 1325 (internal quotation marks and alteration omitted).

Here, the Agreement contains the following severability clause: "The provisions of this Agreement and the covenants herein contained shall be construed independently of each other, it being the express intent of the parties hereto that the obligation of, and restrictions on, the parties as provided herein shall be enforced and given effect to the fullest extent legally permissible." Agreement, Provision 9(d), Ex. 2, ECF No. 12-1 at 4. To determine whether this severability clause can be given effect, the Court turns to Virginia law because the Agreement specifies that it "shall be governed by and construed in accordance with the laws of the State in which the services are provided hereunder," Agreement, Provision 9(e), Ex. 2, ECF No. 12-1 at 4, and Dr. Andresen performed her services in Virginia. *See* Am. Compl., ECF No. 10-1 ¶¶ 13-14. Under Virginia law, the parties' intent controls. *See Schuiling v. Harris*, 286 Va. 187, 192-93 (2013). Here, the ordinary meaning of the severability provision indicates their intent to permit the severance of offensive provisions. *See id.* at 194 (explaining that the parties intended to permit the severance of offensive provisions because of "the severability provision itself"); *Bodine*, 830 F.3d at 1328 ("[T]he Contract contains an express severability provision, applicable to all portions of the

Contract, reflecting the parties' clear intent to remove any invalid or unenforceable terms and apply the remainder."); *Booker*, 413 F.3d at 85 ("By invoking the severability clause to remove a discrete remedial provision, the district court honored the intent of the parties . . . ."). The arbitration clause here does state that "in any arbitration proceeding arising under this Agreement, the arbitrators shall not have the power to change, modify or alter any express condition, term or provision hereof." Agreement, Provision 9(f), Ex. 2, ECF No. 12-1 at 4. But that provision has the effect of forbidding the *arbitrators* from severing or otherwise modifying the delegation provision, arbitration clause, or any other portion of the Agreement and, when read against the severability clause in Provision 9(d), only underscores the parties' intent to permit a court of competent jurisdiction to sever unenforceable provisions.

Additionally, arbitration clauses are generally struck entirely when, rather than "one readily severable illegal provision," they are "instead pervasively infected with illegality." *Booker*, 413 F.3d at 84. Here, the only portion of the delegation provision that is unenforceable is the express expense-shifting term and the incorporation of the provisions of the AAA Commercial Arbitration Rules that mandate exorbitant advance filing expenses and run the risk of saddling Dr. Andresen with prohibitive costs. By removing these offending

provisions, the Court can appropriately defer to the arbitrator on the question of arbitrability.

To effectuate this severance, the Court directs that IntePros cover the cost of the initial filing fee and final fee applicable in the arbitral forum, less the $400 that is analogous to the filing fee in this Court. Further, the compensation due to the arbitrator for resolving the question of arbitrability as to the federal statutory claims and the various miscellaneous fees that would not otherwise arise in the judicial context——like the arbitrator's travel expenses and hearing room rental fees——as those fees relate to the federal statutory claims shall be borne by IntePros. *See Jones v. Fujitsu Network Commc'ns, Inc.*, 81 F. Supp. 2d 688, 693 (N.D. Tex. 1999) (using a severability clause to strike an unenforceable fee-splitting provision and allocate the prohibitive arbitral fees and expenses to the employer). Having cured the delegation provision of its cost-prohibitive provision, the question of arbitrability is properly reserved for arbitral resolution.[14]

---

[14] As previously indicated, Dr. Andresen has not demonstrated that the delegation provision is unenforceable as to her District of Columbia statutory claims because she has only advanced effective vindication of statutory rights theories to challenge the delegation provision and effective vindication doctrine is inapplicable to District of Columbia statutory claims. *Supra* Part III.B. Thus there is no offensive portion of the delegation provision to remedy when it comes to her District

## IV. Conclusion

For the foregoing reasons, IntePros' renewed motion to compel arbitration is **GRANTED**, and this action is **STAYED** during the pendency of the arbitration. IntePros will be responsible for arbitral fees and expenses in the manner specified herein. If an arbitrator determines that all claims in this case are arbitrable, IntePros may at that time seek dismissal. An appropriate Order accompanies this Memorandum Opinion.

   SO ORDERED.

Signed:    **Emmet G. Sullivan**
           **United States District Judge**

---

of Columbia statutory claims. Accordingly, IntePros is not responsible for the compensation due to the arbitrator for resolving the question of arbitrability as to the District of Columbia statutory claims nor is it responsible for miscellaneous fees as they relate to the District of Columbia statutory claims. Instead, pursuant to the express expense-shifting term and the incorporated AAA Commercial Arbitration Rules, the allocation of that compensation and those fees is left to the arbitrator's discretion. Such a neat division between federal and District of Columbia statutory claims in the context of the initial filing fee and the final fee, however, does not seem to be available. That is because the filing fee is based on the monetary amount sought via the claims, not the number or type of claims. *See* AAA Commercial Arbitration Rules and Mediation Procedures, Administrative Fee Schedules, (effective July 1, 2016), Ex. 1, ECF No. 18-1 at 1. Dr. Andresen appears to be seeking $300,000 to $500,000 pursuant to all of her claims. That amount is not claim dependent. In other words, she is seeking that same amount even if she prevails only on her federal statutory claims and loses on all of her District of Columbia statutory claims. Accordingly, IntePros is responsible for the entirety of the initial filing and final fees (less $400), even if that payment incidentally covers Dr. Andresen's District of Columbia statutory claims in addition to her federal statutory claims.

February 27, 2017