**UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF COLUMBIA**

---

JENSINE ANDRESEN,

           Plaintiff,

v.                                        Civil Action No. 15-446 (EGS)

INTEPROS FEDERAL, INC.,

           Defendant.

---

**MEMORANDUM OPINION**

## I.  Introduction

Plaintiff Dr. Jensine Andresen ("Dr. Andresen"), proceeding *pro se*, brings this action against Defendant IntePros Federal, Inc. ("IntePros"). Dr. Andresen asserts various federal claims under the Age Discrimination in Employment Act of 1967 ("ADEA"), 29 U.S.C. § 621, *et seq.*; Title VII of the Civil Rights Act of 1964 ("Title VII"), 42 U.S.C. § 2000e, *et seq.*; the Fair Labor Standards Act of 1938 ("FLSA"), 29 U.S.C. § 201, *et seq.*; the National Defense Authorization Act for Fiscal Year 2013 ("2013 NDAA"), Pub. L. No. 112-239, 126 Stat. 1632 (2013); and 10 U.S.C. § 2409, a section of the 2013 NDAA that provides whistleblower protections for contractor employees, Pub. L. No. 112-239, § 827, 126 Stat. 1632, 1833-37 (2013).[1] *See* Am. Compl.,

---

[1] This statute has been renumbered from 10 U.S.C. § 2409 to 10 U.S.C. § 4701. However, the earlier version of this statute,

ECF No. 53 at 105-13 ¶¶ 469-513.[2] Dr. Andresen also advances
District of Columbia statutory claims under the District of
Columbia Human Rights Act ("DCHRA"), D.C. Code § 2-1401, *et
seq.*; and the District of Columbia Wage Payment and Collection
Law ("DCWPCL"), D.C. Code § 32-1301, *et seq. See id.* at 105-10
¶¶ 469-97. Dr. Andresen alleges that while rendering services to
IntePros as an information technology ("IT") analyst, she
suffered discriminatory and retaliatory conduct based on her
age, gender, and disclosure of certain information to the U.S.
Department of Defense Inspector General ("DoD IG"), and that she
was denied overtime pay. *Id.* at 1 ¶ 1, 3 ¶ 15.

On February 27, 2017, the Court granted IntePros' motion to
compel arbitration, stayed this action pending the conclusion of
arbitration, and referred Dr. Andresen's claims to an arbitrator
to assess their arbitrability, *see* Order, ECF No. 24 at 1;
following which an appointed arbitrator from the American
Arbitration Association ("AAA") determined that her claims were
"arbitrable in their entirety[,]" Joint Status Report, ECF No.
27 at 1. On June 6, 2019, after a telephonic hearing on the
parties' dispositive motions, the arbitrator made an award in

---

before later amendments occurred, is the relevant version to Dr.
Andresen's claims, so the Court refers to this statute under its
earlier numbering throughout this Memorandum Opinion.
[2] When citing electronic filings throughout this Memorandum
Opinion, the Court cites to the ECF header page number, not the
original page number of the filed document.

favor of IntePros that "dismissed, denied, and disallowed" all of Dr. Andresen's pending claims in this matter. Award, Ex. 2 to Def.'s Mot. to Dismiss, ECF No. 35-2 at 11. About a month later, IntePros moved to dismiss Dr. Andresen's "currently stayed claims . . . due to the completion of arbitration[,]" and it argues that "this matter is now ready for one final act: dismissal." Def.'s Mot. to Dismiss, ECF No. 35 at 1.

Pending before the Court is IntePros' motion to dismiss. *See* Def.'s Mot. to Dismiss, ECF No. 35. Also pending is Dr. Andresen's cross-motion to permit litigation of two retaliation claims in this Court, *see* Pl.'s Cross-Mot. to Permit Litigation of Two Retaliation Claims in D.C. District Ct. ("Pl.'s Cross-Mot. to Litigate"), ECF No. 38;[3] her motion for leave to file a second amended complaint ("SAC") that she alleges corrects "drafting error[s]" in the Amended Complaint pertaining to those two claims, *see* Pl.'s Mot. to File SAC, ECF No. 42 at 2-3;[4] and

---

[3] Although docketed at ECF No. 38, the briefing for Dr. Andresen's cross-motion to litigate her two retaliation claims is combined with her memorandum in opposition to IntePros' motion to dismiss, which is docketed at ECF No. 37. Therefore, the Court cites to the ECF header page number from ECF No. 37 when citing to both Dr. Andresen's cross-motion to litigate and her opposition to IntePros' motion to dismiss. *See* Pl.'s Opp'n to Def.'s Mot. to Dismiss & Cross-Mot. to Litigate Two Retaliation Claims in D.C. District Ct. ("Pl.'s Opp'n to Mot. to Dismiss & Cross-Mot. to Litigate"), ECF No. 37.

[4] Also relatedly pending before the Court is: (1) Dr. Andresen's motion requesting an extension of time to file a late reply to IntePros' opposition to her motion for leave to file a SAC, *see* Pl.'s Mot. for Extension of Time to File Reply, ECF No. 60; and

her motion to lift the stay in this matter, *see* Pl.'s Mot. to Lift Stay, ECF No. 70. In addition, Dr. Andresen has filed a motion to vacate the arbitration award, *see* Pl.'s Mot. to Vacate, ECF No. 45; and IntePros has filed a cross-motion to confirm the award, *see* Def.'s Cross-Mot. to Confirm, ECF No. 55;[5] both of which are also pending before the Court.

Upon careful consideration of the arbitration award before the AAA Commercial Tribunal, Dr. Andresen's Amended Complaint before the Court, the various pending motions and cross-motions, the oppositions and replies thereto, the applicable law, and the entire record herein, the Court **GRANTS** IntePros' motion to dismiss; **DENIES** Dr. Andresen's cross-motion to litigate her two retaliation claims in this Court; **DENIES** Dr. Andresen's motion for leave to file a SAC; **DENIES** Dr. Andresen's motion to vacate the arbitration award; and **GRANTS** IntePros' cross-motion to confirm the arbitration award. The Court therefore **DENIES** as moot Dr. Andresen's motion to lift the stay in this action.

---

(2) IntePros' opposition to Dr. Andresen's motion requesting this extension of time and cross-motion to strike her untimely reply, *see* Def.'s Opp'n to Mot. for Extension of Time & Cross-Mot. to Strike, ECF No. 58.

[5] IntePros' cross-motion for confirmation of the arbitration award, docketed at ECF No. 55, is identical to its memorandum in opposition to Dr. Andresen's motion to vacate the award, docketed at ECF No. 54. Hereinafter, the Court cites to the ECF header page number from ECF No. 55 when citing to both IntePros' opposition to Dr. Andresen's petition for vacatur and its cross-motion to confirm the arbitration award. *See* Def.'s Opp'n to Pl.'s Mot. to Vacate & Cross-Mot. to Confirm, ECF No. 55.

## II.  Background

### A. Factual Background

IntePros is a privately-owned federal contractor, based in Washington, D.C., that provides IT services to various agencies and departments of the federal government. Am. Compl., ECF No. 53 at 2 ¶ 5. On June 13, 2013, Dr. Andresen entered into a contract with IntePros, entitled "Sub Contractor Agreement IT Consulting" (the "Sub Contractor Agreement"), wherein she contracted with IntePros to perform work on a government contract with TRICARE Management Activity, which has since become the Defense Health Agency ("DHA"). *Id.* at 3 ¶ 13; *see* Sub Contractor Agreement, Ex. A, ECF No. 12-1. The Sub Contractor Agreement contains an arbitration clause that reads in full:

> Any and all disputes, controversies and claims arising out of or relating to this Agreement or concerning the respective rights or obligation[s] hereunder of the parties hereto shall be settled and determined by arbitration before the Commercial Panel of the American Arbitration Association in accordance with the Commercial Arbitration Rules. The arbitrators shall have the power to award specific performance or injunctive relief and reasonable attorneys' fees and expenses to any party in any such arbitration. However, in any arbitration proceeding arising under this Agreement, the arbitrators shall not have the power to change, modify or alter any express condition, term or provision hereof, and to that extent the scope of their authority is limited. The arbitration award shall be final and binding upon the parties and judgment thereon may be entered in any court having jurisdiction thereof.

Sub Contractor Agreement, Provision 9(f), Ex. A, ECF No. 12-1 at 6.

Dr. Andresen worked for IntePros pursuant to the Sub Contractor Agreement as an "Information Technology Analyst I" at DHA, specifically at a Department of Defense site in Falls Church, Virginia, for twelve months until she was terminated on June 16, 2014. *See* Am. Compl., ECF No. 53 at 3 ¶¶ 14-15, 39 ¶ 174; Award, Ex. 2 to Def.'s Mot. to Dismiss, ECF No. 35-2 at 2. During this time, Dr. Andresen alleges that she experienced age discrimination, sex discrimination, unlawful retaliation, denial of overtime compensation, and ultimately, unlawful termination related to "protected whistleblowing" activities she engaged in by disclosing information related to IntePros' contract with DHA to the DoD IG, among other agencies, departments, and officers of DHA and IntePros. *See, e.g.*, Am. Compl., ECF No. 53 at 81 ¶ 370, 85-90 ¶¶ 387-406, 105-13 ¶¶ 469-513.

### B. Procedural Background

#### 1. Initiation of Dr. Andresen's Suit in District Court and IntePros' Motion to Compel Arbitration

On March 26, 2015, Dr. Andresen filed the instant action. *See* Compl., ECF No. 1. Pursuant to the Sub Contractor Agreement's arbitration provision, IntePros subsequently filed a motion to compel arbitration under the Federal Arbitration Act ("FAA"), 9 U.S.C. § 1, *et seq. See* Def.'s Mot. to Compel

6

Arbitration, ECF No. 5. Prior to the Court resolving that motion, on November 25, 2015, Dr. Andresen filed a motion to amend the complaint to add two claims of unlawful termination, related to her alleged protected disclosures to the DoD IG, as Counts V and VI. *See* Pl.'s Mot. to Amend Compl., ECF No. 10; Pl.'s Mot. to Vacate, ECF No. 45 at 10. IntePros opposed this motion and filed a renewed motion to compel arbitration. *See* Def.'s Renewed Mot. to Compel Arbitration, ECF No. 11. On March 29, 2016, the Court granted Dr. Andresen's motion to amend, *see* Am. Compl., ECF No. 53; and, in light of the renewed motion to compel arbitration, denied as moot IntePros' initial motion to compel arbitration, *see* Min. Order (Mar. 29, 2016).

On February 27, 2017, the Court granted IntePros' motion to compel arbitration and ordered the parties to proceed to arbitration "for an arbitrator to determine, in the first instance, whether the claims in this action are arbitrable[,]" and it stayed the action during the pendency of the arbitration. Order, ECF No. 24 at 1; *see Andresen v. IntePros Fed., Inc.*, 240 F. Supp. 3d 143, 149-50, 163 (D.D.C. 2017) (discussing the arbitration clause's incorporation of the AAA rules and concluding that "the question of arbitrability is properly reserved for arbitral resolution").[6] The Court also ordered the

---

[6] The Court's Memorandum Opinion is docketed at ECF No. 25.

parties to file a joint status report—following an arbitrator's determination of whether Dr. Andresen's claims were arbitrable—to inform the Court whether any claims remained for the Court to address. Order, ECF No. 24 at 1. Finally, the Court noted that if the arbitrator determined that all claims in this case were arbitrable, then IntePros could "at that time seek dismissal." *Andresen*, 240 F. Supp. 3d at 163.

> **2. Early Phases of Arbitration—Limited to Assessing the Arbitrability of Dr. Andresen's Claims, and Jurisdictional, Exhaustion, and Other Preliminary Issues Regarding Those Claims**

In compliance with the Court's Order, on March 22, 2017, Dr. Andresen submitted her first demand for arbitration with the AAA, *see* Ex. 2 to Def.'s Reply to Pl.'s Opp'n to Mot. to Dismiss & Opp'n to Pl.'s Cross-Mot. to Litigate ("Def.'s Mot. to Dismiss Reply & Opp'n to Cross-Mot. to Litigate"), ECF No. 43-2 at 2; "limited to the issue of the arbitrability of [her] federal and state employment discrimination, retaliation and whistleblower charges[,]" Ex. 10 to Def.'s Mot. to Dismiss Reply & Opp'n to Cross-Mot. to Litigate, ECF No. 43-10 at 3-4.[7] On October 17, 2017, AAA arbitrator Peter F. Healey ("Arbitrator Healey")

---

[7] IntePros' reply to Dr. Andresen's opposition to its motion to dismiss and its opposition to Dr. Andresen's cross-motion to litigate her two retaliation claims in D.C. District Court is a combined filing that is docketed at both ECF Nos. 43 and 44. These filings are thus identical in substance. Hereinafter, the Court cites only to the ECF header page number from ECF No. 43 when citing to these identical documents.

issued an "Affirmative Determination of Arbitrability and
Order," in which he concluded that Dr. Andresen's "federal and
District of Columbia statutory claims [were] arbitrable in their
entirety[,]" *id.* at 10; which led Dr. Andresen to submit her
second demand in arbitration on October 25, 2017, seeking
arbitral resolution of her various state and federal claims, *see*
Ex. 3 to Def.'s Mot. to Dismiss Reply & Opp'n to Cross-Mot. to
Litigate, ECF No. 43-3 at 2. Two days later, on October 27,
2017, the parties filed a joint status report informing the
Court that the arbitrator determined that Dr. Andresen's claims
were fully arbitrable, and "[t]hus, there [were] no claims
remaining for the Court to address." Joint Status Report, ECF
No. 27 at 1. Based on this report, the Court further stayed this
action "pending the outcome of arbitration proceedings." Min.
Order (Oct. 31, 2017).

Arbitration proceeded forward, and on January 23, 2018,
Arbitrator Healey entered a discovery and scheduling order,
consented to by the parties, that bifurcated the arbitration
proceedings into two phases. Ex. 3 to Pl.'s Mot. to Vacate, ECF
No. 45-4 at 3, 6. This order limited "Phase One" of the
proceedings to "potential jurisdictional, exhaustion, and other
preliminary issues" related to Dr. Andresen's ability to
"maintain her claims as a matter of law[,]" notably whether she
should be considered IntePros' "employee," and thus eligible for

the requested statutory relief, as opposed to a statutorily ineligible "independent contractor." *Id.* at 3. The order further stated that the next phase of arbitration would commence only "if the case continue[d]" following the arbitrator's rulings on any Phase One dispositive motions. *Id.* at 3-4.

### 3. Dr. Andresen's Statement of Claims in Arbitration and Her Attempt to Later Submit a "Corrected" Version—Objected to by IntePros

Pursuant to the deadline in the scheduling order, Dr. Andresen filed her statement of claims in arbitration ("Statement of Claims") on February 2, 2018, *id.* at 4; which mirrored the Amended Complaint and its six counts, *see* Ex. 5 to Def.'s Mot. to Dismiss Reply & Opp'n to Cross-Mot. to Litigate, ECF No. 43-5 (redline comparison of the Statement of Claims to the Amended Complaint). The six counts delineated in both documents are as follows: (1) Count I, age discrimination in violation of the ADEA and the DCHRA; (2) Count II, sex discrimination in violation of Title VII and the DCHRA; (3) Count III, retaliation in violation of the ADEA, Title VII, and the DCHRA; (4) Count IV, denial of overtime compensation in violation of the FLSA and the DCWPCL; (5) Count V, unlawful termination in violation of the 2013 NDAA; and (6) Count VI, unlawful termination in violation of 10 U.S.C. § 2409. *See id.* at 120-32 ¶¶ 468-513. However, on April 18, 2018, following Dr. Andresen filing a motion to withdraw her claims under the DCHRA

10

and the DCWPCL, Arbitrator Healey entered a consent order

dismissing her D.C. statutory claims with prejudice. Ex. 1 to

Def.'s Mot. to Dismiss, ECF No. 35-1 at 2; Ex. 2 to Pl.'s Mot.

to Vacate, ECF No. 45-3 at 1.

After the deadline for the submission of claims had passed,

on September 7, 2018, Dr. Andresen emailed the AAA case

administrator, Megan Beyer ("Ms. Beyer"), without copying

IntePros' counsel, to provide a "corrected" Statement of Claims.

Ex. 6 to Def.'s Mot. to Dismiss Reply & Opp'n to Cross-Mot. to

Litigate, ECF No. 43-6 at 2. In this email, she stated:

> Please see attached a corrected version of the
> complaint. Essentially, the version submitted
> by prior counsel referenced all the relevant
> statutes but did not organize the paragraphs
> correctly under Counts V and VI. I have
> corrected this drafting error here. The number
> of paragraphs remains the same[,] but the
> information is slightly reordered.

*Id.* Ms. Beyer responded on September 10, 2018, copying IntePros'

counsel, that she was in receipt of "the corrected version of

the complaint," and that it was "on the case file at [that]

time." *Id.* That same day, IntePros requested that Dr. Andresen

"provide a blackline comparison between the previously-filed"

Statement of Claims and "the 'corrected version.'" Ex. 8 to

Def.'s Mot. to Dismiss Reply & Opp'n to Cross-Mot. to Litigate,

ECF No. 43-8 at 3. Upon receiving this comparison document, *see*

Ex. 7 to Def.'s Mot. to Dismiss Reply & Opp'n to Cross-Mot. to

11

Litigate, ECF No. 43-7 at 2-108 (redline comparison between the

original Statement of Claims and the "corrected" version);

IntePros objected to Dr. Andresen's "filing for a number of

reasons[,]" Ex. 8 to Def.'s Mot. to Dismiss Reply & Opp'n to

Cross-Mot. to Litigate, ECF No. 43-8 at 2. IntePros wrote:

> [T]he comparison reveals that the 'corrected
> version' does significantly more than correct
> a 'drafting error' and 'organize the
> paragraphs correctly under Counts V and VI.'
> The 'corrected version' materially alters the
> complaint by adding new claims, including
> claims under District of Columbia law, all of
> which have been dismissed with prejudice, a
> claim under 31 U.S.C. § 3730, [the False
> Claims Act ("FCA"),] and a claim under Section
> 827 of the NDAA. In light of these substantial
> and material revisions, your description of
> the purpose of the revisions as merely
> correcting a 'drafting error' misrepresented
> their purpose and effect and indicates bad
> faith or dilatory motive . . . and permitting
> new claims at this stage will impose undue
> prejudice on IntePros Federal.

*Id.* IntePros further argued that Dr. Andresen's filing of the

"corrected" Statement of Claims was improper under the AAA

Commercial Rules, specifically Rule R-6(b), which prohibits a

claimant from changing its claims or adding "'new or different

claim[s]'" after an arbitrator has been appointed "'except with

the arbitrator's consent.'" *Id.* (quoting Commercial Arbitration

Rule R-6(b) (2013)). Because Dr. Andresen did "not obtain[] the

arbitrator's consent," but had sought to add new claims, notably

a retaliation claim under 31 U.S.C. § 3730 of the FCA, IntePros

contended that her filing was "not appropriate." *Id.*; *see* Def.'s Mot. to Dismiss Reply & Opp'n to Cross-Mot. to Litigate, ECF No. 43 at 9-11.

Dr. Andresen responded to IntePros' email on September 13, 2018, claiming that she followed AAA procedure and guidance provided to her by Ms. Beyer for submitting the "corrected" Statement of Claims, which she argued did "not introduce a single new claim . . . or statute[]." Ex. 9 to Def.'s Mot. to Dismiss Reply & Opp'n to Cross-Mot. to Litigate, ECF No. 43-9 at 2. Dr. Andresen elaborated on her reasons for not viewing the "corrected" statement as a "material alteration" of the original version, including that she was: (1) clarifying Count V by "point[ing] out" that 10 U.S.C. § 2409 was "amended by [section] 827 of the 2013 NDAA[,]" by "group[ing] all the paragraphs of the original [statement] pertinent to 10 U.S.C. [§] 2409 into the same place," and by "helpfully expand[ing] upon the burden of proof under the 2013 NDAA[;]" (2) editing the title of Count VI in the Statement of Claims to "discuss[] 31 U.S.C. [§] 3730, specifically section h of this [FCA] statute" because her "original [statement] already raised [her] claims under this statute[;]" and (3) not "reinserting" her previously-dismissed D.C. law claims. *Id.*

Dr. Andresen further explained in her email to IntePros that she had told her prior attorneys about the "drafting error"

but that to her knowledge, they did not contact the AAA about
it, which was why she discharged them and brought the issue "to
the attention of the AAA" herself. *Id.*; *see also* Ex. F to Pl.'s
Opp'n to Mot. to Dismiss & Cross-Mot. to Litigate, ECF No. 37-8
at 1-2 (emails between Dr. Andresen and her prior counsel during
arbitration, Cook Craig & Francuzenko, PLLC, dated May 29, 2018,
regarding rectifying the "error" in Counts V and VI of the
Statement of Claims); Def.'s Opp'n to Pl.'s Mot. to Vacate &
Cross-Mot. to Confirm, ECF No. 55 at 10 (noting that Cook Craig
& Francuzenko, PLLC withdrew as Dr. Andresen's arbitration
counsel on June 8, 2018, with Dr. Andresen then proceeding *pro
se*); Pl.'s Opp'n to Mot. to Dismiss & Cross-Mot. to Litigate,
ECF No. 37 at 16.

IntePros argues that following its email exchange with her,
Dr. Andresen "failed to take any action to seek the arbitrator's
consent to amend the February 2018 Statement of Claims until her
response to IntePros' [Phase One] dispositive motion on April 5,
2019[,]" Def.'s Mot. to Dismiss Reply & Opp'n to Cross-Mot. to
Litigate, ECF No. 43 at 11; in which she argued that her
original statement "invoked § 3730(h)" of the FCA, but that if
Arbitrator Healey deemed this claim "new or different," she then
requested his consent to assert this claim as stated in her
"corrected" Statement of Claims, *see* Ex. D to Pl.'s Opp'n to
Mot. to Dismiss & Cross-Mot. to Litigate, ECF No. 37-6 at 34-35.

### 4. Continued Disputes Between the Parties During Arbitration, Leading to the Removal of Their First Arbitrator

As Phase One arbitration proceedings progressed, the parties became embroiled in a discovery dispute regarding depositions. *See, e.g.*, Ex. 1 to Def.'s Opp'n to Pl.'s Mot. to Vacate & Cross-Mot. to Confirm, ECF No. 55-1 at 2-15 (email chain between the parties from September to October 2018 regarding this dispute). To address the dispute, Arbitrator Healey scheduled a status conference for October 15, 2018, and he requested that the parties confer in good faith prior to that date. Ex. 4 to Pl.'s Mot. to Vacate, ECF No. 45-5 at 4-5.

On October 12, 2018, Dr. Andresen emailed Arbitrator Healey, copying IntePros' counsel, to inform him that the parties met and conferred by email but were unable to resolve the issues, which she then detailed. *See id.* at 2-4. On October 15, 2018, counsel for IntePros also emailed Arbitrator Healey by "replying all" to Dr. Andresen's previous email and attaching copies of earlier emails IntePros sent to Dr. Andresen, dated September 24, 2018 and October 12, 2018, that "addresse[d] the substance of the claims raised" in Dr. Andresen's email to Arbitrator Healey. *Id.* at 1-2. In the attached September 24, 2018 email, IntePros' counsel referred to an earlier motion filed by Dr. Andresen to have Arbitrator Healey removed as the parties' arbitrator. *See* Ex. 1 to Def.'s Opp'n to Pl.'s Mot. to

15

Vacate & Cross-Mot. to Confirm, ECF No. 55-1 at 6 ("I understand
that Arbitrator Healey will not be on the call due to Claimant's
motion to remove him, which is pending."). After learning of Dr.
Andresen's motion to remove him as arbitrator through IntePros'
attached email correspondence, Arbitrator Healey recused himself
on the day of the scheduled status conference. *See* Ex. 4 to
Pl.'s Mot. to Vacate, ECF No. 45-5 at 1 ("In fairness to all
concerned, I believe my withdrawal is appropriate under the
present circumstances.").[8]

### 5. Arbitration Continues with a New Arbitrator and a Telephonic Hearing on the Parties' Phase One Dispositive Motions

On November 16, 2018, the AAA appointed a new arbitrator,
Julie C. Janofsky ("Arbitrator Janofsky"), Pl.'s Mot. to Vacate,
ECF No. 45 at 10-11; who entered a scheduling order setting the
briefing schedule for the parties' Phase One dispositive
motions, which noted that any hearing requested on the motions

---

[8] Dr. Andresen argues that IntePros violated Commercial
Arbitration Rule R-19(a) when its counsel sent Arbitrator Healey
the attached email correspondence that referenced Dr. Andresen's
pending motion to remove him as the parties' arbitrator. Pl.'s
Mot. to Vacate, ECF No. 45 at 10. IntePros counters that its
email does not violate Rule R-19(a) because it was "not sent *ex
parte* as Dr. Andresen claims." Def.'s Opp'n to Pl.'s Mot. to
Vacate & Cross-Mot. to Confirm, ECF No. 55 at 11. The Court
notes that IntePros has confused Rule R-19(a), discussing
disqualification of an arbitrator, and Rule R-20(a), prohibiting
*ex parte* communications with an arbitrator, but it does not
otherwise find it necessary to address these arguments in
relation to the claims in the various pending motions.

would be limited to "telephonic oral argument only," with "no evidence [being] taken." Ex. 2 to Def.'s Opp'n to Pl.'s Mot. to Vacate & Cross-Mot. to Confirm, ECF No. 55-2 at 2. Pursuant to this order, the parties submitted dispositive motions on the Phase One issues, including IntePros' "Phase One Dispositive Motion and Memorandum," Dr. Andresen's "Phase One Dispositive Cross-Motion and Memorandum, which also contain[ed] an opposition to [IntePros'] Dispositive Motion[,]" and reply memoranda from both parties. Award, Ex. 2 to Def.'s Mot. to Dismiss, ECF No. 35-2 at 2-3; *see* Exs. 5-8 to Pl.'s Mot. to Vacate, ECF Nos. 45-6-45-9. IntePros' dispositive motion "sought dismissal of all counts on the basis that Dr. Andresen was an independent contractor and therefore not protected by the relevant statutes[,]" and it also argued for dismissal of Counts II, III, V, and VI due to her alleged failure to exhaust administrative remedies. Def.'s Opp'n to Pl.'s Mot. to Vacate & Cross-Mot. to Confirm, ECF No. 55 at 16. Dr. Andresen's cross-motion and opposition argued that her claims must survive Phase One to proceed to the merits. *Id.* at 16-17.

At Dr. Andresen's request, on May 29, 2019, a telephonic hearing was held regarding the motions, attended by Dr. Andresen in *pro se* capacity and IntePros' counsel. Award, Ex. 2 to Def.'s Mot. to Dismiss, ECF No. 35-2 at 3. Both parties agreed during the hearing, "and so advised the AAA case manager in writing,

17

that [Arbitrator Janofsky] ha[d] their mutual consent to decide the issues . . . based solely on the written submissions and the telephonic hearing, without the necessity of holding an evidentiary hearing." *Id.*; *see* Ex. 3 to Def.'s Opp'n to Pl.'s Mot. to Vacate & Cross-Mot. to Confirm, ECF No. 55-3 at 2-3.

> ### 6. The Arbitrator Enters an Award in Favor of IntePros—Dismissing, Denying, and Disallowing All of Dr. Andresen's Claims, Including Those Raised in Her "Corrected" Statement of Claims

On June 6, 2019, Arbitrator Janofsky entered "a reasoned award" in favor of IntePros that granted its Phase One dispositive motion seeking dismissal of all six counts of Dr. Andresen's Statement of Claims, including "as amended," and "dismissed, denied, and disallowed" "[a]ll other claims brought by either party." Award, Ex. 2 to Def.'s Mot. to Dismiss, ECF No. 35-2 at 3, 11. As to Counts I to IV (age discrimination, sex discrimination, retaliation, and unpaid overtime), Arbitrator Janofsky stated that the viability of those claims depended on Dr. Andresen "first establishing that she was an employee, rather than an independent contractor," as the federal statutes upon which those counts were based—the ADEA, Title VII, and the FLSA—"all provide redress only for employees, and not for independent contractors." *Id.* at 3. To address this question, Arbitrator Janofsky applied the six factors of the "economic realities" test for determining whether a worker is "an employee

covered under the FLSA," in addition to a blend of the factors from "the hybrid test" and "the common law agency test" for determining "the existence of an employee-employer relationship for purposes of the federal anti-discrimination laws." *See id.* at 3-7. Arbitrator Janofsky concluded that Dr. Andresen was not IntePros' employee under any of these tests and that she therefore had "no cause of action under the FLSA, Title VII or the ADEA for unpaid overtime pay, discrimination or retaliation in Counts [I] through [IV]." *Id.* at 9.

Next, Arbitrator Janofsky reviewed Count V of the amended Statement of Claims, alleging unlawful termination in violation of the NDAA, 10 U.S.C. § 2409. *Id.* Arbitrator Janofsky noted that "[u]nder that statute as it existed at the relevant time of [Dr. Andresen's] engagement," Dr. Andresen had to be an IntePros employee, "and not an independent contractor, in order to have a cause of action under the NDAA." *Id.* Because she already found that Dr. Andresen was not an employee of IntePros, Arbitrator Janofsky denied her NDAA retaliation claim in Count V. *Id.*

Finally, Arbitrator Janofsky turned to Count VI of the "corrected" Statement of Claims, alleging that IntePros violated the FCA, 31 U.S.C. § 3709, by terminating Dr. Andresen "in retaliation for certain alleged whistleblower activities." *Id.* at 10. Arbitrator Janofsky first noted that Dr. Andresen "did not file her FCA retaliatory discharge claim within the

scheduling order deadlines set by the prior arbitrator[,]" as
Dr. Andresen's initial Statement of Claims, filed by the
February 2, 2018 deadline, "made no mention or reference
whatsoever to the FCA, nor did it set forth the elements of a
claim under that law." *Id.* As a result, Arbitrator Janofsky
concluded that IntePros did not have sufficient notice, prior to
submitting its written discovery requests due the following
month, that Dr. Andresen "intended to pursue a retaliation claim
based on the FCA in this arbitration[,]" *id.* at 10; nor was this
claim mentioned in the nearly identical Amended Complaint filed
in this Court or in Dr. Andresen's first or second arbitration
demands filed with the AAA, *id.* at 10 n.2.; *see also* Def.'s Mot.
to Dismiss Reply & Opp'n to Cross-Mot. to Litigate, ECF No. 43
at 9 (noting that Dr. Andresen's second arbitration demand
"listed numerous federal statutes other than the FCA").

Rather than seek arbitrator consent to either alter the
scheduling order or add an FCA retaliation claim, as Dr.
Andresen was required to do pursuant to AAA Commercial Rule R-
6(b)'s mandate regarding the addition of a "new or different
claim," Arbitrator Janofsky stated that Dr. Andresen "first
raised her FCA retaliation claim in an amendment to her
[Statement of Claims] submitted to the [AAA] case manager, over
[IntePros'] objection, on September 7, 2018." Award, Ex. 2 to
Def.'s Mot. to Dismiss, ECF No. 35-2 at 10. Arbitrator Janofsky

concluded that because Rule R-6(b) "is so explicit, simply

filing an amended [statement of claims] unilaterally with the

case manager, as [Dr. Andresen] did over [IntePros'] objection,

was not effective in and of itself to add a 'new or different'

claim." *Id.* Then, Arbitrator Janofsky rejected Dr. Andresen's

claim that her September 7, 2018 amendment was "just a minor

correction of a technical error made in a single line of the

original [Statement of Claims]." *Id.* She wrote:

> [A] comparison of [the] original [Statement of
> Claims] with the amended version shows that
> [this] argument is disingenuous. In fact,
> extensive changes of substance were made to
> the heading and every paragraph of Count [VI]
> in an attempt to introduce a retaliation claim
> brought under the FCA. Extensive changes were
> also made to Count [V] in order to distinguish
> the retaliation claim brought under the NDAA
> from the one brought under the FCA in Count
> [VI]. Indeed, in her Reply Memorandum, at 27,
> [Dr. Andresen] herself characterizes her FCA
> claim in Count [VI] as a 'separate'
> retaliation claim. *Based on all of this, I
> find that the FCA claim contained in Count
> [VI] of the September 7, 2018 [Statement of
> Claims] was not simply a minor technical
> correction, but instead, was a new claim,
> which was indeed 'separate' and also different
> in substance from all the other claims
> previously asserted in the February 2, 2018
> [Statement of Claims]*. All of the other claims
> contained in the February Complaint, including
> all the other whistleblower and retaliation
> claims, were brought under distinct statutes
> other than the FCA, and therefore required
> proof of entirely different elements.

*Id.* at 10-11 (emphasis added). Arbitrator Janofsky also

concluded that approving Dr. Andresen's amendment would, at that

point, prejudice IntePros because it had no opportunity "to propound additional discovery requests to test whether [Dr. Andresen] met the elements of" an FCA claim prior to the filing of the dispositive motions. *Id.* at 11. For all of these reasons, Arbitrator Janofsky disallowed Dr. Andresen's "untimely, unilateral attempt to amend her [Statement of Claims] to add the new FCA retaliation claim after the scheduling order deadline and without arbitrator consent," and dismissed that claim and "[a]ll other claims not expressly granted," ultimately concluding that the award was "in full satisfaction of all claims presented by the parties in this arbitration." *Id.*

### 7. Dr. Andresen Rejects IntePros' Request to File a Joint Motion to Voluntarily Dismiss the Stayed Action in District Court

Following the award, on June 10, 2019, IntePros' counsel contacted Dr. Andresen's counsel of record in the stayed action before this Court, Ari Wilkenfeld ("Mr. Wilkenfeld"), to request that the parties move for a voluntary dismissal with prejudice. Ex. 3 to Def.'s Mot. to Dismiss, ECF No. 35-3 at 4-5. On June 17, 2019, Mr. Wilkenfeld replied that Dr. Andresen had "directed [him] to hold off on filing anything in the federal case while she consider[ed] her options." *Id.* at 4. IntePros' counsel asked what options Dr. Andresen was considering, and after not receiving an answer from Mr. Wilkenfeld, informed him that IntePros would take all steps necessary to dismiss this case and

would seek fees if Dr. Andresen continued to be "recalcitrant"
in "engag[ing] on this issue." *See id.* at 2-4. Shortly
thereafter, Mr. Wilkenfeld withdrew as Dr. Andresen's counsel,
*see* Min. Order (June 27, 2019); which led IntePros' counsel to
contact Dr. Andresen directly to request her cooperation in
dismissing with prejudice the stayed claims before the Court "in
light of their resolution in arbitration[,]" Ex. 4 to Def.'s
Mot. to Dismiss, ECF No. 35-4 at 6-7. After an exchange of
emails, Dr. Andresen rejected this request. *See id.* at 2-7.
Then, on July 11, 2019, Dr. Andresen sent IntePros' counsel a
letter claiming that under the FAA, she had "90 days from the
date of the arbitrator's decision on June 6, 2019 to decide
whether to request that the court vacate the award." Ex. 5 to
Def.'s Mot. to Dismiss, ECF No. 35-5 at 2-3. She stated that she
was continuing to consider her options and would not be
"coerce[d] [ ] into giving up [her] statutory rights." *Id.* at 3.

>            8. **IntePros Moves to Dismiss Dr. Andresen's Action
>               in District Court and Confirm the Arbitration
>               Award, While Dr. Andresen Files a Cross-Motion
>               to Litigate Two Retaliation Claims in District
>               Court, a Motion for Leave to File a Second
>               Amended Complaint, a Motion to Vacate the
>               Arbitration Award, and a Motion to Lift the
>               District Court's Stay of this Action**

The next day, based on Dr. Andresen's "refus[al] to dismiss
her claims," IntePros moved to dismiss this case with prejudice
pursuant to the FAA and Federal Rules of Civil Procedure 12 and

56. *See* Def.'s Mot. to Dismiss, ECF No. 35 at 1. IntePros argues that with all of Dr. Andresen's claims in arbitration "either dismissed with prejudice voluntarily or decided against her by the arbitrator at the dispositive motion stage[,]" "there is nothing left for this Court to do as to the stayed claims . . . except to dismiss them." *Id.* at 3-4. On July 25, 2019, Dr. Andresen filed, in one memorandum, her opposition to IntePros' motion to dismiss and a cross-motion to litigate two retaliation claims under the 2013 NDAA and the FCA in this district court. *See* Pl.'s Opp'n to Mot. to Dismiss & Cross-Mot. to Litigate, ECF No. 37; *see also* Pl.'s Cross-Mot. to Litigate, ECF No. 38. In a combined memorandum, on August 1, 2019, IntePros replied to Dr. Andresen's opposition to its motion to dismiss and opposed her cross-motion to litigate her two retaliation claims, *see* Def.'s Mot. to Dismiss Reply & Opp'n to Cross-Mot. to Litigate, ECF No. 43; to which Dr. Andresen replied on August 12, 2019, *see* Pl.'s Reply to Def.'s Opp'n to Pl.'s Cross-Mot. to Litigate Two Retaliation Claims in D.C. District Ct. ("Pl.'s Reply to Def.'s Opp'n to Cross-Mot. to Litigate"), ECF No. 52.

While IntePros' motion to dismiss was pending, on August 1, 2019, pursuant to Federal Rule of Civil Procedure 15, Dr. Andresen filed a motion for leave to file a SAC for the alleged purposes of "correct[ing] the drafting error in Counts V and VI" of the Amended Complaint and "updat[ing] the Complaint, which is

24

now almost four years old." Pl.'s Mot. to File SAC, ECF No. 42
at 3. IntePros filed its opposition on August 9, 2019. *See*
Def.'s Opp'n to Pl.'s Mot. to File SAC, ECF No. 49. On August
19, 2019, Dr. Andresen filed her reply and included as an
exhibit a motion for extension of time to file that reply, which
was due by August 16, 2019 pursuant to the seven-day response
time permitted by Local Civil Rule 7(d). *See* Pl.'s Reply to
Def.'s Opp'n to Pl.'s Mot. to File SAC, ECF No. 57; Ex. 1 to
Pl.'s Reply to Def.'s Opp'n to Pl.'s Mot. to File SAC, ECF No.
57-1 at 1-3. That same day, IntePros filed its opposition to Dr.
Andresen's request for an extension of time and a cross-motion
to strike her untimely reply brief, *see* Def.'s Opp'n to Mot. for
Extension of Time & Cross-Mot. to Strike, ECF No. 58; to which
Dr. Andresen replied also on August 19, 2019, *see* Pl.'s Reply to
Def.'s Opp'n to Mot. for Extension of Time & Opp'n to Cross-Mot.
to Strike, ECF No. 59.

Additionally, on August 2, 2019, "eight days after filing a
'cross-motion to litigate' [her] two [retaliation] claims (ECF
No. 38) and one day after filing a motion to amend the Amended
Complaint (ECF No. 42)[,]" Def.'s Opp'n to Pl.'s Mot. to Vacate
& Cross-Mot. to Confirm, ECF No. 55 at 12; Dr. Andresen filed a
petition for vacatur of the arbitration award in favor of
IntePros under "the exclusive, statutory grounds for vacatur
delineated in § 10 of the [FAA,]" *see* Pl.'s Mot. to Vacate, ECF

25

No. 45 at 8. She requests that the Court vacate the award and remand to arbitration her claims under the ADEA, Title VII, and the FLSA, as well as her D.C. law claims under the DCHRA and the DCWPCL which she "wishes to reassert," while permitting her to litigate her two retaliation claims under 10 U.S.C. § 2409, "which corresponds to § 827 of the" 2013 NDAA, and "under § 3730(h)" of the FCA. *Id.* at 8-9. Furthermore, Dr. Andresen requests that when ruling on her cross-motion to litigate these two retaliation claims, *see* ECF Nos. 37 & 38; if the Court disagrees that these claims are "inarbitrable," as Dr. Andresen argues, then the Court should "remand all her claims, including these two, back to arbitration" so the parties can "begin anew" with the arbitration process, Pl.'s Mot. to Vacate, ECF No. 45 at 9. On August 16, 2019, IntePros simultaneously filed its opposition to Dr. Andresen's petition for vacatur and a cross-motion to confirm the arbitration award, arguing that Dr. Andresen has failed "to assert any cognizable basis to vacate the arbitrator's award[,]" *see* Def.'s Opp'n to Pl.'s Mot. to Vacate & Cross-Mot. to Confirm, ECF No. 55 at 7; to which Dr. Andresen replied on August 23, 2019, *see* Pl.'s Reply to Def.'s Opp'n to Mot. to Vacate & Opp'n to Def.'s Cross-Mot. to Confirm, ECF No. 63.[9] On August 30, 2019, IntePros filed its reply in

---

[9] Although docketed at ECF No. 64, Dr. Andresen's memorandum in opposition to IntePros' cross-motion to confirm the award is

support of its cross-motion to confirm the arbitration award. *See* Def.'s Cross-Mot. to Confirm Reply, ECF No. 65.

Most recently, on December 14, 2023, Dr. Andresen filed a motion requesting that the Court lift the stay in this action given the completion of arbitration proceedings and the presence of various motions before the Court regarding next steps. *See* Pl.'s Mot. to Lift Stay, ECF No. 70 at 1.

The parties' various motions and cross-motions, including IntePros' motion to dismiss and cross-motion to confirm the arbitration award, and Dr. Andresen's cross-motion to litigate her two retaliation claims, her motion for leave to file a SAC, her motion to vacate the arbitration award, and her motion to lift the stay in this matter are now ripe and ready for the Court's adjudication.

### III. Standard of Review

#### A. Motion to Dismiss Following the Completion of Arbitration Pursuant to the Federal Arbitration Act

IntePros has filed a motion to dismiss "pursuant to the [FAA], Fed. R. Civ. P. 12, [and] Fed. R. Civ. P. 56[.]" Def.'s Mot. to Dismiss, ECF No. 35 at 1. IntePros does not specify under which subsection of Rule 12 it seeks dismissal, nor does it address any applicable standard of review under Rule 12 or

---

combined with her reply to IntePros' opposition to her petition for vacatur and docketed at ECF No. 63. Thus, hereinafter, the Court cites to ECF No. 63 when citing to this combined filing.

Rule 56 in its motion, which is also true of Dr. Andresen's opposition brief. Both parties have attached documents to their briefings regarding IntePros' motion to dismiss from outside of the pleadings, including the Sub Contractor Agreement at issue; various materials from the arbitration proceedings, such as the arbitrator's "Affirmative Determination of Arbitrability and Order" and the final award in favor of IntePros; and email exchanges between the parties from both during and after arbitration. The Court therefore considers IntePros' motion to dismiss as the sequel to its earlier motion to compel arbitration, and the motion follows the Court's instruction, in granting that motion to compel, that IntePros could "seek dismissal" following an arbitrator's determination "that all claims in this case are arbitrable[.]" *Andresen*, 240 F. Supp. 3d at 163.

Accordingly, IntePros' motion to dismiss technically "does not come[] within the ambit of Rule 12(b) of the Federal Rules of Civil Procedure, which allows a defendant to move to dismiss on, among other things, grounds that the court lacks subject matter jurisdiction or that the plaintiff's claim fails to state a claim upon which relief can be granted." *Brown v. Dorsey & Whitney, LLP*, 267 F. Supp. 2d 61, 66 (D.D.C. 2003) (citation and internal quotation marks omitted). As a result, the Court turns

to the relevant provisions of the FAA that govern arbitration for guidance on discerning the appropriate standard of review.

Section 2 of the FAA provides that "[a] written provision in . . . a contract evidencing a transaction involving commerce to settle by arbitration a controversy thereafter arising out of such contract . . . shall be valid, irrevocable, and enforceable, save upon such grounds as exist at law or in equity for the revocation of any contract." 9 U.S.C. § 2. The FAA "also establishes procedures by which federal courts implement § 2's substantive rule." *Rent-A-Center, West, Inc. v. Jackson*, 561 U.S. 63, 68, 130 S. Ct. 2772, 177 L. Ed. 2d 403 (2010). "Under § 3, a party may apply to a federal court for a stay of the trial of an action 'upon any issue referable to arbitration under an agreement in writing for such arbitration[,]'" *id.* (quoting 9 U.S.C. § 3); and the court must stay the action "until such arbitration has been had in accordance with the terms of the agreement," 9 U.S.C. § 3. "Under § 4, a party 'aggrieved' by the failure of another party 'to arbitrate under a written agreement for arbitration' may petition a federal court 'for an order directing that such arbitration proceed in the manner provided for in such agreement.'" *Rent-A-Center*, 561 U.S. at 68 (quoting 9 U.S.C. § 4).

Defendants can move to compel arbitration pursuant to 9 U.S.C. § 4 of the FAA and to dismiss the action all in the same

motion. *See, e.g.*, *Martin v. Citibank, Inc.*, 567 F. Supp. 2d 36, 39 (D.D.C. 2008) (defendant "seeking an Order to Dismiss and to Compel Arbitration"); *Brown*, 267 F. Supp. 2d at 63 ("Currently before the Court is the defendant's Motion to Dismiss and Compel Arbitration[.]"); *Haire v. Smith, Currie & Hancock LLP*, 925 F. Supp. 2d 126, 127 (D.D.C. 2013) ("Before the Court is [the defendant's] motion to dismiss or to stay and compel arbitration."); *Grynberg v. BP P.L.C.*, 596 F. Supp. 2d 74, 76 (D.D.C. 2009) (defendant seeking "to dismiss [the] plaintiffs' complaint and to compel arbitration"). As such, district courts may simultaneously determine whether to compel arbitration and whether to dismiss the action in the same decision, *see, e.g.*, *Ryan v. BuckleySandler, LLP*, 69 F. Supp. 3d 140, 149 (D.D.C. 2014) (granting "the defendants' Motion to Dismiss and Compel Arbitration" and dismissing the case); *W & T Travel Servs., LLC v. Priority One Servs., Inc.*, 69 F. Supp. 3d 158, 167-68, 172-74 (D.D.C. 2014) (denying the plaintiff's motion to stay arbitration and granting the defendant's motion to dismiss); or, as is the case here, they may rule on a motion for dismissal following the completion of arbitration, *see White v. Four Seasons Hotels & Resorts*, 999 F. Supp. 2d 250, 263 (D.D.C. 2013) (staying proceedings "pending the outcome of [ ] arbitration," to, at that time, determine whether dismissal was appropriate).

In such situations, "the proper approach to employ in reviewing the defendant's motion to dismiss and[/or to] compel arbitration is to apply the same standard of review that governs Rule 56 motions" for summary judgment. *See Brown*, 267 F. Supp. 2d at 67 (explaining that courts are not, in these instances, converting a Rule 12 motion to dismiss into a Rule 56 motion for summary judgment but "rather construing the motion for what it really is—a motion to compel arbitration pursuant to 9 U.S.C. § 4—and applying the Rule 56 standard of review in addressing the merits of the motion"); *accord Martin*, 567 F. Supp. 2d at 41; *see also Technetronics, Inc. v. Leybold-Graeus GmbH*, No. 93-1254, 1993 WL 197028, at *2 (E.D. Pa. June 9, 1993) ("Although styled as a motion to dismiss, in a motion to stay proceedings and/or compel arbitration, the appropriate standard of review for the district court is the same standard used in resolving summary judgment motions pursuant to Fed. R. Civ. P. 56(c)."). The Court reviewed IntePros' motion to compel arbitration pursuant to Rule 56(c)'s standard. *See Andresen*, 240 F. Supp. 3d at 148. Accordingly, because IntePros' motion to dismiss accompanies its earlier motion to compel arbitration and attaches matters outside of the pleadings, the Court again "will employ the standard of review applicable to the resolution of summary judgment motions." *Brown*, 267 F. Supp. 2d at 68.

"Under Federal Rule of Civil Procedure 56, summary judgment shall be granted 'if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to a judgment as a matter of law,' upon consideration of 'materials in the record' that establish the absence or presence of a genuine dispute." *Ryan*, 69 F. Supp. 3d at 144 (quoting Fed. R. Civ. P. 56(a), (c)). While "[t]he movant bears the burden of demonstrating the absence of a genuine dispute of material fact[,]" *Grynberg*, 596 F. Supp. 2d at 77 (citing *Celotex Corp. v. Catrett*, 477 U.S. 317, 323, 106 S. Ct. 2548, 91 L. Ed. 2d 265 (1986)); "[t]he evidence is to be viewed in the light most favorable to the nonmoving party and the court must draw all reasonable inferences in favor of the nonmoving party[,]" *Talavera v. Shah*, 638 F.3d 303, 308 (D.C. Cir. 2011) (citing *Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 255, 106 S. Ct. 2505, 91 L. Ed. 2d 202 (1986)). It is appropriate for the court to compel arbitration and/or grant dismissal if the non-moving party has failed to "establish more than the 'mere existence of a scintilla of evidence' in support of its position." *Martin*, 567 F. Supp. 2d at 41 (quoting *Anderson*, 477 U.S. at 252). If the evidence favoring the non-moving party "is merely colorable, or is not significantly probative, summary judgment may be granted." *Anderson*, 477 U.S. at 249-50 (internal citations omitted).

### B. Motion to File an Amended Complaint Pursuant to Federal Rule of Civil Procedure 15(a)

Federal Rule of Civil Procedure 15(a) allows a party to amend its pleading "once as a matter of course" within: (1) "21 days after serving it, or[;]" (2) "if the pleading is one to which a responsive pleading is required, 21 days after service of a responsive pleading or 21 days after service of a motion under Rule 12(b), (e), or (f), whichever is earlier." Fed. R. Civ. P. 15(a)(1)(A)-(B). "In all other cases, a party may amend its pleading only with the opposing party's written consent or the court's leave[,]" which "[t]he court should freely give [ ] when justice so requires." Fed. R. Civ. P. 15(a)(2). Although the district court has sole discretion to grant or deny leave to amend, *Walker v. Pharm. Rsch. & Mfrs. of Am.*, 256 F.R.D. 234, 238 (D.D.C. 2009); it is an abuse of discretion for the court to deny leave without "provid[ing] a sufficiently compelling reason," *Robinson v. Detroit News, Inc.*, 211 F. Supp. 2d 101, 113–114 (D.D.C. 2002). Such reasons may include "undue delay, bad faith or dilatory motive on the part of the movant, repeated failure to cure deficiencies by amendments previously allowed, undue prejudice to the opposing party by virtue of allowance of the amendment, [or] futility of amendment[.]" *Foman v. Davis*, 371 U.S. 178, 182, 83 S. Ct. 227, 9 L. Ed. 2d 222 (1962). "The burden is on the defendant to show that leave to file an

33

amended complaint should be denied." *Afram v. United Food & Com. Workers Unions & Participating Emps. Health & Welfare Fund*, 958 F. Supp. 2d 275, 278 (D.D.C. 2013).

### C. Motion to Vacate an Arbitration Award Pursuant to 9 U.S.C. § 10(a) of the Federal Arbitration Act

Pursuant to the FAA, "[a]s [the Court of Appeals for the District of Columbia Circuit ("D.C. Circuit")] ha[s] repeatedly recognized, 'judicial review of arbitral awards is extremely limited[.]'" *Kurke v. Oscar Gruss & Son, Inc.*, 454 F.3d 350, 354 (D.C. Cir. 2006) (quoting *Teamsters Local Union No. 61 v. United Parcel Serv., Inc.*, 272 F.3d 600, 604 (D.C. Cir. 2001) (some citations and internal quotation marks omitted)). "This 'limited judicial review' is necessary to 'maintain[] arbitration's essential virtue of resolving disputes straightaway.'" *Mesa Power Grp., LLC v. Gov't of Canada*, 255 F. Supp. 3d 175, 183 (D.D.C. 2017) (quoting *Oxford Health Plans LLC v. Sutter*, 569 U.S. 564, 568, 133 S. Ct. 2064, 186 L. Ed. 2d 113 (2013) (some citations and internal quotation marks omitted)). Because it was enacted to create a "national policy favoring arbitration," *Buckeye Check Cashing, Inc. v. Cardegna*, 546 U.S. 440, 443, 126 S. Ct. 1204, 163 L. Ed. 2d 1038 (2006); the FAA supplies only three mechanisms for judicial review of arbitration awards: "a judicial decree confirming an award, an order vacating it, or an order modifying or correcting it[,]" *Hall St. Assocs., LLC v.*

34

*Mattel, Inc.*, 552 U.S. 576, 582, 128 S. Ct. 1396, 170 L. Ed. 2d 254 (2008) (citing to sections 9 through 11 of the FAA). "Under the terms of [section] 9, a court 'must' confirm an arbitration award 'unless' it is vacated, modified, or corrected 'as prescribed' in [sections] 10 and 11." *Id.*

"Under the FAA, courts may vacate an arbitrator's decision 'only in very unusual circumstances.'" *Oxford Health Plans*, 569 U.S. at 568 (quoting *First Options of Chi., Inc. v. Kaplan*, 514 U.S. 938, 942, 115 S. Ct. 1920, 131 L. Ed. 2d 985 (1995)). Section 10(a) of the FAA "provide[s] the FAA's exclusive grounds for" vacating an arbitration award. *Hall St.*, 552 U.S. at 584. The grounds for vacatur include: "(1) where the award was procured by corruption, fraud, or undue means; (2) where there was evident partiality or corruption in the arbitrators, or either of them; (3) where the arbitrators were guilty of misconduct in refusing to postpone the hearing, upon sufficient cause shown, or in refusing to hear evidence pertinent and material to the controversy; or of any other misbehavior by which the rights of any party have been prejudiced; or (4) where the arbitrators exceeded their powers, or so imperfectly executed them that a mutual, final, and definite award upon the subject matter submitted was not made." 9 U.S.C. § 10(a)(1)-(4).

These grounds for vacatur "sharply limit the judicial review of the evidentiary and legal findings of" the arbitrator,

*Coyne v. Hewlett-Packard Co.*, 308 F. Supp. 3d 207, 210 (D.D.C. 2018); and "restate the longstanding rule that, [i]f [an arbitration] award is within the submission, and contains the honest decision of the arbitrator[], after a full and fair hearing of the parties, a court . . . will not set [the award] aside for error, either in law or fact[,]" *Mesa Power*, 255 F. Supp. 3d at 183 (citations and internal quotation marks omitted). District courts are thus "not authorized to reconsider the merits of an award even though the parties may allege that the award rests on errors of fact or on misinterpretation of the contract[,]" *United Paperworkers Int'l Union, AFL-CIO v. Misco, Inc.*, 484 U.S. 29, 36, 108 S. Ct. 364, 98 L. Ed. 2d 286 (1987); and must instead uphold the award "even if it offered no explanation at all because the alternative, requiring a particular level of detail for every response to each party's theories, would unjustifiably undermine the speed and thrift sought from arbitration proceedings[,]" *Republic of Argentina v. AWG Grp. LTD.*, 894 F.3d 327, 338 (D.C. Cir. 2018) (citation and internal quotation marks omitted).

## IV.  Analysis

The Court divides the parties' various pending motions and cross-motions into three groups to analyze below. First, the Court will address IntePros' motion to dismiss, *see* ECF No. 35; and Dr. Andresen's opposition to this motion and accompanying

cross-motion requesting permission to litigate two retaliation claims under: (1) section 827 of the 2013 NDAA, 10 U.S.C. § 2409; and (2) 31 U.S.C. § 3730(h) of the FCA, *see* ECF Nos. 37 & 38. Second, the Court will address Dr. Andresen's motion for leave to file a SAC, *see* ECF No. 42; IntePros' opposition to this motion, *see* ECF No. 49; and the various briefings regarding Dr. Andresen's motion requesting an extension of time to file her reply to this opposition and IntePros' cross-motion to strike her untimely reply, *see* ECF Nos. 58-62. Finally, the Court will turn to Dr. Andresen's motion to vacate the arbitration award, *see* ECF No. 45; and IntePros' simultaneous opposition to this motion and cross-motion to confirm the award, *see* ECF Nos. 54 & 55.

### A. The Court Grants IntePros' Motion to Dismiss and Denies Dr. Andresen's Cross-Motion to Litigate Two Retaliation Claims in District Court

In its motion to dismiss, IntePros argues that "[a]fter more than [eight] years of litigation and arbitration, this matter is now ready for one final act: dismissal." Def.'s Mot. to Dismiss, ECF No. 35 at 1. Specifically, IntePros argues that following: (1) the Court's referral of Dr. Andresen's claims to arbitration to assess their arbitrability; (2) an arbitrator's determination that these claims were "'arbitrable in their entirety' and that 'there [were] no claims remaining for the Court to address[;]'" and (3) the completion of arbitration in

37

the form of an award in favor of IntePros fully resolving and dismissing Dr. Andresen's claims in arbitration, "[t]here is nothing left for this Court to do but to dismiss Dr. Andresen's [stayed] claims"—with prejudice. *See id.* at 1-3 (quoting Joint Status Report, ECF No. 27 at 1).

Dr. Andresen contests the propriety of dismissal at this stage in the litigation and argues that her two retaliation claims, appearing in Counts V and VI of the Amended Complaint, "remain properly in front of this Court, on the grounds that" these claims "never existed in the arbitral forum" because the arbitrator did not permit her to correct a "drafting error" involving these claims. Pl.'s Opp'n to Mot. to Dismiss & Cross-Mot. to Litigate, ECF No. 37 at 7-8. She argues that her retaliation claims, "marred by [this] unfortunate drafting error," were actually meant to be asserted separately under section 827 of the 2013 NDAA—10 U.S.C. § 2409—and 31 U.S.C. § 3730(h) of the FCA, "both at the time she amended her lawsuit and later in arbitration," and that, unlike the arbitrator, the Court should permit her to litigate these claims because they are both "alive in this Court" and "not arbitrable," and therefore, dismissing these claims would prejudice her. *Id.* at 7-8, 13-14. In addition, Dr. Andresen requests that the Court "undertake a fulsome judicial review of the arbitrability determination made by the first arbitrator[.]" *Id.* at 20.

IntePros rejects each of these arguments in its reply brief as "requests to re-litigate issues already decided [against Dr. Andresen] by this Court and the arbitrator." Def.'s Mot. to Dismiss Reply & Opp'n to Cross-Mot. to Litigate, ECF No. 43 at 6. It also argues that Dr. Andresen's "cross-motion to litigate" "is not a cognizable mechanism to challenge the arbitrator's rulings" under the FAA, and further that she "is judicially estopped from contesting the arbitrability of the claims raised in the Amended Complaint." *Id.* at 18, 20.

> **1. The Court Rejects Dr. Andresen's Central Contention That a "Drafting Error" "Marred" Her FCA Retaliation Claim, as the Amended Complaint Cannot Reasonably Be Construed to Plead Such a Claim, and It Thus Cannot Be Litigated Now**

Dr. Andresen's combined briefing for her opposition to IntePros' motion to dismiss and her cross-motion to litigate raises various arguments, but each is based on her central contention that a "drafting error" by her legal counsel "marred" her intended FCA retaliation claim, both in her Amended Complaint before the Court and in her Statement of Claims in arbitration. Pl.'s Opp'n to Mot. to Dismiss & Cross-Mot. to Litigate, ECF No. 37 at 14. The Court therefore begins its analysis of the propriety of granting IntePros' motion to dismiss with this "central argument made by Dr. Andresen," which IntePros argues is nothing more than "disingenuous gymnastics to try to persuade th[e] Court to ignore the adverse [arbitration]

rulings against her," Def.'s Mot. to Dismiss Reply & Opp'n to
Cross-Mot. to Litigate, ECF No. 43 at 6; specifically, the
arbitrator's rejection of her "untimely, unilateral attempt . .
. to add [a] new FCA retaliation claim" to an amended version of
her Statement of Claims, Award, Ex. 2 to Def.'s Mot. to Dismiss,
ECF No. 35-2 at 11.

Dr. Andresen's explanation of the alleged "drafting error"
begins on November 25, 2015, when she moved to amend the
complaint in this Court "to include new claims of retaliation
and wrongful termination." Pl.'s Mot. to Amend Compl., ECF No.
10 at 1. She claims that this amendment added "two new counts—
not one—because it was [her] intention to cite to the NDAA/10
U.S.C. § 2409, on the one hand, and the FCA/31 U.S.C. § 3730(h),
on the other[,]" but that her then-trial counsel, Mr.
Wilkenfeld, incorrectly "commingle[d] language between both
statutes" when drafting Counts V and VI of the Amended
Complaint. Pl.'s Opp'n to Mot. to Dismiss & Cross-Mot. to
Litigate, ECF No. 37 at 14.

To demonstrate this error, Dr. Andresen directs the Court
to paragraph 504 of the Amended Complaint—appearing under "Count
V: Unlawful [sic] Termination in Violation of the 2013 [NDAA]"—
which states: "Defendant's actions complained of constitute a
willful violation of Section 3730(h) of the NDAA Whistleblower
Protection Act." *Id.*; Am. Compl., ECF No. 53 at 111 ¶ 504. She

explains that "'Section 3730(h)' does not exist anywhere else in the law other than in the context of the FCA . . . [and thus] never could have referred to the NDAA, which does not contain [a] 'Section 3730(h).'" Pl.'s Opp'n to Mot. to Dismiss & Cross-Mot. to Litigate, ECF No. 37 at 15. As such, Dr. Andresen claims that where paragraph 504 states "Section 3730(h)," it should have instead referred to 10 U.S.C. § 2409, which codifies section 827 of the 2013 NDAA. *Id.* at 14-15. In addition, Dr. Andresen contends that "'Section 3730(h)' should have [instead] been part of Count VI, and the title of Count VI should have referenced the FCA[,]" *id.*; but was mistakenly titled "Count VI: Unlawfull [sic] Termination in Violation of [ ] 10 U.S.C. § 2409," Am. Compl., ECF No. 53 at 111; thereby leading to a "drafting error" that "incorrectly divides the NDAA and 10 U.S.C. § 2409 between Counts V and VI," Pl.'s Opp'n to Mot. to Dismiss & Cross-Mot. to Litigate, ECF No. 37 at 15. In sum, Dr. Andresen argues that had it not been for Mr. Wilkenfeld's "drafting error," Count V of the Amended Complaint would have pled allegations exclusively under section 827 of the 2013 NDAA (10 U.S.C. § 2409) and Count VI would have pled allegations solely under the FCA (31 U.S.C. § 3730(h)). *See id.* at 14-15.

Dr. Andresen then claims that this "drafting error" bled into arbitration when her attorneys from Cook Craig & Francuzenko, PLLC submitted a Statement of Claims in arbitration

41

on her behalf on February 2, 2018 that left Counts V and VI "identical in wording to how Mr. Wilkenfeld had presented them" in the Amended Complaint, and additionally failed to correct the error once Dr. Andresen brought it to their attention on May 29, 2018. *Id.* at 15-16; Ex. F to Pl.'s Opp'n to Mot. to Dismiss & Cross-Mot. to Litigate, ECF No. 37-8 at 1-2. She explains that this inaction led her to discharge her counsel, represent herself *pro se*, and send to Ms. Beyer a "corrected version" of the Statement of Claims on September 7, 2018 that "corrected th[e] drafting error." Pl.'s Opp'n to Mot. to Dismiss & Cross-Mot. to Litigate, ECF No. 37 at 16; Ex. G to Pl.'s Opp'n to Mot. to Dismiss & Cross-Mot. to Litigate, ECF No. 37-9 at 1. Dr. Andresen claims that she believed "she was merely correcting a drafting error in the amended portions of her" Statement of Claims rather than "asserting a new claim in arbitration[,]" and therefore she did not think she needed to submit a formal motion to amend her statement with the AAA. Pl.'s Opp'n to Mot. to Dismiss & Cross-Mot. to Litigate, ECF No. 37 at 16-17 n.5.

In the award, Arbitrator Janofsky called this explanation "disingenuous" and concluded that Dr. Andresen had falsely characterized her amended Statement of Claims "as just a minor correction of a technical [drafting] error" when "[i]n fact, extensive changes of substance were made" to Counts V and VI, in both their headings and several paragraphs, in an attempt to:

(1) introduce a retaliation claim under the FCA; and (2) distinguish her already-raised retaliation claim brought under the NDAA from the new one sought under the FCA. Award, Ex. 2 to Def.'s Mot. to Dismiss, ECF No. 35-2 at 10. "Based on all of this," Arbitrator Janofsky determined that the FCA retaliation claim contained in the corrections to Count VI of the amended Statement of Claims "was not simply a minor technical correction," but the addition of "a new claim" that was "'separate' and also different in substance from all the other claims previously asserted." *Id.*; *see also* Ex. 7 to Def.'s Mot. to Dismiss Reply & Opp'n to Cross-Mot. to Litigate, ECF No. 43-7 (redline comparison between the February 2018 Statement of Claims and the September 2018 "corrected" version).

So too here does IntePros call Dr. Andresen's explanation of the "drafting error" in the Amended Complaint "disingenuous," and it argues that "[t]he facts . . . contradict [Dr. Andresen's] assertion that an FCA retaliation claim" was ever pled therein. Def.'s Mot. to Dismiss Reply & Opp'n to Cross-Mot. to Litigate, ECF No. 43 at 6-7. Instead, IntePros contends that "Counts V and VI both purport to allege claims under the NDAA[,]" as "the legal standards of the law" cited in both counts refer to the NDAA and "bear no relation to the FCA." *Id.* at 7-9. As such, IntePros argues that "an accurate account of the facts" shows that the Amended Complaint "does not contain

43

any reference to the FCA" or "describe any 'false claims[,]'" and is therefore "bereft" of any FCA retaliation claim. *Id.* IntePros urges the Court to follow Arbitrator Janofsky's lead and reject Dr. Andresen's "misleading attempts" to construe the existence of an FCA claim in the Amended Complaint based on the "disingenuous" narrative of a "drafting error." *See id.* at 9-12.

The Court agrees with IntePros and rejects Dr. Andresen's contention that either Counts V or VI of the Amended Complaint, identical in substance to their counterparts in the original Statement of Claims, *see* Ex. 5 to Def.'s Mot. to Dismiss Reply & Opp'n to Cross-Mot. to Litigate, ECF No. 43-5 at 129-132 ¶¶ 498-513 (redline comparison of the two documents);[10] can be construed to assert a retaliation claim under section 3730(h) of the FCA.

First, the Court's review of "Count V: Unlawfull [sic] Termination in Violation of the 2013 [NDAA,]" indicates that this count can only reasonably be construed to refer to the NDAA, as it not only "expressly refer[s] to the NDAA itself[,]" but it also states "the legal standards in both 10 U.S.C. § 2409 [and] 41 U.S.C. § 4712, which are sister [whistleblower] statutes under the NDAA[.]" Def.'s Mot. to Dismiss Reply & Opp'n to Cross-Mot. to Litigate, ECF No. 43 at 7-8. The 2013 NDAA

---

[10] The only noteworthy difference between Counts V and VI in the Amended Complaint and Counts V and VI in Dr. Andresen's original Statement of Claims is that the term "Defendant," as used to name IntePros as a party, is changed to "Respondent."

amended 10 U.S.C. § 2409, which offers whistleblower protections
to contractor employees working on contracts with the Department
of Defense, and it also created 41 U.S.C. § 4712 to offer
similar whistleblower protections to contractor employees
working on contracts with other federal governmental agencies.
*See id.* at 8 n.1 (explaining that "whereas the anti-retaliation
language in 10 U.S.C. § 2409 refers to the Department of
Defense, the language in 41 U.S.C. § 4712 refers broadly to the
'Federal' government"); 2013 NDAA, Pub. L. No. 112-239, §§ 827,
4712, 126 Stat. 1632, 1833-41 (2013).

Here, paragraphs 499 and 500 of Count V quote language from
41 U.S.C. § 4712(a)(1) and (a)(2), which detail that statute's
"prohibition of reprisals" for a contractor disclosing protected
information related to a federal contract to certain covered
"persons and bodies," and from 10 U.S.C. § 2409(a)(2), which
similarly prohibits reprisals for a contractor disclosing
protected information about a Department of Defense contract to
covered "persons and bodies," including "employee[s] of the
Department of Defense." *See* Am. Compl., ECF No. 53 at 110 ¶¶
499-500. Following Count V's recitation of these standards, it
then pleads allegations regarding "a close temporal proximity"
between Dr. Andresen's alleged protected disclosures to the DoD
IG and her termination, *see id.* ¶¶ 501-03; as opposed to "any
action that could be reasonably characterized as a false

45

claim[,]" Def.'s Mot. to Dismiss Reply & Opp'n to Cross-Mot. to
Litigate, ECF No. 43 at 23. Thus, paragraph 504's statement that
IntePros' actions "constitute[d] a willful violation of Section
3730(h) of the NDAA Whistleblower Protection Act," Am. Compl.,
ECF No. 53 at 111 ¶ 504; does appear to be a "drafting error,"
but not regarding the FCA as Dr. Andresen alleges, *see* Pl.'s
Opp'n to Mot. to Dismiss & Cross-Mot. to Litigate, ECF No. 37 at
14-15. Rather, based on the surrounding allegations in Count V
and its title, the Court concludes that paragraph 504 should
have cited to either 41 U.S.C. § 4712 or 10 U.S.C. § 2409, or
both, instead of a non-existent section of the NDAA-"Section
3730(h)." *See* Am. Compl., ECF No. 53 at 111 ¶ 504.

The Court next turns to "Count VI: Unlawfull [sic]
Termination in Violation of [ ] 10 U.S.C. § 2409," which in
accordance with this title, replicates the legal standards set
forth in 10 U.S.C. § 2409 and cites to that statute's provisions
throughout the paragraphs contained therein. *See id.* at 111-12
¶¶ 506-11, 513. For example, paragraph 506 quotes language from
10 U.S.C. § 2409(a)(1)(A) prohibiting reprisals for a
contractor's disclosure of information regarding "a Department
of Defense contract or grant" or "Department funds," and
paragraph 507 quotes language from 10 U.S.C. § 2409(a)(2)(A)-(G)
which enumerates the entire list of covered "persons and bodies"
under the statute to whom protected disclosures can be made. *Id.*

at 111-12 ¶¶ 506-07. The remaining paragraphs of Count VI then specifically identify to whom Dr. Andresen made protected disclosures pursuant to 10 U.S.C. § 2409(a)(1) and (a)(2), plead "a close temporal proximity" between those disclosures and her termination, and conclude with an allegation that IntePros' actions "constitute[d] a willful violation of [ ] 10 U.S.C. § 2409." *Id.* at 112-13 ¶¶ 508-13. Although Count VI differs from Count V in that it solely refers to contracts with the Department of Defense rather than also incorporating 41 U.S.C. § 4712's language related to other federal contracts, Count VI, like Count V, "does not describe any 'false claims'" or refer to the FCA in its title, substance, or delineated legal standards. *See* Def.'s Mot. to Dismiss Reply & Opp'n to Cross-Mot. to Litigate, ECF No. 43 at 8-9.

Based on the above analysis of Counts V and VI in the Amended Complaint, the Court agrees with IntePros and concludes that any "drafting error" between the two counts can only reasonably be construed as amounting to an incorrect divide between the NDAA's sister whistleblowing statutes, 41 U.S.C. § 4712 and 10 U.S.C. § 2409, *see* Def.'s Mot. to Dismiss Reply & Opp'n to Cross-Mot. to Litigate, ECF No. 43 at 22-23; as opposed to between "the NDAA/10 U.S.C. § 2409, on the one hand, and the FCA/31 U.S.C. § 3730(h), on the other[,]" as Dr. Andresen contends, Pl.'s Opp'n to Mot. to Dismiss & Cross-Mot. to

Litigate, ECF No. 37 at 14. This explanation for the alleged "drafting error" is not "mathematically implausible" as Dr. Andresen contends, *see* Pl.'s Reply to Def.'s Opp'n to Cross-Mot. to Litigate, ECF No. 52 at 7-10; but rather the only reasonable construction based on the titles of Counts V and VI, and the substance, legal standards, and citations contained within them. Furthermore, it accounts for the existence of the two separate counts that Dr. Andresen added in the Amended Complaint. *See* Pl.'s Opp'n to Mot. to Dismiss & Cross-Mot. to Litigate, ECF No. 37 at 13 n.1, 14-15. Overall, as IntePros summarizes, "[b]oth counts repeatedly [and] expressly refer to and quote [the] two NDAA statutes[,]" [b]oth counts cite standards belonging to the two statutes[,]" and both "counts are even titled as [ ] arising from the NDAA—not the FCA." Def.'s Mot. to Dismiss Reply & Opp'n to Cross-Mot. to Litigate, ECF No. 43 at 22.

Nonetheless, Dr. Andresen takes issue with IntePros' labeling of paragraph 504's incorrect citation to "Section 3730(h) of the NDAA Whistleblower Protection Act" as a "stray reference," Def.'s Mot. to Dismiss Reply & Opp'n to Cross-Mot. to Litigate, ECF No. 43 at 23; because she argues that it was "the *correct* reference to the *correct* section of the FCA that addresses retaliation for whistleblowing[,]" Pl.'s Reply to Def.'s Opp'n to Cross-Mot. to Litigate, ECF No. 52 at 8 (emphasis in original). She adds that while the Amended

48

Complaint "does mention 'Section 3730(h),'" it "never mentions
41 U.S.C. § 4712 anywhere in any of her pleadings." *Id.* at 9.
The Court rejects this argument and agrees with IntePros that
Count V's one reference to "'Section 3730(h)' does not come
close to offsetting the numerous express references and the
standards cited belonging to 41 U.S.C. § 4712 and 10 U.S.C. §
2409." Def.'s Mot. to Dismiss Reply & Opp'n to Cross-Mot. to
Litigate, ECF No. 43 at 23. Nowhere in Counts V and VI does Dr.
Andresen similarly plead the FCA's legal standard or enumerate
allegations regarding "an FCA violation," *i.e.*, "a false or
fraudulent claim." *Id.* (citing *U.S. ex rel. Bender v. N. Am.
Telecomms., Inc.*, 686 F. Supp. 2d 46, 52 (D.D.C. 2010)). In Dr.
Andresen's words, the explanation "requiring the least
speculation is usually correct[,]" Pl.'s Reply to Def.'s Opp'n
to Cross-Mot. to Litigate, ECF No. 52 at 9; and here, this lone
reference to "Section 3730(h)," without more, would have
inappropriately required IntePros to "divine the meaning" to
this non-existent citation in law, Def.'s Mot. to Dismiss Reply
& Opp'n to Cross-Mot. to Litigate, ECF No. 43 at 23; *see
Caldwell v. Argosy Univ.*, 797 F. Sup. 2d 25, 28 (D.D.C. 2011)
(stating the requirement that a complaint must give "defendants
fair notice of the claims against them").

Accordingly, because the Court has determined that the
Amended Complaint cannot reasonably be interpreted to plead an

FCA retaliation claim,[11] it rejects Dr. Andresen's argument that this claim is somehow "alive" and can now be litigated in this district court. Pl.'s Opp'n to Mot. to Dismiss & Cross-Mot. to Litigate, ECF No. 37 at 7, 13; *see* Def.'s Mot. to Dismiss Reply & Opp'n to Cross-Mot. to Litigate, ECF No. 43 at 22 ("Dr. Andresen never pleaded [an FCA] retaliation claim with this Court and cannot litigate a claim never pleaded."). As such, the Court also rejects Dr. Andresen's argument that her FCA claim "is central, . . . not new, futile, or time-barred" because construing the Amended Complaint to include such a claim would amount to more than the mere correction of an "inartful" drafting error, but rather the addition of an entirely new claim, even if "derived from the same set of underlying facts as [her] NDAA claim," that would prejudice not Dr. Andresen but IntePros at this stage in the litigation. *See* Pl.'s Opp'n to Mot. to Dismiss & Cross-Mot. to Litigate, ECF No. 37 at 18-19.[12]

---

[11] Dr. Andresen's reply argument that the "claim" underlying her FCA retaliation claim is valid, specifically that she "need not have filed an FCA *qui tam* action in order to have a valid FCA retaliation claim" is therefore irrelevant. *See* Pl.'s Reply to Def.'s Opp'n to Cross-Mot. to Litigate, ECF No. 52 at 22-23.
[12] The Court also rejects Dr. Andresen's argument that "even if forced to concede that her FCA claim is 'new,' . . . the claim still is timely under the three-year FCA statute[] of limitations." Pl.'s Opp'n to Mot. to Dismiss & Cross-Mot. to Litigate, ECF No. 37 at 19. Arguments regarding the timeliness of such an "amended claim" and its "relation back" to the original pleading are irrelevant if the so-called "amended claim" was never actually pled. *Id.*

It is also irrelevant that Arbitrator Janofsky refused to permit Dr. Andresen to correct the alleged "drafting error" regarding her FCA retaliation claim. *Id.* at 7. Such a refusal does not mean her FCA retaliation claim "never existed in the arbitral forum[,]" *id.* at 7-8, 10; but rather that Arbitrator Janofsky considered the merits of Dr. Andresen's FCA "drafting error" argument, rejected its genuineness, and "dismissed" that claim, Award, Ex. 2 to Def.'s Mot. to Dismiss, ECF No. 35-2 at 10-11.[13] Therefore, because Dr. Andresen's FCA retaliation claim

---

[13] Dr. Andresen is thus wrong in her claim that the arbitration award made "an incorrect assumption" that she was adding a new claim. Pl.'s Opp'n to Mot. to Dismiss & Cross-Mot. to Litigate, ECF No. 37 at 17 n.5. Rather than make any "assumption," Arbitrator Janofsky compared the Statement of Claims to the proposed "corrected" version to discern substantive changes between the two, such as the renaming of Count VI to state the FCA, the addition of "a whole new paragraph purporting to recite the standard for [an] FCA retaliation claim[,]" and the replacement of citations to 10 U.S.C. § 2409 with citations and express references to 31 U.S.C. § 3730. *See* Def.'s Mot. to Dismiss Reply & Opp'n to Cross-Mot. to Litigate, ECF No. 43 at 10; Award, Ex. 2 to Def.'s Mot. to Dismiss, ECF No. 35-2 at 10. As such, Dr. Andresen, contrary to AAA Commercial Rule R-6(b), was incorrect to contend that her changes to the Statement of Claims could be characterized as mere "corrections" rather than "a formal 'amendment.'" Pl.'s Opp'n to Mot. to Dismiss & Cross-Mot. to Litigate, ECF No. 37 at 16. The Court therefore rejects Dr. Andresen's "view that [IntePros] had accepted the corrected version of the Statement of Claims," *id.* at 17 n.5; as the record indicates that IntePros objected, in writing, to her "corrected" filing, *see* Ex. G to Pl.'s Opp'n to Mot. to Dismiss & Cross-Mot. to Litigate, ECF No. 37-9 at 4; and made clear "that the onus was on Dr. Andresen to move to amend seeking arbitrator approval if she wanted to add another claim[,]" Def.'s Mot. to Dismiss Reply & Opp'n to Cross-Mot. to Litigate, ECF No. 43 at 24. Furthermore, Dr. Andresen's argument that since IntePros "did not file any claim or counterclaim within

was dismissed in arbitration and was not otherwise properly pled

in this district court,[14] and because Arbitrator Janofsky also

_____

the 14-calendar-day time period stipulated by Rule R-6(b)" is
illogical, since she is claiming that she did not need to follow
that rule at all since she assumed she was not formally adding a
new claim in arbitration with her amended Statement of Claims.
Pl.'s Opp'n to Mot. to Dismiss & Cross-Mot. to Litigate, ECF No.
37 at 17.

[14] Although the Court has concluded that an FCA retaliation claim
was not properly pled in the Amended Complaint and cannot be
added now based on the false premise of a simple "drafting
error," the Court notes that some of Dr. Andresen's exhibits
indicate "sincerity" in her claim that she intended to assert
retaliation claims under both the NDAA and the FCA in amending
the complaint, Pl.'s Opp'n to Mot. to Dismiss & Cross-Mot. to
Litigate, ECF No. 37 at 7, 13; but that her intention was
hindered by substantive legal errors committed by her various
attorneys. For example, Dr. Andresen's declaration, attached as
an exhibit to her reply to IntePros' opposition to her cross-
motion to litigate, states that following a phone conversation
with Mr. Wilkenfeld in November 2015, "it was decided that Mr.
Wilkenfeld's firm would prepare a Motion to Amend [the]
Complaint that included two retaliation claims, one under 10
U.S.C. § 2409 and one under 31 U.S.C. § 3730(h)." Ex. 3 to Pl.'s
Reply to Def.'s Opp'n to Cross-Mot. to Litigate, ECF No. 52-4 at
1. In this same declaration, Dr. Andresen details a 2019
conversation that she had with Mr. Wilkenfeld, in which he
stated that if subpoenaed, he would explain that although it had
been his intention to add an FCA retaliation claim via the
Amended Complaint, his firm had erred in so drafting it. _Id._
Similarly, Dr. Andresen also attaches as exhibits emails between
her and her attorneys at Cook Craig & Francuzenko, PLLC
indicating both that she: (1) informed them of her "claims in
the IntePros matter . . . under 10 U.S.C. [§] 2409 and Section H
of the FCA" prior to them signing their representation
agreement; and (2) later informed them that they submitted a
Statement of Claims in arbitration that replicated Mr.
Wilkenfeld's errors in Counts V and VI of the Amended Complaint.
_See_ Exs. 1 & 2 to Pl.'s Reply to Def.'s Opp'n to Cross-Mot. to
Litigate, ECF No. 52-2-52-3. This evidence suggests that subpar
lawyering prohibited Dr. Andresen from properly pleading her
intended FCA retaliation claim, both in this Court and in
arbitration. The Court cannot rectify these legal errors to Dr.

denied her NDAA retaliation claim in the arbitration award, *see
id.* at 9-10; the Court declines to "permit[] [Dr. Andresen] to
litigate these two[] retaliation claims in D.C. District
Court[,]" Pl.'s Opp'n to Mot. to Dismiss & Cross-Mot. to
Litigate, ECF No. 37 at 7.

       **2. The Court Rejects Dr. Andresen's Request for the
Court's "Fulsome Judicial Review of the
Arbitrability Determination" and Her Argument
That Her NDAA Claim and Her (Non-Existent) FCA
Retaliation Claim Are Not Arbitrable**

Dr. Andresen next challenges Arbitrator Healey's
"Affirmative Determination of Arbitrability" for all of her
claims, *see* Ex. 10 to Def.'s Mot. to Dismiss Reply & Opp'n to
Cross-Mot. to Litigate, ECF No. 43-10; and she asks the Court to
"undertake a fulsome judicial review of [this] arbitrability
determination," Pl.'s Opp'n to Mot. to Dismiss & Cross-Mot. to
Litigate, ECF No. 37 at 20. She bases this request on 9 U.S.C. §
10(a)(4) of the FAA and claims that Arbitrator Healey "'exceeded
[his] powers' because his arbitrability determination did not
draw its essence from the [parties'] contract" containing the
arbitration clause. *Id.* at 20-21 (quoting 9 U.S.C. § 10(a)(4)).
IntePros responds that Dr. Andresen is "attempt[ing] to rehash
issues already decided either by this Court or by the
arbitrator" and that a cross-motion to litigate "is not a valid

_____

Andresen's benefit now based on her false characterization of
them as minor technical changes.

mechanism" to do so under the FAA. Def.'s Mot. to Dismiss Reply
& Opp'n to Cross-Mot. to Litigate, ECF No. 43 at 12-13. For the
reasons discussed below, the Court agrees with IntePros.

To begin, the Court notes that it previously ordered the
parties to "proceed to arbitration in order for an arbitrator to
determine, in the first instance, whether the claims in this
action [were] arbitrable." Order, ECF No. 24 at 1. In compelling
arbitration, the Court determined that the arbitration clause's
incorporation of the AAA rules, "which, in turn, empower an
arbitrator to rule on the question of arbitrability, . . .
constitutes clear and unmistakable evidence that [the parties]
intended to delegate the question of arbitrability to an
arbitrator." *Andresen*, 240 F. Supp. 3d at 149-50; *see also W & T
Travel Servs.*, 69 F. Supp. 3d at 167 ("[A]n arbitration clause
adopting the rules of the AAA makes the issue of arbitrability
one for the arbitrator, not the court."); *Chevron Corp. v.
Republic of Ecuador*, 949 F. Supp. 2d 57, 66 (D.D.C. 2013) ("To
the extent that the parties here have 'clearly and unmistakably'
agreed to arbitrate arbitrability, then, this Court must give
substantial deference to that decision."), *aff'd*, 795 F.3d 200
(D.C. Cir. 2015), *cert. denied*, 578 U.S. 1023, 136 S. Ct. 2410,
195 L. Ed. 2d 780 (2016); *Howsam v. Dean Witter Reynolds, Inc.*,
537 U.S. 79, 83, 123 S. Ct. 588, 154 L. Ed. 2d 491 (2002) ("The
question whether the parties have submitted a particular dispute

54

to arbitration, *i.e.*, the 'question of arbitrability,' is an issue for judicial determination [u]nless the parties clearly and unmistakably provide otherwise." (citation and some internal quotation marks omitted)).

Despite this conclusion, Dr. Andresen now substantively challenges Arbitrator Healey's determination that her claims were "arbitrable in their entirety[,]" Ex. 10 to Def.'s Mot. to Dismiss Reply & Opp'n to Cross-Mot. to Litigate, ECF No. 43-10 at 10.[15] The Court rejects this challenge, as it has already detailed its reasons for concluding that "the question of arbitrability is [one] properly reserved for arbitral resolution" and that it could "appropriately defer to the arbitrator on the question of arbitrability" in Dr. Andresen's case. *Andresen*, 240 F. Supp. 3d at 163. As IntePros notes, "the law does not provide a district court with the special ability to refer to arbitration the question of arbitrability and *then* scrutinize the arbitrator's decision on the issue outside of the limited review available in a formal motion to vacate or modify pursuant to 9 U.S.C. § 10-or 9 U.S.C. § 11." Def.'s Mot. to Dismiss Reply & Opp'n to Cross-Mot. to Litigate, ECF No. 43 at 13-14. The Court agrees, as the FAA's "exclusive" grounds for

---

[15] Notably, Dr. Andresen does not challenge the Court's prior decision to compel arbitration, only Arbitrator Healey's "Affirmative Determination of Arbitrability and Order."

vacatur and modification under sections 10 and 11 "sharply limit the judicial review of the evidentiary and legal findings of" an arbitrator. *Coyne*, 308 F. Supp. 3d at 210.

Here, Dr. Andresen admits that her cross-motion to litigate is not a motion to vacate or modify under sections 10 or 11 of the FAA. *See, e.g.*, Pl.'s Opp'n to Mot. to Dismiss & Cross-Mot. to Litigate, ECF No. 37 at 7, 12, 17 n.6. And yet, she asserts: (1) her request for judicial review of the arbitrability decision pursuant to 9 U.S.C. § 10(a)(4), which states one of the FAA's "exclusive" grounds for vacatur—when arbitrators "exceed[] their powers," *id.* at 20; and (2) her "ability to litigate her claims" pursuant to 9 U.S.C. § 10(b), which allows a court to "direct a rehearing by the arbitrators" only *after* an award is vacated pursuant to a vacatur petition, Pl.'s Reply to Def.'s Opp'n to Cross-Mot. to Litigate, ECF No. 52 at 12. The Court agrees with IntePros that Dr. Andresen's two citations to 9 U.S.C. § 10 do "not outweigh her other express statements and convert the Cross-Motion into a motion to vacate[,]" Def.'s Mot. to Dismiss Reply & Opp'n to Cross-Mot. to Litigate, ECF No. 43 at 14 n.4; or somehow appropriately commingle the two. This conclusion is bolstered by the fact that at the time of filing her cross-motion to litigate, Dr. Andresen had not yet filed her petition for vacatur, which she filed as an individual motion a

56

week later, *see* Pl.'s Mot. to Vacate, ECF No. 45; and which the Court addresses separately below, *see infra* section IV.C.

Instead of being a proper way "to vindicate her rights in court after the process of arbitration[,]" Pl.'s Reply to Def.'s Opp'n to Cross-Mot. to Litigate, ECF No. 52 at 12; the Court concludes that a "cross-motion to litigate" is "not a valid mechanism" for challenging the merits of an arbitration decision, Def.'s Mot. to Dismiss Reply & Opp'n to Cross-Mot. to Litigate, ECF No. 43 at 12. Although a litigant may challenge an arbitration determination outside of the "exclusive regimes for" review provided for by sections 10 and 11 of the FAA, for example "under state statutory or common law," *see Hall St.*, 552 U.S. at 590 ("The FAA is not the only way into court for parties wanting review of arbitration awards[.]"); which Dr. Andresen recognizes, *see* Pl.'s Opp'n to Mot. to Dismiss & Cross-Mot. to Litigate, ECF No. 37 at 20 ("It does not appear necessary to cite to one of the exclusive, statutory bases for vacatur when requesting the court's *de novo* review of an arbitrability determination."); she fails to identify any "other possible avenue[]" for judicial review of Arbitrator Healey's affirmative arbitrability determination that could be resolved via her cross-motion to litigate, *see Hall St.*, 552 U.S. at 590.

Instead, in her putative cross-motion to litigate, Dr. Andresen challenges the substance of Arbitrator Healey's

decision, *see* Pl.'s Opp'n to Mot. to Dismiss & Cross-Mot. to Litigate, ECF No. 37 at 20-21, 31 (arguing that the "arbitrability determination did not draw its essence from the contract"); and also specific legal conclusions from the award, *see* Pl.'s Reply to Def.'s Opp'n to Cross-Mot. to Litigate, ECF No. 52 at 24-28 (arguing that the arbitrators did not correctly consider the threshold issue of whether "independent contractors have employee status" for purposes of evaluating Dr. Andresen's NDAA retaliation claim); Pl.'s Opp'n to Mot. to Dismiss & Cross-Mot. to Litigate, ECF No. 37 at 31-32 (same); which she is not permitted to do without a proper legal basis, *see Misco*, 484 U.S. at 38 ("Courts . . . do not sit to hear claims of factual or legal error by an arbitrator as an appellate court does in reviewing decisions of lower courts."); Def.'s Mot. to Dismiss Reply & Opp'n to Cross-Mot. to Litigate, ECF No. 43 at 16 (rejecting Dr. Andresen's "substantive objection" to Arbitrator Janofsky's award conclusion regarding her "employment status under the NDAA" because she "has not set forth any ground to challenge [that] decision" in this cross-motion). As a result, the Court declines to consider Dr. Andresen's substantive arguments raised in her cross-motion to litigate that should have been advanced in a formal petition for vacatur pursuant to the grounds stated in section 10 of the FAA.

The Court is furthermore unpersuaded by the cases Dr. Andresen cites to support her claim that the Court can conduct de novo review of arbitration determinations in ruling on a cross-motion to litigate. For example, *Kaplan v. First Options of Chicago, Inc.*, 19 F.3d 1503 (3d Cir. 1994), *aff'd sub nom. First Options of Chi., Inc. v. Kaplan*, 514 U.S. 938, 115 S. Ct. 1920, 131 L. Ed. 2d 985 (1995); and *Regnery Publishing, Inc. v. Miniter*, 601 F. Supp. 2d 192 (D.D.C. 2009), *aff'd*, 368 F. App'x 148 (D.C. Cir. 2010); both involved motions/cross-motions to either vacate or confirm an arbitration award. In *Kaplan*, the Court of Appeals for the Third Circuit granted a request to vacate the arbitration award because it concluded that the arbitration panel lacked jurisdiction over the parties since there was no arbitration clause in the signed agreement (which is also not factually the case here). *See* 19 F.3d at 1505. In *Regnery*, the arbitration award was challenged under 9 U.S.C. § 10(a)(1) and (4) of the FAA and on common law grounds, and this Court denied those challenges, thereby confirming the award. *See* 601 F. Supp. 2d at 194-96. Thus, in neither *Kaplan* nor *Regnery* did the party challenging the arbitration award seek to do so via a cross-motion to litigate requesting judicial review of an arbitrability determination, and therefore, the Court concludes that these cases are not analogous to the instant situation.

The same is true for the remaining cases to which Dr. Andresen cites. For example, the procedural posture of *Chevron Corp. v. Republic of Ecuador*, 949 F. Supp. 2d 57 (D.D.C. 2013) involved a motion to confirm an arbitration award, not a cross-motion to litigate. *Id.* at 60. Likewise, *Davis v. Chevy Chase Financial Ltd.*, 667 F.2d 160 (D.C. Cir. 1981) involved an appeal to the D.C. Circuit challenging the district court's affirmation of the arbitration award on a motion for vacatur or modification under sections 10 and 11 of the FAA, in which the D.C. Circuit considered whether the arbitrator exceeded his authority pursuant to 9 U.S.C. 10(a)(4) when reevaluating the district court's decision. *See id.* at 163-64. Lastly, Dr. Andresen cites *Salsitz v. Kreiss*, 198 Ill. 2d 1 (Ill. 2001), which apart from being a non-binding state court decision, also makes no reference to a litigant being able to use a "cross-motion to litigate" to challenge an arbitrability determination and oppose the other party's motion to dismiss following the completion of arbitration.

Despite proffering no caselaw to support her claim that the arbitrability decision can be judicially reviewed on a cross-motion to litigate, Dr. Andresen next argues that dismissal is "premature" because, contrary to Arbitrator Healey's decision, both of her retaliation claims under the NDAA and the FCA are "properly before this Court" and not "arbitrable under the

limited scope of the parties' arbitration agreement[,]" and that she should therefore be permitted to litigate them in this district court via her cross-motion. Pl.'s Opp'n to Mot. to Dismiss & Cross-Mot. to Litigate, ECF No. 37 at 10, 12-13.

Even if the Court were to overlook the fact that Dr. Andresen's challenges to the arbitrability decision are not advanced in a proper petition to vacate or modify, many of the cases she cites indicate that arbitrators' determinations are entitled to "great deference," *Davis*, 667 F.2d at 166; and "'considerable leeway,'" such that they are set aside "'only in certain narrow circumstances[,]'" *Chevron Corp.*, 949 F. Supp. 2d at 67 (quoting *Kaplan*, 514 U.S. at 943). For example, the D.C. Circuit stated in *Davis* that "[w]hen a reviewing court is called upon to determine whether an arbitrator, in passing on a matter concededly within his jurisdiction, misconstrued the contract in question, great deference is appropriate[,]" and that the arbitration award should not be upset "if it represents a plausible interpretation of the contract." 667 F.2d at 166. Similarly, in *Chevron Corp.*, another judge in this district court noted that "the 'beyond the scope [of the arbitration clause]' defense to confirmation should be construed narrowly," as the party resisting confirmation on that basis must "overcome a powerful presumption that the arbitral body acted within its

powers." 949 F. Supp. 2d at 67 (citation and internal quotation marks omitted).

This deferential review to arbitrability decisions is balanced against the longstanding principle that "[n]either arbitrators nor courts . . . have the prerogative to redraft an arbitration clause to require parties to arbitrate matters that they did not initially agree to arbitrate." *Davis*, 667 F.2d at 167. Here, contrary to the "limited arbitration clause" in the contract in *Davis*, which the D.C. Circuit concluded did not "empower[] an arbitrator to make largely nonreviewable decisions regarding his jurisdiction[,]" *id.*; the arbitration clause in the parties' Sub Contractor Agreement contains "broad language," Ex. 10 to Def.'s Mot. to Dismiss Reply & Opp'n to Cross-Mot. to Litigate, ECF No. 43-10 at 6; providing that "[a]ny and all disputes, controversies and claims arising out of or relating to [the] Agreement or concerning the respective rights or obligation[s] hereunder of the parties [ ] shall be settled and determined by arbitration[,]" Sub Contractor Agreement, Provision 9(f), Ex. A, ECF No. 12-1 at 6.

Thus, although Dr. Andresen argues that her NDAA claim and (non-existent) FCA retaliation claim do "not 'arise under and relate to obligations' having to do with her employment agreement with" IntePros, Pl.'s Opp'n to Mot. to Dismiss & Cross-Mot. to Litigate, ECF No. 37 at 30; the Court disagrees

based on the sweeping "plain text" of the Sub Contractor Agreement's arbitration clause, *Chevron Corp.*, 949 F. Supp. 2d at 68; *see Orcutt v. Kettering Radiologists, Inc.*, 199 F. Supp. 2d 746, 750, 753-56 (S.D. Ohio 2002) (concluding that arbitration of an FCA retaliation claim was proper and "within the scope of the arbitration provision" when the employment agreement "broadly" required arbitration of "[a]ny controversy or claim arising out of or relating to" that agreement); *cf. U.S. ex rel. Paige v. BAE Sys. Tech. Sols. & Servs., Inc.*, 566 F. App'x 500, 504 (6th Cir. 2014) (excluding the plaintiff's FCA retaliation claim from arbitration where the terms of the employment agreement were "narrow[]" and "explicitly limit[ed] the scope of the [arbitration] clause to the disputes arising 'under the terms of th[e] agreement' and [did] not include claims 'related' to the agreement or that ar[o]se out of the relationship between the parties"). As such, the Court concludes that even if it could review Arbitrator Healey's arbitrability decision via the instant cross-motion to litigate, his decision would "survive[] the deferential review required in this circumstance," *Chevron Corp.*, 949 F. Supp. 2d at 69; as the Court does not conclude that his determination of arbitrability for the "entirety" of Dr. Andresen's claims, Ex. 10 to Def.'s Mot. to Dismiss Reply & Opp'n to Cross-Mot. to Litigate, ECF No. 43-10 at 10; "did not draw its essence from the contract[,]" or

was outside "the scope of the arbitration clause," Pl.'s Opp'n to Mot. to Dismiss & Cross-Mot. to Litigate, ECF No. 37 at 21, 23.

In furtherance of this analysis, the Court rejects Dr. Andresen's claims that her alleged FCA retaliation claim and her NDAA retaliation claim under 10 U.S.C. 2409 are "not arbitrable." Pl.'s Opp'n to Mot. to Dismiss & Cross-Mot. to Litigate, ECF No. 37 at 26, 30. First, the Court has already determined that the Amended Complaint does not reasonably plead an FCA retaliation claim, *see supra* section IV.A.1; such that the Court concludes that this claim is not "properly before this Court," and there is no need to determine whether it is "not arbitrable" and can now be litigated, Pl.'s Opp'n to Mot. to Dismiss & Cross-Mot. to Litigate, ECF No. 37 at 10, 26.[16]

---

[16] The Court therefore declines to apply the "two methodologies" advanced by Dr. Andresen in her cross-motion to litigate for discerning the arbitrability of an FCA retaliation claim. *See* Pl.'s Opp'n to Mot. to Dismiss & Cross-Mot. to Litigate, ECF No. 37 at 22-30. And, "[i]n any event, courts routinely compel arbitration of FCA retaliation claims." Def.'s Mot. to Dismiss Reply & Opp'n to Cross-Mot. to Litigate, ECF No. 43 at 15; *see, e.g.*, *Skrynnikov v. Fed. Nat'l Mortg. Ass'n*, 943 F. Supp. 2d 172, 178 (D.D.C. 2013) (requiring the plaintiff's FCA retaliation claim to "be submitted to the arbitrator who [would] decide arbitrability issues"); *U.S. ex rel. McBride v. Halliburton Co.*, No. 05-0828, 2007 WL 1954441, at *4-5 (D.D.C. July 5, 2007) (concluding that "there is nothing particularly unique about the policies of FCA—and in particular § 3730(h)—relative to those of other federal statutes creating arbitrable causes of action" and mandating that the plaintiff's FCA retaliation claim "be arbitrated"); *cf. U.S. ex rel. Welch v. My Left Foot Child.'s Therapy, LLC*, 871 F.3d 791, 799-800 (9th Cir.

Second, Dr. Andresen already lost this "not arbitrable" argument when the Court compelled arbitration "in the first instance" of all of her claims, Order, ECF No. 24 at 1; including her federal statutory claims under the NDAA, *see Andresen*, 240 F. Supp. 3d at 161-63. In the Court's earlier Memorandum Opinion, it concluded that a valid and enforceable delegation provision, *i.e.*, "[a] written agreement memorializing the parties' agreement to arbitrate the threshold question of arbitrability," was in place (following the Court's removal of an unenforceable cost-prohibitive provision), and that the question of arbitrability "*must* [be] reserve[d] . . . for arbitral resolution." *Id.* at 149 (emphasis added). At no point prior to that decision did Dr. Andresen argue that her claims under the NDAA could never be arbitrated, and the Court is unpersuaded by her new arguments to that effect here, as discussed further below.

Dr. Andresen first cites *Nguyen v. City of Cleveland*, 121 F. Supp. 2d 643 (N.D. Ohio 2000) to argue that "incompatibility

---

2017) (concluding that FCA *fraud* claims "always belong to the government," have "no direct connection with" a plaintiff's employment, and are therefore "not arbitrable," in contrast to FCA *retaliation* claims, which relate to a plaintiff's individualized wrongful termination from his or her employment for whistleblower activities, *see Orcutt v. Kettering Radiologists, Inc.*, 199 F. Supp. 2d 746, 756 (S.D. Ohio 2002) (distinguishing between FCA false claims and FCA retaliation claims pursuant to 31 U.S.C. § 3730(h))).

exists between compulsory arbitration and federal jurisdiction"
in the context of the NDAA due to employees being "'forced by
unequal bargaining power to accept a forum demanded as a
condition of employment by the very party on which [s]he
informed.'" Pl.'s Opp'n to Mot. to Dismiss & Cross-Mot. to
Litigate, ECF No. 37 at 30-31 (quoting *Nguyen*, 121 F. Supp. 2d
at 647). However, *Nguyen* addresses the arbitrability of an FCA
retaliation claim, not an NDAA claim, *see Nguyen*, 121 F. Supp.
2d at 645-47; and regardless, many courts "have uniformly
rejected *Ngyuen*'s reasoning[,]" *see U.S. ex rel. Cassaday v.
KBR, Inc.*, 590 F. Supp. 2d 850, 862-63 (S.D. Tex. 2008)
(collecting cases and noting that "the *Nguyen* court is the only
court to find FCA retaliation claims are not arbitrable because
an inherent conflict exists between arbitration and the
underlying purposes of the FCA"); *U.S. ex rel. McBride v.
Halliburton Co.*, No. 05-0828, 2007 WL 1954441, at *4-5 (D.D.C.
July 5, 2007) (finding *Nguyen*'s reasoning to be "unpersuasive").

Next, Dr. Andresen claims that the language in 10 U.S.C. §
2409 "is so clear" that "the appropriate district court" should
determine the arbitrability of an NDAA claim. Pl.'s Opp'n to
Mot. to Dismiss & Cross-Mot. to Litigate, ECF No. 37 at 30
(quoting 10 U.S.C. § 2409(c)(2)). The Court rejects this
argument and is instead persuaded by the reasoning in *Robertson
v. Intratek Computer, Inc.*, 976 F.3d 575 (5th Cir. 2020), *cert.*

*denied*, 142 S. Ct. 2708, 212 L. Ed. 2d 777 (2022); which found NDAA retaliation claims to be arbitrable, *see id.* at 572-82. In *Robertson*, the Court of Appeals for the Fifth Circuit ("Fifth Circuit") concluded that the plaintiff employee could not use 41 U.S.C. § 4712, the sister whistleblowing statute to 10 U.S.C. § 2409, "to escape the arbitration agreement he signed." *Id.* at 578-79. The Fifth Circuit analyzed 41 U.S.C. § 4712's statutory text, specifically the sections regarding the "exhaustion of remedies" and "rights and remedies not waivable" to conclude that Congress did not intend to "override" the FAA and prohibit arbitration for claims based on 41 U.S.C. § 4712. *See id.* at 579-82. Although Dr. Andresen argues that *Robertson* is inapplicable here because it deals with 41 U.S.C. § 4712, a "distinct" statute from 10 U.S.C. § 2409, Pl.'s Reply to Def.'s Opp'n to Cross-Mot. to Litigate, ECF No. 52 at 20 n.5-21; the Court rejects this argument, as the statutory provisions of 41 U.S.C. § 4712 examined by the Fifth Circuit to reach its conclusion are identical to those appearing in 10 U.S.C. § 2409, *compare* 41 U.S.C. § 4712(c)(2), (c)(7), *with* 10 U.S.C. § 2409(c)(2), (c)(7). As such, *Robertson*'s reasoning indicates that claims under 10 U.S.C. § 2409 are arbitrable, and the Court rejects Dr. Andresen's attempt at "a do-over . . . in light of the unsatisfactory result she received in arbitration" by requesting permission to litigate her NDAA retaliation claim in

this Court via the present cross-motion.[17] Def.'s Mot. to Dismiss Reply & Opp'n to Cross-Mot. to Litigate, ECF No. 43 at 12.

Accordingly, for all the above reasons, the Court **DENIES** Dr. Andresen's Cross-Motion to Permit Litigation of Two Retaliation Claims in D.C. District Court under 31 U.S.C. § 3730(h) of the FCA and 10 U.S.C. § 2409 of the 2013 NDAA. *See* ECF No. 38. Dr. Andresen has not demonstrated that she pled an

---

[17] As noted earlier, this includes the Court rejecting Dr. Andresen's request to re-visit Arbitrator Janofsky's substantive conclusion that her NDAA retaliation claim "[could not] stand" because she was a statutorily ineligible "independent contractor" and not IntePros' "employee." Award, Ex. 2 to Def.'s Mot. to Dismiss, ECF No. 35-2 at 9. "[I]n light of the jurisdictional rules governing arbitrability," this issue could only be "reopened" pursuant to a motion "to confirm or vacate an arbitration award[,]" for which the standard of review "is extremely deferential[.]" *United Parcel Serv., Inc. v. Int'l Brotherhood of Teamsters, AFL-CIO*, 999 F. Supp. 70, 73, 77 (D.D.C. 1998). And, in any event, another judge in this district court recently concluded that "the most important factor to consider" in "determining whether an individual is an employee," as opposed to an independent contractor, under the NDAA, is "the extent of the employer's right to control the 'means and manner' of the worker's performance." *Wykosky v. ATCS, PLLC*, No. 22-1881, 2023 WL 4547992, at *3 (D.D.C. July 14, 2023) (citation and some internal quotation marks omitted). Arbitrator Janofsky engaged in this exact inquiry prior to concluding that Dr. Andresen did not have a cause of action under the NDAA. *See* Award, Ex. 2 to Def.'s Mot. to Dismiss, ECF No. 35-2 at 5, 9. Furthermore, as Arbitrator Janofsky noted, and Dr. Andresen admits, it was not until the 2015 amendments to 10 U.S.C. § 2409 that "the scope of" the NDAA was "broaden[ed]" to offer whistleblower protections to independent contractors, which was *after* Dr. Andresen's engagement with IntePros ended. *Id.* at 9 n.1; Pl.'s Opp'n to Mot. to Dismiss & Cross-Mot. to Litigate, ECF No. 37 at 31 n.22. Thus, there is no legitimate basis for the Court to entertain Dr. Andresen's additional arguments on this point. *See* Pl.'s Reply to Def.'s Opp'n to Cross-Mot. to Litigate, ECF No. 52 at 24-28.

FCA retaliation claim in the Amended Complaint that can now be litigated, even absent the arbitration award disallowing this claim, and she has failed to persuade the Court that it can review Arbitrator Healey's affirmative arbitrability determination, including regarding the arbitrability of these two retaliation claims, on a cross-motion to litigate, as opposed to under a petition for vacatur pursuant to the appropriate provisions of the FAA.[18] Having so concluded, and given that arbitration is now complete, the Court next turns to whether dismissal is appropriate, as IntePros contends.[19]

---

[18] In fact, Dr. Andresen has proffered no reply arguments regarding the cognizability of a "cross-motion to litigate" for challenging arbitration decisions in district court.

[19] IntePros proffers three additional arguments for why Dr. Andresen's cross-motion to litigate should be "barred," specifically pursuant to: (1) the "law-of-the-case doctrine;" (2) principles of *res judicata*; and (3) the equitable doctrine of judicial estoppel. *See* Def.'s Mot. to Dismiss Reply & Opp'n to Cross-Mot. to Litigate, ECF No. 43 at 17-18, 20-22. Given its denial of Dr. Andresen's cross-motion to litigate, the Court declines to consider these arguments in detail. However, the Court briefly notes that judicial estoppel, which "prevents a party from prevailing in one phase of a case on an argument and then relying on a contradictory argument to prevail in another phase[,]" *Pegram v. Herdrich*, 530 U.S. 211, 227 n.8, 120 S. Ct. 2143, 147 L. Ed. 2d 164 (2000); is inapplicable here since Dr. Andresen did not "prevail" or "succeed" in an earlier stance in litigation on which she now "renege[s]." *See New Hampshire v. Maine*, 532 U.S. 742, 750-51, 121 S. Ct. 1808, 149 L. Ed. 2d 968 (2001); Def.'s Mot. to Dismiss Reply & Opp'n to Cross-Mot. to Litigate, ECF No. 43 at 20. Rather, the Joint Status Report, to which IntePros points, relayed the outcome of the arbitrability decision and the parties' *joint* view that the Court should further stay proceedings pending the outcome of arbitration. Joint Status Report, ECF No. 27 at 1. In addition, the "law-of-the-case doctrine," which "refers to a family of rules embodying

### 3. The Court Concludes That Dismissal of Dr. Andresen's Stayed Action Is Now Appropriate Due to the Completion of Arbitration Resulting in a Binding Award in Favor of IntePros on All Claims

IntePros argues that since all of Dr. Andresen's claims in arbitration "were either dismissed with prejudice voluntarily or decided against her by the arbitrator at the dispositive motion stage[,]" Def.'s Mot. to Dismiss, ECF No. 35 at 3-4; "[n]ow is the time to dismiss this suit, rather than awaiting any judicial confirmation of the Award or the adjudication of any petition to vacate[,]" Def.'s Mot. to Dismiss Reply & Opp'n to Cross-Mot. to Litigate, ECF No. 43 at 24. Dr. Andresen responds that dismissal is "premature" because she contends that the language of 9 U.S.C. § 3 indicates that the issuance of an award means that "arbitration has reached a provisional status rather than a final one[,]" and that "arbitration is not over" until the Court has had "the opportunity to evaluate whether the award should be

_____

the general concept that a court involved in later phases of a lawsuit should not re-open questions decided (*i.e.*, established as the law of the case) by that court or a higher one in earlier phases[,]" *Crocker v. Piedmont Aviation, Inc.*, 49 F.3d 735, 739 (D.C. Cir. 1995); applies to support the Court's conclusion that it need not reconsider its earlier decision compelling arbitration, but it does not apply to prohibit review of Arbitrator Healey's arbitrability determination, as he does not represent this Court "or a higher one," *id.*; *cf. Int'l Brotherhood of Teamsters*, 999 F. Supp. at 72, 75 (applying the law-of-the-case doctrine to preclude the district court from revisiting its "prior ruling on the arbitrability of th[e] dispute" when that court, not an arbitrator, previously determined that "the dispute was arbitrable").

confirmed, modified, or vacated." Pl.'s Opp'n to Mot. to Dismiss & Cross-Mot. to Litigate, ECF No. 37 at 11-12. For the reasons discussed below, the Court rejects Dr. Andresen's arguments.

First, caselaw from this circuit indicates that courts may dismiss an action "even before an award [is] entered in the corresponding arbitration." Def.'s Mot. to Dismiss Reply & Opp'n to Cross-Mot. to Litigate, ECF No. 43 at 25. For example, a judge from this district court has stated that section 3 of the FAA, *see* 9 U.S.C. § 3 (contemplating a stay of proceedings until "arbitration has been had in accordance with the terms of the agreement"); "does not preclude a court from dismissing an action all together in the proper circumstances, including where all issues raised in the complaint must be submitted to arbitration[,]" *Aliron Int'l, Inc. v. Cherokee Nation Indus., Inc.*, No. 05-151, 2006 WL 1793295, at *3 (D.D.C. June 28, 2006) (citation and internal quotation marks omitted), *aff'd*, 531 F.3d 863 (D.C. Cir. 2008). In *Aliron*, that judge concluded that "all of [the p]laintiff's claims must be submitted to arbitration, since the arbitration clause applie[d] to *any* dispute . . . between the parties[,]" and that "[s]ince there [was] no further action to be taken by th[e c]ourt, it [was] appropriate to dismiss th[e] case in its entirety[,]" *i.e.*, *before* arbitration had drawn to a close. *Id.* at *3-4. Two other cases from this district court summarized a circuit split over whether a lawsuit

should be "dismissed or stayed pending the outcome of [ ]
arbitration" before deciding to "follow the majority rule
regarding the propriety of dismissing a case where all of the
claims are subject to arbitration." *See Ryan*, 69 F. Supp. 3d at
147-49; *W & T Travel Servs.*, 69 F. Supp. 3d at 172-74; *see also
United Parcel Serv., Inc. v. Int'l Brotherhood of Teamsters,
AFL-CIO*, 999 F. Supp. 70, 73 (D.D.C. 1998) ("If a dispute is
arbitrable, the court should proceed no further. The lawsuit
should be dismissed, and the parties should arbitrate their
dispute.").

Here, dismissal is even more appropriate because after the
Court granted IntePros' motion to compel arbitration, Arbitrator
Healey affirmatively determined the arbitrability of all of Dr.
Andresen's claims, *see* Joint Status Report, ECF No. 27 at 1; and
Arbitrator Janofsky issued a final, binding arbitration award
that "dismissed, denied, and disallowed" each of those claims,
thereby concluding arbitration in this matter and leaving no
claims left for the Court to resolve, *see* Award, Ex. 2 to Def.'s
Mot. to Dismiss, ECF No. 35-2 at 11 (granting dismissal of all
counts in the amended Statement of Claims and denying "[a]ll
other claims not expressly granted herein"). In addition, as
discussed above, there are no unarbitrable retaliation claims
pending before the Court that can now be litigated. *See supra*
section IV.A.2. Therefore, "the only matter left for the Court"

is to dismiss this suit that was previously "stayed pending the outcome of the arbitration[,]" *see W & T Travel Servs.*, 69 F. Supp. 3d at 172-73; which aligns with the Court's earlier invitation to IntePros to move to dismiss this case even *before* the completion of arbitration, *see Andresen*, 240 F. Supp. 3d at 163 ("If an arbitrator determines that all [of Dr. Andresen's] claims in this case are arbitrable, IntePros may at that time seek dismissal.").

Second, the Court agrees with IntePros that Dr. Andresen's pending petition for vacatur of the arbitration award "has no bearing" on the propriety of dismissal of this action, as the requested relief in a motion to dismiss is separate and apart from that requested in a motion to vacate, modify, or correct, or as IntePros states, "exist[s] in different lanes." Def.'s Mot. to Dismiss, ECF No. 35 at 5. As the above caselaw shows, district courts can grant dismissal of a suit prior to the conclusion of arbitration and thus prior to the filing of a vacatur petition. Therefore, the Court rejects Dr. Andresen's claim that arbitration is not complete until the Court confirms, modifies, or vacates the award, as it agrees with IntePros that "[u]nder [her] faulty logic, an arbitration award would never carry preclusive power unless a party elected to pursue the *optional* step of seeking judicial confirmation of the award." Def.'s Mot. to Dismiss Reply & Opp'n to Cross-Mot. to Litigate,

ECF No. 43 at 25 (emphasis added). Furthermore, although Dr. Andresen uses section 12 of the FAA to support her argument, *see* Pl.'s Opp'n to Mot. to Dismiss & Cross-Mot. to Litigate, ECF No. 37 at 11-12; that section provides for staying enforcement of an arbitration award to give the parties "three months after the award is filed or delivered" to then serve upon their opponents "[n]otice of a motion to vacate, modify, or correct [that] award," 9 U.S.C. § 12. Thus, nothing in its statutory language counsels against the dismissal of a case that was previously stayed pursuant to 9 U.S.C. § 3. *See* Def.'s Mot. to Dismiss Reply & Opp'n to Cross-Mot. to Litigate, ECF No. 43 at 26.

At the same time, however, the Court rejects IntePros' argument that a motion to vacate, modify, or correct an award must be "filed as a separate suit," *i.e.*, as "a standalone action," and that the Court therefore lacks jurisdiction over Dr. Andresen's later-filed petition for vacatur. *See* Def.'s Mot. to Dismiss, ECF No. 35 at 4-6; Def.'s Mot. to Dismiss Reply & Opp'n to Cross-Mot. to Litigate, ECF No. 43 at 18 n.7 ("reserv[ing] all rights to challenge venue in this Court" with regards to Dr. Andresen's forthcoming petition to vacate).[20] To

---

[20] In its motion to dismiss, IntePros argued that motions to vacate or modify can only be filed in the district court where the arbitration award is made, and that the Court "is not empowered to entertain [Dr. Andresen's vacatur] motion because the Award was not 'made' in the District of Columbia" but rather via a telephonic hearing by an arbitrator "located in Maryland."

start, the Supreme Court has recognized that the sections of the FAA governing motions to confirm, vacate, or modify arbitration awards "together provide for liberal choice of venue." *See Cortez Byrd Chips, Inc. v. Bill Harbert Constr. Co.*, 529 U.S. 193, 197-204, 120 S. Ct. 1331, 146 L. Ed. 2d 171 (2000) (rejecting "the restrictive reading of §§ 9-11" of the FAA in favor of "permitting, not limiting, venue choice today").

Additionally, another judge in this district court followed the Supreme Court's permissive view of the FAA when it rejected the defendant's contention that the court lacked jurisdiction to entertain the plaintiff's motion to vacate when the plaintiff filed it in the same, ongoing civil action, as opposed to in a new, separate action focused exclusively on vacating the arbitration award. *See Owen-Williams v. BB & T Inv. Servs., Inc.*, 717 F. Supp. 2d 1, 12-15 (D.D.C. 2010). Using caselaw from other circuits, that judge concluded that "courts retain jurisdiction to hear a motion to vacate even when the original order compelling arbitration dismissed the plaintiff's claims." *See id.* at 13-14. Other courts have made similar conclusions.

---

*See* Def.'s Mot. to Dismiss, ECF No. 35 at 5-6. However, IntePros "abandons this argument" in its reply and opposition to Dr. Andresen's cross-motion to litigate, *see* Def.'s Mot. to Dismiss Reply & Opp'n to Cross-Mot. to Litigate, ECF No. 43 at 18 n.7; so the Court does not address it or Dr. Andresen's arguments to the contrary, *see* Pl.'s Opp'n to Mot. to Dismiss & Cross-Mot. to Litigate, ECF No. 37 at 33-35.

*See, e.g.*, *Smiga v. Dean Witter Reynolds, Inc.*, 766 F.2d 698, 705 (2d Cir. 1985) ("[A] court which orders arbitration retains jurisdiction to determine any subsequent application involving the same agreement to arbitrate, including a motion to confirm an arbitration award."), *cert. denied*, 475 U.S. 1067, 106 S. Ct. 1381, 89 L. Ed. 2d 607 (1986); *Collins v. D.R. Horton, Inc.*, 361 F. Supp. 2d 1085, 1091 (D. Ariz. 2005) ("While it is true that the Court dismissed Plaintiffs' claims in favor of arbitration[,] . . . courts have held that once a court obtains jurisdiction in an action and enters an order compelling arbitration, that court retains jurisdiction with respect to subsequent motions to confirm or vacate."), *aff'd*, 505 F.3d 874 (9th Cir. 2007), *cert. denied*, 552 U.S. 1295, 128 S. Ct. 1739, 170 L. Ed. 2d 539 (2008).

Applied here, the Court concludes that it has jurisdiction to review IntePros' motion to dismiss and Dr. Andresen's vacatur petition "together" as Dr. Andresen has requested, *see* Pl.'s Opp'n to Mot. to Dismiss & Cross-Mot. to Litigate, ECF No. 37 at 8, 12; but that it can, as IntePros argues, rule on the instant motion to dismiss independently, *i.e.*, separately from its forthcoming conclusions regarding Dr. Andresen's vacatur petition and IntePros' cross-motion to confirm the arbitration award, *see infra* section IV.C.; *see also* Def.'s Mot. to Dismiss, ECF No. 35 at 6 ("[T]he FAA's creation of a process to vacate,

modify, or correct an arbitration award has no bearing on this Court's decision to dismiss this suit."). As such, pursuant to the above analysis, the Court concludes that given the binding completion of arbitration "in full satisfaction of all claims presented by the parties," Award, Ex. 2 to Def.'s Mot. to Dismiss, ECF No. 35-2 at 11; "it is appropriate to dismiss this case in its entirety[,]" *Aliron*, 2006 WL 1793295, at *3. However, prior to formally granting IntePros' motion to dismiss and determining whether Dr. Andresen's claims should be dismissed with prejudice, the Court next addresses the merits of the remaining pending motions: (1) Dr. Andresen's motion for leave to file a SAC; (2) Dr. Andresen's vacatur petition; and (3) IntePros' cross-motion to confirm the arbitration award.

## B. The Court Denies Dr. Andresen's Motion for Leave to File a Second Amended Complaint

Less than a month after IntePros filed its motion to dismiss, on August 1, 2019, Dr. Andresen filed a motion for leave to file a SAC aimed at correcting the alleged "drafting error in Counts V and VI" of the Amended Complaint made by her prior counsel that she also previously "sought to correct during arbitration" but was "not grant[ed]" leave to do so. Pl.'s Mot. to File SAC, ECF No. 42 at 2-3. IntePros argues that this motion "is a quintessential example of when leave to amend should not be granted[,]" as it represents Dr. Andresen's "attempt to skirt

the adverse [arbitration] award against her . . . by making bogus representations to th[e] Court about a so-called 'drafting error' in the Amended Complaint." Def.'s Opp'n to Pl.'s Mot. to File SAC, ECF No. 49 at 6.

1. **The Court Denies Dr. Andresen's Request for an Extension of Time to File Her Reply to IntePros' Opposition to Her Motion to Amend the Complaint, and Grants IntePros' Cross-Motion to Strike Dr. Andresen's Untimely Reply Due to a Lack of "Good Cause" and "Excusable Neglect"**

Before proceeding to the merits of the parties' arguments, the Court first addresses the untimeliness of Dr. Andresen's reply to IntePros' opposition to her motion for leave to file a SAC. Dr. Andresen filed her motion to amend on August 1, 2019, *see* Pl.'s Mot. to File SAC, ECF No. 42; and IntePros filed and served her with its opposition to this motion on August 9, 2019, *see* Def.'s Opp'n to Pl.'s Mot. to File SAC, ECF No. 49; Fed. R. Civ. P. 5(b)(2)(E) (permitting service via the district court's electronic-filing system). Pursuant to the seven-day response time permitted by Local Civil Rule 7(d), Dr. Andresen's reply brief was due by August 16, 2019. *See* LCvR 7(d) ("Within seven days after service of the memorandum in opposition the moving party may serve and file a reply memorandum."). However, she did not file her reply until August 19, 2019, *see* Pl.'s Reply to Def.'s Opp'n to Pl.'s Mot. to File SAC, ECF No. 57; and she concurrently included as an exhibit a motion requesting an

extension of time to file that reply, *see* Ex. 1 to Pl.'s Reply
to Def.'s Opp'n to Pl.'s Mot. to File SAC, ECF No. 57-1 at 1-3;
which she refiled as a standalone motion the next day, *see* Pl.'s
Mot. for Extension of Time to File Reply, ECF No. 60.

Also on August 19, 2019, IntePros filed its opposition to
Dr. Andresen's motion requesting an extension of time and a
cross-motion to strike her untimely reply, *see* Def.'s Opp'n to
Mot. for Extension of Time & Cross-Mot. to Strike, ECF No. 58;
to which Dr. Andresen replied that same day, *see* Pl.'s Reply to
Def.'s Opp'n to Mot. for Extension of Time & Opp'n to Cross-Mot.
to Strike, ECF No. 59.[21] Dr. Andresen does not dispute the
tardiness of the filing of her reply brief "and sincerely
apologizes to the Court." Pl.'s Mot. for Extension of Time to
File Reply, ECF No. 60 at 1. She requests that the Court allow
her late reply because she is "not well assimilated [with] the
Local Civil Rules," and she "mistakenly conflated" "the seven-
day time period for filing replies . . . with the fourteen-day

---

[21] On August 20, 2019, after Dr. Andresen refiled her motion for
an extension of time to file her reply as a standalone motion,
rather than as an exhibit to the reply itself, *see* Pl.'s Mot.
for Extension of Time to File Reply, ECF No. 60; IntePros
refiled its opposition to Dr. Andresen's motion for an extension
of time and its cross-motion to strike her untimely reply as ECF
No. 61 (previously docketed at ECF No. 58), and Dr. Andresen
refiled her reply to that opposition and her opposition to
IntePros' cross-motion to strike as ECF No. 62 (previously
docketed at ECF No. 59). For clarity, the Court hereinafter
cites to these filings using ECF Nos. 60, 61, and 62.

time period for filing oppositions[,]" which she argues amounts to "good cause" and "excusable neglect" under Federal Rule of Civil Procedure 6(b). *Id.* at 1-2.

Federal Rule of Civil Procedure 6(b) states that "[w]hen an act may or must be done within a specified time" pursuant to the Federal Rules, local court rules, or by court order, "the court may, for good cause, extend the time . . . on motion made after the time has expired if the party failed to act because of excusable neglect." Fed. R. Civ. P. 6(b)(1)(B). Consequently, the Court may only consider Dr. Andresen's extension request and tardy reply if she "show[s] cause and 'excusable neglect.'" *Wilson v. Prudential Fin.*, 218 F.R.D. 1, 3 (D.D.C. 2003).

"Four factors guide the Court's determination of when a late filing may constitute 'excusable neglect': '(1) the danger of prejudice to the [opposing party], (2) the length of delay and its potential impact on judicial proceedings, (3) the reason for the delay, including whether it was within the reasonable control of the movant, and (4) whether the movant acted in good faith.'" *Miley v. Hard Rock Hotel & Casino Punta Cana*, 537 F. Supp. 3d 1, 4-5 (D.D.C. 2021) (quoting *In re Vitamins Antitrust Class Actions*, 327 F.3d 1207, 1209 (D.C. Cir. 2003) (citing *Pioneer Inv. Servs. Co. v. Brunswick Assocs. Ltd. P'ship*, 507 U.S. 380, 395, 113 S. Ct. 1489, 123 L. Ed. 2d 74 (1993))). "The moving party's fault is the most important single factor." *Id.*

(citations and internal quotation marks omitted); *see also Wilson*, 218 F.R.D. at 3 (calling fault the "key factor" in a court's analysis of excusable neglect). As for *pro se* litigants, although they "are provided with some latitude in maneuvering through the trial process," they are nonetheless "obligated to prosecute [their] lawsuit in accordance with the Federal Rules of Civil Procedure and the local rules of th[e] court." *Akers v. Liberty Mut. Grp.*, 274 F.R.D. 346, 349 (D.D.C. 2011).

Here, the Court concludes that Dr. Andresen has not shown "good cause" or "excusable neglect" that would enable the Court to consider her untimely reply. Although her three-day delay was not long enough to substantially delay proceedings or prejudice IntePros, and there is no reason to believe that she acted in bad faith, Dr. Andresen was, as IntePros notes, "entirely in control of when to file her Reply," and therefore at "fault" in the delay, *see* Def.'s Opp'n to Mot. for Extension of Time & Cross-Mot. to Strike, ECF No. 61 at 3-4; *Wilson*, 218 F.R.D. at 3 (noting that "fault" focuses on whether the litigant "clearly had control over the events leading to the delay"); which she admits to the Court, Pl.'s Mot. for Extension of Time to File Reply, ECF No. 60 at 1. Dr. Andresen's only explanation for her delayed reply brief was that she miscalculated the deadline based on a misunderstanding of the Court's Local Civil Rules. *Id.* at 1-2; Pl.'s Reply to Def.'s Opp'n to Mot. for Extension of

Time & Opp'n to Cross-Mot. to Strike, ECF No. 62 at 2. However, "'[m]is-calendaring' or miscalculating the due date for a responsive filing does not constitute 'excusable neglect.'" *See Miley*, 537 F. Supp. 3d at 5 (making this finding in relation to a *pro se* plaintiff's late opposition brief filing). Nor do "inadvertence, ignorance of the rules, or mistakes construing the rules [of procedure] . . . usually constitute 'excusable' neglect[.]" *Pioneer Inv. Servs.*, 507 U.S. at 392; *see also Clariett v. Rice*, No. 04-2250, 2005 WL 3211694, at *4 (D.D.C. Oct. 18, 2005) ("Even a *pro se* litigant . . . must comply with the Federal Rules of Civil Procedure.").

Furthermore, Dr. Andresen was provided with "ample notice of the importance of compliance with th[e] Court's rules[.]" Def.'s Opp'n to Mot. for Extension of Time & Cross-Mot. to Strike, ECF No. 61 at 5. For example, on July 31, 2019, the Court entered an order directing the parties "to read the attached Standing Order Governing Civil Cases" and "comply with [its] directives," one of which states that "*pro se* litigants are expected to comply with the Local Civil Rules of this Court." *See* Standing Order, ECF No. 41 at 1 (providing a hyperlink to the Court's local rules). In a separate Minute Order that same day, the Court "advise[d] Dr. Andresen to comply with the Local Civil Rules for all future filings" and directed her "to carefully read the Pro Se Non-Prisoner Handbook." Min.

Order (July 31, 2019). In addition, on August 2, 2019, following Dr. Andresen's failure to remove "personal identifiers" from her motion to vacate and "the exhibits thereto," the Court warned that any of her future filings "that fail to comply with the Court's Orders and the Local Civil Rules will be summarily denied or stricken." Min. Order (Aug. 2, 2019). As Dr. Andresen admits, the Court's "Standing Order of 7/31/19 and [its] Minute Order of 8/2/19 both reinforced the importance of the Local Civil Rules[,]" Pl.'s Mot. for Extension of Time to File Reply, ECF No. 60 at 1; such that the Court is unpersuaded that there is any valid reason for her failing to follow Local Civil Rule 7(d)'s time requirements for filing her reply brief.

Accordingly, the Court concludes that Dr. Andresen's excuse of misreading the Local Civil Rules as to the deadline for filing her reply does not amount to "good cause" or "excusable neglect" but rather "fault" on her part for the delay. The Court therefore **DENIES** her motion requesting an extension of time to file her reply to IntePros' opposition to her motion to amend the complaint, *see* ECF No. 60; and it **GRANTS** IntePros' cross-motion to strike her untimely reply, *see* ECF Nos. 58/61. Dr. Andresen's reply brief in support of her motion for leave to file a SAC, *see* ECF No. 57; is hereby deemed untimely and the Court does not consider it.

83

### 2. The Court Denies Dr. Andresen Leave to File a Second Amended Complaint as a Matter of Course Pursuant to Fed. R. Civ. P. 15(a)(1)(B)

Because of the untimeliness of Dr. Andresen's reply, the Court only considers the arguments Dr. Andresen advances in her motion for leave to file a SAC, specifically that she should be granted such leave to amend pursuant to Federal Rule of Civil Procedure 15(a)(1)(B),[22] *see* Pl.'s Mot. to File SAC, ECF No. 42 at 1, 3; and IntePros' contrary arguments, *see* Def.'s Opp'n to Pl.'s Mot. to File SAC, ECF No. 49 at 8-11 (arguing that the "circumstances" of Rule 15(a)(1)(B) "do not apply here").

Federal Rule of Civil Procedure 15(a)(1)(B) provides that "[a] party may amend its pleading once as a matter of course . . . if the pleading is one to which a responsive pleading is required" by no later than "21 days after service of a responsive pleading or 21 days after service of a motion under Rule 12(b), (e), or (f), whichever is earlier." "The part of the Rule allowing the right to amend once as a matter of course within 21 days after service of a motion under Rule 12(b), (e), or (f), was the result of an amendment made in 2009." *Barnes v.*

---

[22] In her untimely reply, Dr. Andresen attempted to switch the basis for her motion to amend from Fed. R. Civ. P. 15(a)(1)(B) to Fed. R. Civ. P. 15(a)(2). *See* Pl.'s Reply to Def.'s Opp'n to Pl.'s Mot. to File SAC, ECF No. 57 at 7. Because the Court has stricken her reply, the Court does not consider the arguments Dr. Andresen advances therein pursuant to Fed. R. Civ. P. 15(a)(2).

*Dist. of Columbia*, 42 F. Supp. 3d 111, 115 (D.D.C. 2014). This amendment revised Rule 15 so that "the right to amend once as a matter of course [now] terminates 21 days after service of a motion under Rule 12(b), (e), or (f)." Fed. R. Civ. P. 15 advisory committee's note to 2009 amendment. This change "was intended to 'force the pleader to consider carefully and promptly the wisdom of amending to meet the arguments in the motion' and thereby 'avoid the need to decide the motion,' reduce 'the number of issues to be decided,' 'expedite determination of issues that otherwise might be raised seriatim' and 'advance other pretrial proceedings.'" *Barnes*, 42 F. Supp. 3d at 115 (quoting Fed. R. Civ. P. 15 advisory committee's note to 2009 amendment).

To serve these purposes, the Advisory Committee's note to the amendment further states: "The 21-day periods to amend once as a matter of course after service of a responsive pleading or after service of a designated motion are not cumulative. If a responsive pleading is served after one of the designated motions is served, for example, there is no new 21-day period." Fed. R. Civ. P. 15 advisory committee's note to 2009 amendment. "In other words, the Notes clarify that if a 12(b) motion is served and then subsequently a response is filed, the responsive pleading does not revive [a] plaintiff's right to amend the

complaint." *Schubarth v. Fed. Republic of Germany*, No. 14-2140, 2020 WL 13065292, at *12 (D.D.C. Mar. 12, 2020).

As relevant here, Dr. Andresen filed the original Complaint on March 26, 2015, *see* Compl., ECF No. 1; to which IntePros responded on May 20, 2015 by moving to compel arbitration pursuant to Federal Rules of Civil Procedure 12(b)(1), (2), (3), and (6), *see* Def.'s Mot. to Compel Arbitration, ECF No. 5 at 1. On November 25, 2015, Dr. Andresen filed a motion to amend the complaint pursuant to Federal Rule of Civil Procedure 15(a)(2), *see* Pl.'s Mot. to Amend Compl., ECF No. 10 at 1; presumably because she had responded significantly beyond 21 days after being served with IntePros' motion under Rule 12(b), and thus could not amend "as a matter of course" due to her delay, *see* Fed. R. Civ. P. 15(a)(1)(B). Following the filing of her motion to amend, IntePros renewed its motion to compel arbitration pursuant to Federal Rules of Civil Procedure 12(b)(1), (2), (3), and (6), *see* Def.'s Renewed Mot. to Compel Arbitration, ECF No. 11 at 1; after which the Court granted Dr. Andresen's motion to amend and stayed the filing of IntePros' answer to the Amended Complaint pending the Court's resolution of the renewed motion to compel arbitration, *see* Min. Order (Mar. 29, 2016). As already discussed, the Court then granted IntePros' motion to compel arbitration, Arbitrator Healey deemed Dr. Andresen's claims arbitrable, and Arbitrator Janofsky entered a binding

award in favor of IntePros that fully satisfied all pending claims in arbitration, at which point IntePros moved to dismiss this action in its entirety pursuant to the FAA and Federal Rules of Civil Procedure 12 and 56 on July 12, 2019. *See* Def.'s Mot. to Dismiss, ECF No. 35 at 1. Dr. Andresen then filed her motion for leave to file a SAC on August 1, 2019, and she claims that it should be granted because she filed it "within the 21 days stated by Federal Rule of Civil Procedure 15(a)(1)(B)." Pl.'s Mot. to File SAC, ECF No. 42 at 3.

The Court disagrees. First, as IntePros argues, and the Court agrees, IntePros' motion to dismiss "is not a 'motion under Rule 12(b), (e), or (f)' as contemplated by Rule 15(a)(1)(B)" but rather "presents other, independent grounds of authority for dismissal of this case" outside of Rule 12, including the FAA and the summary judgment standard pursuant to Federal Rule of Civil Procedure 56. Def.'s Opp'n to Pl.'s Mot. to File SAC, ECF No. 49 at 9-10. As the Court explains above, IntePros' motion to dismiss is the sequel to its earlier motion to compel arbitration pursuant to 9 U.S.C. § 4 of the FAA, *see supra* section III.A.; and in situations where a defendant is seeking dismissal due to the arbitrability of the claims, "'[a]lthough styled as a motion to dismiss, . . . the appropriate standard of review for the district court'" to employ in reviewing the merits of the motion is the summary

judgment standard pursuant to Rule 56, *Hughes v. CACI, Inc.*, 384 F. Supp. 2d 89, 93 (D.D.C. 2005) (quoting *Technetronics*, 1993 WL 197028, at *2); *accord Brown*, 267 F. Supp. 2d at 66 (concluding that a motion to dismiss that works in tandem with a motion to compel arbitration "does not come[] within the ambit of Rule 12(b) of the Federal Rules of Civil Procedure" (citation and internal quotation marks omitted)); *Martin*, 567 F. Supp. 2d at 40-41 (same). "Simply put, IntePros' Motion to Dismiss is not a qualifying motion under Rule 12(b) for purposes of Rule 15(a)(1)(B)[,]" and thus, Dr. Andresen "cannot avail herself of an amendment as a matter of course" to file the proposed SAC. Def.'s Opp'n to Pl.'s Mot. to File SAC, ECF No. 49 at 9-10.

Second, even if the Court were to assume that IntePros' present motion to dismiss and prior accompanying motions to compel arbitration were all qualifying motions under Rule 12(b) for purposes of Rule 15(a)(1)(B), *see* Def.'s Mot. to Compel Arbitration, ECF No. 5 at 1 (made pursuant to Fed. R. Civ. P. 12(b)(1), (2), (3), and (6)); Def.'s Renewed Mot. to Compel Arbitration, ECF No. 11 at 1 (same); as opposed to non-qualifying motions under Rule 56, the 2009 amendment to Rule 15 made it so that "the right to amend once as a matter of course *terminates* 21 days after service of a motion under Rule 12(b)." Fed. R. Civ. P. 15 advisory committee's note to 2009 amendment (emphasis added). This right to amend as a matter of course does

not renew each time a defendant files "a responsive pleading (either an answer or a responsive motion) to a particular version of the complaint[,]" *U.S. ex rel. D'Agostino v. EV3, Inc.*, 802 F.3d 188, 192-93 (1st Cir. 2015); as the Advisory Committee's note on the amendment specifically states that the 21-day period to amend once as a matter of course after service of a designated motion is "not cumulative," *see* Fed. R. Civ. P. 15 advisory committee's note to 2009 amendment (explaining that "there is no new 21-day period" after each of a defendant's Rule 12 motions). In other words, "once a 12(b) . . . motion is served, the plaintiff has 21 days to amend as of right, period, and any subsequent amendment after *that particular* Rule 12 motion was served requires leave of court." *Schubarth*, 2020 WL 13065292, at *11 (emphasis in original).

Here, pursuant to Rule 12(b) and the FAA, IntePros filed its motion to compel arbitration on May 20, 2015, and it renewed that motion under the same grounds on December 9, 2015. Dr. Andresen's ability to amend once as of right terminated 21 days later, and therefore, her "window for amending the complaint [as a matter of course] . . . is long past." *Id.* at *12. The Court therefore concludes that Dr. Andresen is not entitled to an amendment as a matter of course, and it denies her leave to file a SAC pursuant to Federal Rule of Civil Procedure 15(a)(1)(B).

> **3. The Court Denies Dr. Andresen Leave to File a Second Amended Complaint Because Justice Does Not So Require It Pursuant to Fed. R. Civ. P. 15(a)(2)**

Once the time to amend a pleading once as a matter of course elapses, a plaintiff may amend the complaint with leave of the court. Fed. R. Civ. P. 15(a)(2). The Rule directs courts to "freely give leave" to amend a complaint "when justice so requires." *Id.* "If the underlying facts or circumstances relied upon by a plaintiff may be a proper subject of relief, [s]he ought to be afforded an opportunity to test [her] claim on the merits." *Foman*, 371 U.S. at 182. However, courts have discretion to deny leave to amend if there is "a sufficiently compelling reason," *Robinson*, 211 F. Supp. 2d at 113-14; which may include "undue delay, bad faith or dilatory motive on the part of the movant, repeated failure to cure deficiencies by amendments previously allowed, undue prejudice to the opposing party by virtue of allowance of the amendment, [or] futility of amendment," *Foman*, 371 U.S. at 182. In considering the presence or absence of these factors, courts must appropriately "balanc[e] the interests of the party seeking the amendment and those of the party objecting to it." *Barnes*, 42 F. Supp. 3d at 115 (citation and internal quotation marks omitted).

Here, Dr. Andresen has failed to move to amend the Amended Complaint pursuant to Rule 15(a)(2), and all of her arguments

regarding that portion of the rule have been stricken due to them only appearing in her untimely reply brief. *See supra* note 22. Nonetheless, because amendments pursuant to Rule 15(a)(2) "are to be liberally granted" in the absence of a justifying reason, *Abdullah v. Washington*, 530 F. Supp. 2d 112, 114-15 (D.D.C. 2008); and because Dr. Andresen is a *pro se* litigant, *see, e.g., Ning Ye v. Holder*, 644 F. Supp. 2d 112, 116 (D.D.C. 2009) (affording greater latitude to *pro se* plaintiffs than those with counsel); the Court briefly addresses IntePros' argument that "Dr. Andresen's [m]otion implicates nearly all of the recognized grounds for denying leave to amend[,]" *see* Def.'s Opp'n to Pl.'s Mot. to File SAC, ECF No. 49 at 11-12.

### a. Dr. Andresen's Motion to Amend Must Be Denied Due to Her Bad Faith and Dilatory Motives

The Court begins with IntePros' argument that Dr. Andresen's motion for leave to amend should be denied due to her "bad faith and dilatory motives." Def.'s Opp'n to Pl.'s Mot. to File SAC, ECF No. 49 at 18. As IntePros notes, Dr. Andresen's "core justification" for requesting leave to amend, *id.*; centers on "correct[ing] the drafting error [made by her prior counsel] in Counts V and VI" of the Amended Complaint so as to separately assert an FCA retaliation claim under 31 U.S.C. § 3730(h), which she was "disallowed" from doing in arbitration via the "corrected" Statement of Claims, *see* Pl.'s Mot. to File SAC, ECF

No. 42 at 2-4; Award, Ex. 2 to Def.'s Mot. to Dismiss, ECF No. 35-2 at 10-11. IntePros argues that "th[is] 'drafting error' explanation . . . is bogus" and is Dr. Andresen's attempt "to skirt the arbitration award" and "resurrect claims clearly disposed of in arbitration." Def.'s Opp'n to Pl.'s Mot. to File SAC, ECF No. 49 at 18.

The Court agrees. Seemingly knowing that the Amended Complaint does not presently state an FCA retaliation claim (contrary to the arguments in her cross-motion to litigate), Dr. Andresen's proposed SAC attempts "to transform Count VI into an FCA retaliation claim [ ] grounded in the misrepresentation that the Amended Complaint filed in November 2015 omitted" this claim due to a technical "drafting error." *Id.* at 18. The Court has already rejected Dr. Andresen's earlier contention that her FCA retaliation claim was "marred" by this alleged "drafting error," *see supra* section IV.A.1.; like Arbitrator Janofsky, who similarly concluded that the "corrected" Statement of Claims improperly added a new FCA retaliation claim under the guise of "a minor correction of a technical error," Award, Ex. 2 to Def.'s Mot. to Dismiss, ECF No. 35-2 at 10. These same conclusions apply here, as the proposed SAC proffers identical substantive changes in Counts V and VI to the changes Dr. Andresen attempted to make to those counts in her "corrected" version of the Statement of Claims that Arbitrator Janofsky

rejected as "disingenuous." *Id.; compare* Ex. 1 to Pl.'s Mot. to
File SAC, ECF No. 42-2 at 104-08 ¶¶ 506-21 (Counts V and VI of
the proposed SAC), *and* Ex. 2 to Pl.'s Mot. to File SAC, ECF No.
42-3 at 105-09 ¶¶ 506-21 (redline comparison of the Amended
Complaint to the proposed SAC), *with* Ex. 7 to Def.'s Mot. to
Dismiss Reply & Opp'n to Cross-Mot. to Litigate, ECF No. 43-7 at
102-06 ¶¶ 498-513 (redline comparison showing the changes Dr.
Andresen made to Counts V and VI of her "corrected" Statement of
Claims, as compared to the original version).

So too here does the Court conclude that Dr. Andresen's
"drafting error" explanation for the proposed SAC is
disingenuous, as her thinly veiled summary of the changes in the
SAC, *see* Pl.'s Mot. to File SAC, ECF No. 42 at 3-6; hides
"extensive changes of substance" to Count V and especially to
Count VI, Award, Ex. 2 to Def.'s Mot. to Dismiss, ECF No. 35-2
at 10; most notably the addition of the legal standard for an
FCA retaliation claim under 31 U.S.C. § 3730(h), specific
citations to that section, and a revamp of the factual
allegations in the accompanying paragraphs under Count VI, *see*
Ex. 2 to Pl.'s Mot. to File SAC, ECF No. 42-3 at 105-09 ¶¶ 506-
21.

Dr. Andresen's continued use of the false "drafting error"
narrative to assert an FCA retaliation claim is exemplary of bad
faith and dilatory motives precisely because she lost this exact

argument in arbitration. *See* Def.'s Opp'n to Pl.'s Mot. to File SAC, ECF No. 49 at 21 (arguing that "Dr. Andresen is requesting leave to amend her complaint in order to pursue" her FCA retaliation claim "that she botched in arbitration"). Dr. Andresen also takes her bad faith a step further by reasserting claims under the DCHRA and the DCWPCL in the proposed SAC, *see* Ex. 1 to Pl.'s Mot. to File SAC, ECF No. 42-2 at 100-04 ¶¶ 477-505 (Counts I to IV of the proposed SAC that include both federal and D.C. law claims); that she consented to dismissing in arbitration *with prejudice*, Ex. 1 to Def.'s Mot. to Dismiss, ECF No. 35-1 at 2 ("Consent Order" signed by Dr. Andresen's counsel). The Court agrees with IntePros that "Dr. Andresen's attempt to prosecute claims that she agreed to dismiss is the definition" of bad faith and "should not be countenanced." Def.'s Opp'n to Pl.'s Mot. to File SAC, ECF No. 49 at 22.

IntePros directs the Court to a similarly situated case decided by the Fifth Circuit. In *Southern Constructors Group, Inc. v. Dynalectric Co.*, 2 F.3d 606 (5th Cir. 1993), the Fifth Circuit concluded that the district court did not abuse its discretion in denying the plaintiff's motion to amend its complaint when the plaintiff "suffered its loss after a full arbitration on the merits of its claims[,]" "arbitration was consented to by" the plaintiff, and only after losing in arbitration did the plaintiff "attempt to proffer new grounds

for recovery" via an amended complaint. *Id.* at 612. The Fifth
Circuit explained that the plaintiff's "attempt to amend its
complaint was nothing more than an attempt to try its theories
of recovery seriatim[,]" which it rejected because of the need
to "protect the efficacy of [arbitration] award[s,]" to "avoid
adding to the already burgeoning dockets of the district
courts[,]" and to allow defendants to reasonably trust that
arbitration can conclusively resolve disputes. *See id.* at 609,
612. As the district court had observed in denying the
plaintiff's motion to amend the complaint:

> In sum, more than two and half years after the
> filing of the original complaint, after
> numerous filings, . . . after arbitration of
> all issues raised before arbitration . . . ,
> and, amazingly enough, after [the plaintiff]
> *consented* to the entry of judgment dismissing
> all of its claims against [the defendant],
> [the plaintiff] now seeks to amend its
> complaint. Unfortunately for [the plaintiff],
> its train has not merely left the station—it
> has already reached its destination and
> discharged its cargo.

*S. Constructors Grp., Inc. v. Dynalectric Co.*, No. 90-2942, 1993
WL 85964, at *2 (E.D. La. Mar. 15, 1993), *aff'd*, 2 F.3d 606 (5th
Cir. 1993). The Court is persuaded by this reasoning, and it too
rejects Dr. Andresen's bad faith attempt to use a motion to
amend to "revive" this dispute, including claims she previously
agreed to dismiss, "solely based on her dissatisfaction with her
losing result in arbitration." Def.'s Opp'n to Pl.'s Mot. to

File SAC, ECF No. 49 at 11, 20; *see Dynalectric Co.*, 2 F.3d at 611 (expressing "serious[] doubt whether [Rule 15's] liberal standards would apply to amendment of a judgment after . . . completion of arbitration").

### b. Dr. Andresen's Motion to Amend Must Be Denied Due to Her Undue Delay, Undue Prejudice to IntePros, and Futility

IntePros next argues that Dr. Andresen's motion for leave to file a SAC should be denied because the amendment was brought "after undue delay," would "result in undue prejudice to IntePros," and would be futile. *See* Def.'s Opp'n to Pl.'s Mot. to File SAC, ECF No. 49 at 11-18, 22-23. For similar reasons to the above regarding Dr. Andresen's bad faith and dilatory motives, the Court agrees with each of these three arguments.

First, as IntePros discusses, Dr. Andresen has moved to file a SAC more than four years after litigation commenced, after already amending the complaint once, and only after fully losing in arbitration. *See id.* at 6, 18 (noting that Dr. Andresen's request to amend comes "more than *twenty-nine months* after this Court decided that the arbitrability of her claims should be decided by an arbitrator, more than *twenty-one months* after the arbitrator determined that all of her claims were arbitrable, and nearly *two months* after her claims were already dismissed on their merits in arbitration"). As noted, the proposed SAC changes are identical to those Dr. Andresen tried

to make in arbitration to her Statement of Claims on September 7, 2018, and yet, she waited nearly a full year before seeking to identically update the Amended Complaint before the Court on August 1, 2019. This "is the very picture of undue delay." *See Bode & Grenier, LLP v. Knight*, 808 F.3d 852, 860-61 (D.C. Cir. 2015) (concluding that moving to amend four years after litigation began and one year after dispositive motions were decided "bears the hallmarks of gamesmanship, [thereby] defeating the orderly character of [arbitration,] . . . a legal process grounded in sound policy").

Second and for analogous reasons, allowing Dr. Andresen to amend the complaint after the completion of arbitration would cause IntePros undue prejudice by requiring it to engage in further unnecessary and costly litigation. *See* Def.'s Opp'n to Pl.'s Mot. to File SAC, ECF No. 49 at 22-23. As the Fifth Circuit affirmed in *Dynalectric Co.*, granting a motion to amend after the end of arbitration "would be unfairly prejudicial to [defendants]" because it would "subject[ them] to renewed litigation when [they should have] a reasonable and justifiable expectation that [ ] arbitration [can] conclusively resolve[] [such] dispute[s]." 2 F.3d at 609; *see also Hamel-Schwulst v. Countryplace Mortg., Ltd.*, No. 1:08-cv-195, 2010 WL 606761, at *3 (S.D. Miss. Feb. 17, 2010) (denying a plaintiff leave to file a third party complaint pursuant to Fed. R. Civ. P. 15(a)(2)

because "allowing an amendment to a complaint to include
tangentially related claims after the parties have proceeded to
arbitration would be prejudicial to [the defendant]"), *aff'd*,
406 F. App'x 906 (5th Cir. 2010). The Court is "mindful of the
extensive time and resources that have been expended" by
IntePros and its counsel, *Abdullah*, 530 F. Supp. 2d at 115 n.2;
as IntePros states that it has "incurred well over $100,000 in
attorneys' fees, not to mention its substantial arbitration fees
and costs, relating to Dr. Andresen's [ ] claims in the past
calendar year alone[,]" Def.'s Opp'n to Pl.'s Mot. to File SAC,
ECF No. 49 at 23. Thus, "[i]n addition to [IntePros']
demonstrated prejudice, the Court concludes that principles of
fairness and judicial economy weigh heavily against granting the
motion to amend[,]" *Abdullah*, 530 F. Supp. 2d at 115; especially
given "the national policy favoring arbitration" following
Congress' enactment of the FAA, *Cardegna*, 546 U.S. at 443.

Lastly, the Court concludes that granting Dr. Andresen's
requested amendment would be futile. "An amendment would be
futile if it merely restates the same facts as the original
complaint in different terms, reasserts a claim on which the
court previously ruled, fails to state a legal theory, or could
not withstand a motion to dismiss." *Robinson*, 211 F. Supp. 2d at
114 (citing 3 MOORE'S FEDERAL PRACTICE § 15.15[3] (3d ed. 2000)).
Here, the proposed SAC is futile because it merely reasserts

claims Dr. Andresen consented to dismissing with prejudice during arbitration and proposes changes to Counts V and VI already rejected as "disingenuous" by both Arbitrator Janofsky and the Court. Furthermore, nothing in the proposed SAC changes the fact that the Court previously compelled arbitration, which led to an affirmative determination of arbitrability for the "entirety" of Dr. Andresen's claims, Ex. 10 to Def.'s Mot. to Dismiss Reply & Opp'n to Cross-Mot. to Litigate, ECF No. 43-10 at 10; and a binding arbitration award "in full satisfaction of" those claims, Award, Ex. 2 to Def.'s Mot. to Dismiss, ECF No. 35-2 at 11. Because of this conclusive end to arbitration, the Court has now concluded that dismissal of Dr. Andresen's stayed action is appropriate, *see supra* section IV.A.3.; and thus, any amendment at this point in the litigation is futile.[23]

Because Dr. Andresen is not entitled to amend the complaint as a matter of course pursuant to Federal Rule of Civil Procedure 15(a)(1)(B) or pursuant to the liberal standards of Federal Rule of Civil Procedure 15(a)(2) due to the presence of

---

[23] IntePros proffers additional arguments for why "[t]he requested amendment is futile," including that "it would be barred by *res judicata*, the parties' arbitration agreement, and judicial estoppel," and that Dr. Andresen's alleged FCA retaliation claim "would not survive a motion to dismiss." *See* Def.'s Opp'n to Pl.'s Mot. to File SAC, ECF No. 49 at 11-17. The Court concludes it is unnecessary to reach any of these arguments.

sufficiently compelling reasons to the contrary, the Court

**DENIES** her motion for leave to file a SAC. *See* ECF No. 42.

### C. The Court Denies Dr. Andresen's Motion to Vacate the Arbitration Award and Grants IntePros' Cross-Motion to Confirm the Arbitration Award

The Court lastly addresses Dr. Andresen's petition to
vacate the arbitration award, which she filed on August 2, 2019—
eight days after filing her cross-motion to litigate and one day
after filing her motion for leave to file a SAC. *See* Pl.'s Mot.
to Vacate, ECF No. 45. Dr. Andresen seeks vacatur based on three
grounds under the FAA and alleges that the award should be
vacated because Arbitrator Janofsky: (1) exceeded her authority
pursuant to 9 U.S.C. § 10(a)(4) of the FAA; (2) is guilty of
misconduct and misbehavior pursuant to 9 U.S.C. § 10(a)(3) of
the FAA; and (3) exhibited evident partiality pursuant to 9
U.S.C. § 10(a)(2) of the FAA.[24] *See* Pl.'s Mot. to Vacate, ECF No.

---

[24] As IntePros correctly notes, Dr. Andresen's vacatur petition
"does not challenge [Arbitrator Healey's] earlier award from
October 2017 finding Dr. Andresen's claims to be arbitrable[,]"
and instead exclusively challenges Arbitrator Janofsky's award
made on June 6, 2019. *See* Def.'s Opp'n to Pl.'s Mot. to Vacate &
Cross-Mot. to Confirm, ECF No. 55 at 8. Dr. Andresen replies by
contending that she "requested that the Court review the
arbitrability determination in her Cross-Motion" to litigate.
Pl.'s Reply to Def.'s Opp'n to Mot. to Vacate & Opp'n to Def.'s
Cross-Mot. to Confirm, ECF No. 63 at 20. For all the reasons
already discussed, the Court has rejected Dr. Andresen's
request, in her non-cognizable "cross-motion to litigate," for
the Court's "fulsome judicial review" of Arbitrator Healey's
arbitrability decision and her argument that her NDAA and non-
existent FCA retaliation claims are not arbitrable. *See supra*
section IV.A.2. Furthermore, given that briefing regarding

45 at 11-47. She additionally argues for a "public policy
exception as [another] reason for vacatur of [the] arbitration
award" grounded in "general common law." *See id.* at 47-52. Based
on these four grounds, Dr. Andresen requests that the Court
vacate the award and remand to arbitration her federal claims
under the ADEA, Title VII, and the FLSA, and her D.C. law claims
under the DCHRA and the DCWPCL, *id.* at 8; which she "wishes to
reassert" even though "her prior counsel dismissed [them] during
the arbitration," *id.* at 8 n.3. In addition, Dr. Andresen
requests that she be permitted to litigate her two alleged
retaliation claims under the NDAA and the FCA in this district
court, as argued in her cross-motion to litigate, or
alternatively, that the Court remand all of her claims back to
arbitration to "begin anew" with another arbitrator. *Id.* at 8-9.

    IntePros argues that Dr. Andresen "improperly challenges
the merits of the arbitrator's decision" and that her grounds
for vacatur must fail because: (1) Dr. Andresen has ignored the
fundamental fairness of the arbitration proceedings; (2)

---

IntePros' motion to dismiss and Dr. Andresen's cross-motion to
litigate was nearly complete *before* Dr. Andresen filed her
motion to vacate, Dr. Andresen was on notice of IntePros'
argument that she needed to challenge the arbitrability decision
in a formal petition for vacatur pursuant to the FAA's
enumerated grounds, as opposed to in an invalid "cross-motion to
litigate." Def.'s Mot. to Dismiss Reply & Opp'n to Cross-Mot. to
Litigate, ECF No. 43 at 12, 18-20. Nonetheless, Dr. Andresen has
failed to properly re-raise these challenges in her motion to
vacate, so the Court declines to consider them here.

Arbitrator Janofsky did not exceed her authority in making the arbitration award; (3) Arbitrator Janofsky did not engage in misconduct but rather provided Dr. Andresen with an opportunity to prosecute her claims; (4) Arbitrator Janofsky was not partial, as she had no improper interests or motives in deciding this case; and (5) Dr. Andresen's public policy claim must fail. Def.'s Opp'n to Pl.'s Mot. to Vacate & Cross-Mot. to Confirm, ECF No. 55 at 7, 15, 40-41. Based on these same arguments, IntePros has filed a cross-motion to confirm the award. *Id.* The Court addresses the parties' arguments in turn below.

### 1. The Arbitrator Did Not Exceed Her Authority Pursuant to 9 U.S.C. § 10(a)(4) of the Federal Arbitration Act in Making the Arbitration Award

Dr. Andresen first argues for vacatur of the arbitration award pursuant to 9 U.S.C. § 10(a)(4) of the FAA, *see* Pl.'s Mot. to Vacate, ECF No. 45 at 11-18; which "permits vacatur 'where the arbitrators exceeded their powers [under the arbitration agreement], or so imperfectly executed them that a mutual, final, and definite award upon the subject matter submitted was not made[,]'" *Mesa Power*, 255 F. Supp. 3d at 183 (quoting 9 U.S.C. § 10(a)(4)); *Republic of Argentina*, 894 F.3d at 337. "A party seeking relief under [this] provision [of the FAA] bears a heavy burden[,]" as "'[i]t is not enough . . . to show that the [arbitrator] committed an error—or even a serious error.'" *Oxford Health Plans*, 569 U.S. at 569 (quoting *Stolt-Nielsen S.A.*

*v. AnimalFeeds Int'l Corp.*, 559 U.S. 662, 671, 130 S. Ct. 1758, 176 L. Ed. 2d 605 (2010)).

Rather, "[i]t is only when [an] arbitrator strays from interpretation and application of the [parties'] agreement and effectively dispense[s] [her] own brand of industrial justice that [the] decision may be unenforceable"—because "the task of an arbitrator is to interpret and enforce a contract, not to make public policy." *Stolt-Nielsen*, 559 U.S. at 671-72 (citation and internal quotation marks omitted); *see also Republic of Argentina*, 894 F.3d at 337 ("The bar [for success] is high: courts may disturb an award only if the challenger can show that it was inconsistent with the [arbitrator's] own understanding of the award that was authorized by the agreement."). In other words, "[o]nly if 'the arbitrator act[s] outside the scope of [her] contractually delegated authority'—issuing an award that 'simply reflect[s] [her] own notions of [economic] justice' rather than 'draw[ing] its essence from the contract'—may a court overturn [her] determination." *Oxford Health Plans*, 569 U.S. at 569 (quoting *E. Associated Coal Corp. v. United Mine Workers of Am.*, 531 U.S. 57, 62, 121 S. Ct. 462, 148 L. Ed. 2d 354 (2000) (quoting *Misco*, 484 U.S. at 38)). As such, "the excess-of-authority provision" of the FAA is to be construed narrowly and does not "confer on courts a general equitable power to substitute a judicial resolution of a dispute for an

arbitral one; rather, where the interpretation of a contract is at issue, [i]t is the arbitrator's construction which was bargained for, and not that of the courts." *Davis*, 667 F.2d at 165 (citation and internal quotation marks omitted); *see also Oxford Health Plans*, 569 U.S. at 569 ("Because the parties bargained for the arbitrator's construction of their agreement, an arbitral decision even arguably construing or applying the contract must stand, regardless of a court's view of its (de)merits." (citations and internal quotation marks omitted)).

Dr. Andresen argues that Arbitrator Janofsky exceeded her authority pursuant to 9 U.S.C. § 10(a)(4) because she claims that the arbitration award "is not rationally inferable, nor does it draw its essence, from the dual contracts that governed [her] employment situation[,]" specifically: (1) her Sub Contractor Agreement with IntePros, dated June 13, 2013, *see* Ex. L to Pl.'s Opp'n to Mot. to Dismiss & Cross-Mot. to Litigate, ECF No. 37-14; and (2) IntePros' contract with the Department of Defense (the "DHA Contract" or "Federal Contract"), dated June 17, 2013, *see* Ex. 9 to Pl.'s Mot. to Vacate, ECF No. 45-10 (formally titled, "Order for Supplies or Services"); Pl.'s Mot. to Vacate, ECF No. 45 at 13. Dr. Andresen argues, as she did during arbitration, that her Sub Contractor Agreement with IntePros "incorporates by reference the DHA Contract[,]" and that Arbitrator Janofsky neglected to consider both contracts

"together," thereby failing to acknowledge that Dr. Andresen "had joint employers" and erroneously drawing conclusions regarding who supervised Dr. Andresen and that she was not an employee of IntePros. Pl.'s Mot. to Vacate, ECF No. 45 at 13-16. IntePros responds that Dr. Andresen's "challenge to the Award on the basis of the arbitrator's authority" is "nothing more than her unreasonable disagreements with the [merits of the] arbitrator's findings and conclusions." Def.'s Opp'n to Pl.'s Mot. to Vacate & Cross-Mot. to Confirm, ECF No. 55 at 19, 21.

Under 9 U.S.C. § 10(a)(4), "the sole question" for the Court "is whether the arbitrator (even arguably) interpreted the parties' contract [at all], not whether [s]he got its meaning right or wrong." *Oxford Health Plans*, 569 U.S. at 569, 573. Thus, so long as Arbitrator Janofsky "'even arguably'" construed or applied the relevant contract and acted "'within the scope of [her] authority,'" the Court cannot correct any errors she may have made, even "serious" ones, or "'overturn [her] decision.'" *E. Associated Coal Corp.*, 531 U.S. at 62 (quoting *Misco*, 484 U.S. at 38); *see also Davis*, 667 F.2d at 166 ("[T]he arbitrator's award should not be upset . . . if it represents a plausible interpretation of the contract.").

Here, as discussed above, first Arbitrator Healey examined the text of the Sub Contractor Agreement between IntePros and Dr. Andresen, including "the broad language of [its] arbitration

clause," before concluding that all of Dr. Andresen's claims
were arbitrable, Ex. 10 to Def.'s Mot. to Dismiss Reply & Opp'n
to Cross-Mot. to Litigate, ECF No. 43-10 at 6-8, 10; which the
Court has also concluded included her NDAA retaliation claim and
(non-existent) FCA retaliation claim, *see supra* section IV.A.2.
at 61-64 (concluding that Arbitrator Healey's arbitrability
determination drew "its essence" from the Sub Contractor
Agreement). Following this determination, which Dr. Andresen is
*not* challenging in this motion to vacate, *see supra* note 24;
Arbitrator Janofsky, "vested [with authority] by the Subcontract
to decide" the claims raised in Dr. Andresen's Statement of
Claims, Def.'s Opp'n to Pl.'s Mot. to Vacate & Cross-Mot. to
Confirm, ECF No. 55 at 18, 20; then examined the Phase One
issues, notably whether Dr. Andresen should be considered an
employee or an independent contractor pursuant to "her written
'Sub-contractor Agreement' of June 13, 2013 with" IntePros, *see*
Award, Ex. 2 to Def.'s Mot. to Dismiss, ECF No. 35-2 at 2-3.

In deciding this question, Arbitrator Janofsky looked to
various factors regarding the relationship between IntePros and
Dr. Andresen pursuant to the "economic realities" test under the
FLSA and similar tests under the federal anti-discrimination
laws, and she also examined the text of the Sub Contractor
Agreement and the parties' arguments regarding that text before
concluding that "[t]he parties' clear and deliberate intention

to engage [Dr. Andresen] as an independent contractor, and not
as an employee, was memorialized by the written contract of June
13, 2013." *See id.* at 3-7 (summarizing items excluded from the
Sub Contractor Agreement, such as any mentioning of annual
leave, relocation assistance, health insurance, and "other
benefits typical of those given to employees"). Therefore, the
Court concludes that Arbitrator Janofsky "employed all of the
standard interpretative tools that a court or arbitration panel
would normally use when interpreting a text[,]" *Mesa Power*, 255
F. Supp. 3d at 185; and "arguably" construed the Sub Contractor
Agreement on the employee versus independent contractor
question, rather than "abandon[ing] [her] interpretative role"
and exceeding her authority as defined by 9 U.S.C. § 10(a)(4),
*Oxford Health Plans*, 569 U.S. at 569-71.

Although Dr. Andresen argues that Arbitrator Janofsky
exceeded her authority because she did not consider the Sub
Contractor Agreement "together" with IntePros' separate contract
with the federal government—the DHA Contract—the Court rejects
this argument. *See* Pl.'s Reply to Def.'s Opp'n to Mot. to Vacate
& Opp'n to Def.'s Cross-Mot. to Confirm, ECF No. 63 at 7-11;
Pl.'s Mot. to Vacate, ECF No. 45 at 13-18. First, it is not the
DHA contract, to which Dr. Andresen was not even a party, that
provided to the arbitrators their contractually delegated
authority to hear and decide Dr. Andresen's claims, but rather

107

the Sub Contractor Agreement and the broad arbitration clause
contained therein. *See* Sub Contractor Agreement, Provision 9(f),
Ex. A, ECF No. 12-1 at 6; Ex. L to Pl.'s Opp'n to Mot. to
Dismiss & Cross-Mot. to Litigate, ECF No. 37-14. Dr. Andresen
seemingly admits this when she states that "an arbitrator's
authority derives from the contract *between the parties*," which,
again, the DHA contract is not. Pl.'s Reply to Def.'s Opp'n to
Mot. to Vacate & Opp'n to Def.'s Cross-Mot. to Confirm, ECF No.
63 at 8 (emphasis added). Second and relatedly, if Dr. Andresen
had issues with which contract(s) governed the arbitration
dispute and believed that the DHA Contract somehow restricted an
arbitrator's authority to decide her claims in this matter, then
she should have raised any such challenges much earlier in this
litigation, for example, before the Court ruled on IntePros'
motion to compel arbitration or at the arbitrability stage when
Arbitrator Healey engaged in his analysis of "the plain language
of the [governing] Agreement." Ex. 10 to Def.'s Mot. to Dismiss
Reply & Opp'n to Cross-Mot. to Litigate, ECF No. 43-10 at 6. The
time for this type of challenge has long passed.

Thirdly, although Dr. Andresen claims that her agreement
with IntePros "incorporates by reference the DHA Contract," such
that the terms of both contracts would "interrelated[ly]" govern
an arbitrator's authority in this matter as one "contract in its
entirety," Pl.'s Mot. to Vacate, ECF No. 45 at 12 n.6-13; Pl.'s

108

Reply to Def.'s Opp'n to Mot. to Vacate & Opp'n to Def.'s Cross-Mot. to Confirm, ECF No. 63 at 8; this is not chronologically possible, as she entered into the Sub Contractor Agreement with IntePros on June 13, 2013, while IntePros' DHA Contract with the government did not become effective until four days later, on June 17, 2013, Pl.'s Mot. to Vacate, ECF No. 45 at 13 n.9-10. Dr. Andresen cites caselaw indicating than an earlier document may be incorporated by reference into a subsequent contract, *see id.* at 13 n.11 (citing *Priority One Servs., Inc. v. W & T Travel Servs., LLC*, 825 F. Supp. 2d 43, 53 (D.D.C. 2011) (explaining that an "earlier document is made a part of the second document" when it is "incorporated by reference" (citations and internal quotation marks omitted))); and yet, she improperly argues for the reverse—that the earlier in time Sub Contractor Agreement somehow incorporates the second, later in time, DHA Contract, *see* Pl.'s Mot. to Vacate, ECF No. 45 at 13 n.11.

Furthermore, the Court agrees with IntePros that Dr. Andresen "does not [ ] cite any portion of the Subcontract that actually incorporates the Federal Contract by reference." Def.'s Opp'n to Pl.'s Mot. to Vacate & Cross-Mot. to Confirm, ECF No. 55 at 20. Instead, Dr. Andresen claims, without textual evidence, that "Addendum: Exhibit A – SC Work Schedule" in her Sub Contractor Agreement with IntePros, *see* Ex. L to Pl.'s Opp'n to Mot. to Dismiss & Cross-Mot. to Litigate, ECF No. 37-14 at 6;

incorporates by reference the DHA Contract because "one must refer to the DHA Contract to see how the position of 'Information Technology Analyst' [as] stated in [this addendum to the] IntePros Agreement is defined[,]" Pl.'s Mot. to Vacate, ECF No. 45 at 15. This statement is unsupported because there is no reference in this addendum or elsewhere in the Sub Contractor Agreement to the DHA Contract between IntePros and the federal government. In addition, contrary to Dr. Andresen's claims, instead of needing to refer to the DHA Contract to define "the requirements of the Information Technology Analyst position that [she] held[,]" *id.*; the Sub Contractor Agreement broadly defines her requested "consulting services" as "such information technology services as are identified to the Sub Contractor[, *i.e.*, Dr. Andresen] by IntePros[,]" and also includes relevant employment conditions such as her work location, start and end dates, and pay rate, *see* Ex. L to Pl.'s Opp'n to Mot. to Dismiss & Cross-Mot. to Litigate, ECF No. 37-14 at 1, 6.[25]

_____

[25] Although the Sub Contractor Agreement does not incorporate by reference the DHA Contract to define Dr. Andresen's position description or work conditions, Arbitrator Janofsky's award indicates that she did look to the Federal Contract to fill in certain gaps when conducting her analysis, *see, e.g.*, Award, Ex. 2 to Def.'s Mot. to Dismiss, ECF No. 35-2 at 2 (explaining that Dr. Andresen was engaged by IntePros "to render services as an Information Technology Analyst in connection with a contract that [IntePros] had with the federal government"), 5 (noting that Dr. Andresen's hours were "constrained to . . . [the] hours that were specified in the federal contract"), 5-6 (noting that "the federal contract was a fixed price contract" that impacted

110

Instead of properly challenging, pursuant to 9 U.S.C. §
10(a)(4), the authority granted to Arbitrator Janofsky by the
parties' arbitration agreement to decide the issues, Dr.
Andresen, as IntePros contends, incorrectly uses IntePros' DHA
Contract to challenge the "merits of the decision against
her[,]" including Arbitrator Janofsky's conclusions regarding:
(1) the issue of joint employment; (2) the interplay between the
Sub Contractor Agreement and the Federal Contract; and (3) who
supervised Dr. Andresen. *Compare* Def.'s Opp'n to Pl.'s Mot. to
Vacate & Cross-Mot. to Confirm, ECF No. 55 at 19, 22-24, *with*
Pl.'s Reply to Def.'s Opp'n to Mot. to Vacate & Opp'n to Def.'s
Cross-Mot. to Confirm, ECF No. 63 at 8 (arguing that Arbitrator
Janofsky "did not consider critical elements of the DHA Contract
that relate[d] to [Dr. Andresen's] employment situation"). The
Court is "not authorized to reconsider the merits of" the
arbitration award even though Dr. Andresen "allege[s] that the
award rests on errors of fact or on misinterpretation of the

---

Dr. Andresen's opportunities for profit and loss), 6 (noting
that "[t]he parties' relationship was project-based because it
was tied to the requirements of a single federal contract");
thereby contradicting Dr. Andresen's claims that Arbitrator
Janofsky "ignor[ed] how the two contracts function together" to
"determine the salient conditions of [Dr. Andresen's]
employment[,]" *see* Pl.'s Mot. to Vacate, ECF No. 45 at 15-16;
Pl.'s Reply to Def.'s Opp'n to Mot. to Vacate & Opp'n to Def.'s
Cross-Mot. to Confirm, ECF No. 63 at 8 n.4 (improperly arguing
that Arbitrator Janofsky "never once mentioned or acknowledged
the relationship between [Dr. Andresen's] two contracts").

contract[,]" which includes not weighing in on "whether there is particular language in the written instrument which will support [her] claim." *Misco*, 484 U.S. at 36-37 (citations and internal quotation marks omitted). As such, the Court only concludes that Arbitrator Janofsky arguably construed the text of the governing Sub Contractor Agreement, together with the parties' arguments and evidentiary submissions, to decide the threshold issue of Dr. Andresen's status as an employee or independent contractor. Therefore, Arbitrator Janofsky "did what the parties requested: [She] provided an interpretation of the contract resolving that disputed issue." *Oxford Health Plans*, 569 U.S. at 573.

That Arbitrator Janofsky's "interpretation went against [Dr. Andresen], maybe mistakenly so[,]" does not entitle her "to rerun the matter in [this C]ourt." *Id.* In other words, even if Arbitrator Janofsky was wrong about aspects of the interplay between the Sub Contractor Agreement and the DHA Contract, "criticize[d] improperly [Dr. Andresen's] reliance on" certain caselaw, or "followed [IntePros'] arguments while disregarding [Dr. Andresen's] arguments" on the issues of joint employment and supervision, *see* Pl.'s Mot. to Vacate, ECF No. 45 at 14-18; Dr. Andresen's efforts to re-raise these same claims are merely "challenges to the merits of the Award [ ] masked as challenges to the arbitrator's authority," Def.'s Opp'n to Pl.'s Mot. to Vacate & Cross-Mot. to Confirm, ECF No. 55 at 24; that the Court

will address no further, *see Davis*, 667 F.2d at 165 (explaining
that courts "ill serve" arbitration's aims "by engaging in any
more rigorous review than is necessary to ensure compliance with
[the FAA's] statutory standards"); *Misco*, 484 U.S. at 38
(prohibiting courts from "hear[ing] claims of factual or legal
error by an arbitrator as an appellate court does in reviewing
decisions of lower courts").

Because Dr. Andresen has not shown that Arbitrator Janofsky
"strayed from [her] delegated task of interpreting" the Sub
Contractor Agreement in determining the appropriate award in
this matter, Arbitrator Janofsky's construction, "which was
bargained for[,] . . . holds, however good, bad, or ugly."
*Oxford Health Plans*, 569 U.S. at 572-73 (citation and internal
quotation marks omitted); *see also Mesa Power*, 255 F. Supp. 3d
at 186 (explaining that even if an arbitrator might have been
wrong, "[t]he potential for those mistakes is the price of
agreeing to arbitration" (citation and internal quotation marks
omitted)). Therefore, there is no basis for the Court to vacate
the arbitration award pursuant to section 10(a)(4) of the FAA.

### 2. The Arbitrator Is Not Guilty of Misconduct or Misbehavior Pursuant to 9 U.S.C. § 10(a)(3) of the Federal Arbitration Act

Dr. Andresen's second argument for vacatur of the
arbitration award is pursuant to 9 U.S.C. § 10(a)(3) of the FAA,
*see* Pl.'s Mot. to Vacate, ECF No. 45 at 19-31; which permits

vacatur "where the arbitrators were guilty of misconduct . . . in refusing to hear evidence pertinent and material to the controversy; or of any other misbehavior by which the rights of any party have been prejudiced[,]" 9 U.S.C. § 10(a)(3).

"The scope of review under § 10(a)(3) is [ ] narrow[,]" and "is focused on whether the [arbitrator] refused to hear material evidence, or otherwise employed an improper procedure." *Mesa Power*, 255 F. Supp. 3d at 184. It is "generally not enough . . . to complain that the arbitrator made procedural missteps[.]" *White v. Four Seasons Hotel & Resorts*, 244 F. Supp. 3d 1, 5 (D.D.C. 2017). "This is because, 'in making evidentiary determinations,' arbitrators 'need not follow all the niceties observed by the federal courts.'" *Id.* at 4 (quoting *Lessin v. Merrill Lynch, Pierce, Fenner & Smith, Inc.*, 481 F.3d 813, 816 (D.C. Cir. 2007)). Rather, "[t]he arbitrator need only grant the parties a fundamentally fair hearing[,]" *Lessin*, 481 F.3d at 816 (citation and internal quotation marks omitted); which "requires only notice, opportunity to be heard and to present relevant and material evidence and argument before the decision makers, and that the decision makers are not infected with bias[,]" *White*, 244 F. Supp. 3d at 5 (citation and internal quotation marks omitted). "[D]istrict courts are [thus] not empowered to second-guess [an arbitrator's] decisions—procedural or substantive—even if there is evidence that the arbitrator erred[,]" *ARMA, S.R.O.*

*v. BAE Sys. Overseas, Inc.*, 961 F. Supp. 2d 245, 264 (D.D.C. 2013); and may vacate an award only if the arbitrator's "refusal to hear pertinent and material evidence prejudice[d] the rights of the parties to the arbitration proceedings[,]" *Lessin*, 481 F.3d at 818 (citation and internal quotation marks omitted).

"With this narrow scope of review in mind, the Court turns to the issues at hand." *Mesa Power*, 255 F. Supp. 3d at 184. Dr. Andresen argues that Arbitrator Janofsky "committed two instances of misbehavior by which [her] rights were prejudiced under § 10(a)(3)[.]" Pl.'s Mot. to Vacate, ECF No. 45 at 19. First, she argues that Arbitrator Janofsky arbitrarily and capriciously abused her discretion in refusing to permit Dr. Andresen to correct "a drafting error" in the Statement of Claims related to her alleged FCA retaliation claim. *Id.* at 19, 22-23. Second, Dr. Andresen contends that Arbitrator Janofsky "wall[ed] herself off from hearing evidence 'pertinent and material to the controversy.'" *Id.* at 19-20 (citation omitted). The Court assesses each argument in turn below to determine whether Dr. Andresen's complained-of arbitrator conduct deprived her of a fundamentally fair hearing. *Lessin*, 481 F.3d at 819.

**a. Arbitrator Janofsky Did Not Engage in Misconduct or Misbehavior When She Denied Dr. Andresen's Attempt to Amend the Statement of Claims to Add an FCA Retaliation Claim Under the Guise of a "Drafting Error"**

Dr. Andresen first argues that Arbitrator Janofsky's refusal to permit her to "correct a drafting error" in her Statement of Claims involving her alleged FCA retaliation claim "constitute[d] an arbitrary and capricious abuse of discretion," and therefore "an instance of misbehavior under § 10(a)(3) of the FAA."  Pl.'s Mot. to Vacate, ECF No. 45 at 21. She explains, as she did in her cross-motion to litigate, that during arbitration, she "believed she was merely correcting a drafting error, not amending her Statement of Claims to add a 'new or different claim[,]'" and that "even if the arbitrator disagreed and . . . construe[d] the change more formally as an amendment," Arbitrator Janofsky should have "freely given" Dr. Andresen leave to amend her statement pursuant to Federal Rule of Civil Procedure 15(a)'s "liberal relation back standard" for amending a pleading. *Id.* at 22 (citing Fed. R. Civ. P. 15(a)(2)). Dr. Andresen contends that Arbitrator Janofsky's refusal to apply this "lenient" and "well-known" standard was "arbitrary and capricious" conduct that "disregard[ed] [ ] procedural norms" and therefore rises to "misbehavior" capable of vacating the arbitration award under the FAA. *Id.* at 20, 22-23.

i. **The Administrative Procedure Act's "Arbitrary and Capricious" Standard for Review of Agency Action Cannot Be Used to "Illuminate" the FAA's Statutory Bases for Vacatur of an Arbitration Award**

IntePros first takes issue with "Dr. Andresen's repeated attempts to equate the FAA's limited grounds for vacatur with [the Administrative Procedure Act's ('APA')] 'arbitrary and capricious standard'" for review of agency action, despite her admitting that this standard "does not constitute an independent ground for vacatur[.]" Def.'s Opp'n to Pl.'s Mot. to Vacate & Cross-Mot. to Confirm, ECF No. 55 at 14. Although Dr. Andresen replies that she is "draw[ing] on the arbitrary and capricious standard to illuminate—not replace—the bases [for vacatur] outlined in the FAA[,]" Pl.'s Reply to Def.'s Opp'n to Mot. to Vacate & Opp'n to Def.'s Cross-Mot. to Confirm, ECF No. 63 at 11; specifically by explaining how "misbehavior" can result from the prejudicial impact of an arbitrator's arbitrary and capricious decision-making, Pl.'s Mot. to Vacate, ECF No. 45 at 21 n.20; the Court agrees with IntePros that Dr. Andresen's argument "miscites and misapplies many authorities[,]" and that the APA's arbitrary and capricious standard has no rightful place in analyzing vacatur pursuant to 9 U.S.C. § 10(a)(3) of the FAA, *see* Def.'s Opp'n to Pl.'s Mot. to Vacate & Cross-Mot. to Confirm, ECF No. 55 at 14-15.

For example, Dr. Andresen claims that the district court in *Foulger-Pratt Residential Contracting, LLC v. Madrigal Condominiums, LLC*, 779 F. Supp. 2d 100 (D.D.C. 2011) "upheld the arbitrary and capricious standard when it is fixed to a 'plausible statutory basis.'" Pl.'s Mot. to Vacate, ECF No. 45 at 21 n.20. However, the *Foulger-Pratt* court did the opposite, instead concluding that the respondent "ha[d] failed to raise any [ ] plausible statutory basis for applying the arbitrary and capricious standard," and that "vacatur [could not] be granted based on this erroneous standard of review." 779 F. Supp. 2d at 124. Although *Foulger-Pratt* analyzed vacatur of an arbitration award pursuant to the grounds enumerated in the D.C. Revised Uniform Arbitration Act ("DCRAA"), as opposed to those in the FAA, that court noted that under the DCRAA, similar to the FAA, "an arbitration award can only be set aside or vacated on clearly specified statutory grounds[,]" and that judicial review of an award is thus "extremely limited." *Id.* at 123. As such, contrary to Dr. Andresen's claims, nothing in *Foulger-Pratt* suggests that she can be "successful" in "attach[ing] the [APA's] arbitrary and capricious standard to" any statutory basis under the FAA, including but not limited to section 10(a)(3). Pl.'s Reply to Def.'s Opp'n to Mot. to Vacate & Opp'n to Def.'s Cross-Mot. to Confirm, ECF No. 63 at 12.

Dr. Andresen also incorrectly argues that the arbitrary and capricious standard "was recognized as a basis for vacatur" in *Union Pacific Railroad Co. v. Surface Transportation Board*, 358 F.3d 31 (D.C. Cir. 2004). Pl.'s Mot. to Vacate, ECF No. 45 at 21 n.20. In response to IntePros' arguments to the contrary, *see* Def.'s Opp'n to Pl.'s Mot. to Vacate & Cross-Mot. to Confirm, ECF No. 55 at 15 n.5; Dr. Andresen admits that she "misread[]" this case, and that in it, the D.C. Circuit analyzed whether an agency—the Surface Transportation Board, properly governed by the APA—"not a private arbitration panel, behaved arbitrarily and capriciously[,]" Pl.'s Reply to Def.'s Opp'n to Mot. to Vacate & Opp'n to Def.'s Cross-Mot. to Confirm, ECF No. 63 at 11 n.11; *see also* Pl.'s Mot. to Vacate, ECF No. 45 at 21 n.19 (admitting that while the APA provides for judicial review of agency decisions, "the AAA is not an 'agency'"). She also acknowledges in her reply brief that *Union Pacific Railroad Co.* "does not link the [APA's] arbitrary and capricious standard to one of the bases for vacatur in the FAA[.]" Pl.'s Reply to Def.'s Opp'n to Mot. to Vacate & Opp'n to Def.'s Cross-Mot. to Confirm, ECF No. 63 at 12. As such, the Court is unpersuaded that this case provides any support for using the arbitrary and capricious standard for review of agency action under the APA to "illuminate" the FAA's statutory basis for vacatur of an arbitrator's award under 9 U.S.C. § 10(a)(3). *Id.* at 11, 13.

Furthermore, one circuit court of appeals to consider the issue has concluded that "arbitrariness and capriciousness" must also be rejected "as an independent nonstatutory ground for vacatur under the FAA" because the "established rules of deference foreclose all but the most limited [judicial] review." *See Brabham v. A.G. Edwards & Sons Inc.*, 376 F.3d 377, 385-86 (5th Cir. 2004) (concluding that "[b]ecause [courts] must remain exceedingly deferential to arbitration, . . . the district court erred in vacating the award as arbitrary and capricious").

Accordingly, the Court rejects Dr. Andresen's arguments for using the APA's arbitrary and capricious standard "to fill out" what "misbehavior" pursuant to 9 U.S.C. § 10(a)(3) "mean[s] in practice[,]" Pl.'s Reply to Def.'s Opp'n to Mot. to Vacate & Opp'n to Def.'s Cross-Mot. to Confirm, ECF No. 63 at 13; and assesses only whether Arbitrator Janofsky "employed an improper procedure" that denied Dr. Andresen "a fundamentally fair hearing" on the issue of the FCA retaliation claim she sought to include in a "corrected" version of her Statement of Claims, *Mesa Power*, 255 F. Supp. 3d at 184; *Lessin*, 481 F.3d at 816.[26]

---

[26] Dr. Andresen also argues that by rejecting her "drafting error" explanation and denying her permission to amend the Statement of Claims to include an FCA retaliation claim, Arbitrator Janofsky not only acted arbitrarily and capriciously, but also "displayed manifest disregard for procedural norms[,]" specifically the norm of Federal Rule of Civil Procedure 15(a) "granting a liberal ability to amend." Pl.'s Reply to Def.'s Opp'n to Mot. to Vacate & Opp'n to Def.'s Cross-Mot. to Confirm,

##### ii. Dr. Andresen Has Not Shown That Arbitrator Janofsky Denied Her a "Fundamentally Fair Hearing" as to Her Alleged FCA Retaliation Claim

Because arbitrators must "grant the parties a fundamentally fair hearing[,]" *Lessin*, 481 F.3d at 816 (citation and internal quotation marks omitted); courts will not enforce an arbitration award if given "a compelling reason to suspect that the award resulted from an unfair process[,]" *Republic of Argentina*, 894 F.3d at 332. However, the FAA "requires enforcement even when arbitration proceedings do not provide the full process protections that courts provide because the 'primary purpose' of the Act is not to turn arbitration panels into private federal courts but to 'ensure that private agreements to arbitrate are

---

ECF No. 63 at 13 n.12; Pl.'s Mot. to Vacate, ECF No. 45 at 22 n.21. In so arguing, Dr. Andresen invokes the "manifest disregard of the law" theory for vacating an arbitration award, which was rendered "an uncertain proposition" after the Supreme Court's decision in *Hall Street Associates, LLC v. Mattel, Inc.*, 552 U.S. 576, 128 S. Ct. 1396, 170 L. Ed. 2d 254 (2008). *See Coyne v. Hewlett-Packard Co.*, 308 F. Supp. 3d 207, 210 (D.D.C. 2018) (citing *Hall St.*, 552 U.S. at 586; and summarizing subsequent Supreme Court caselaw indicating "that manifest disregard may not have survived its *Hall Street* decision"). Although Dr. Andresen claims that she is not arguing "that the arbitrator's actions meet the standard of 'manifest disregard for the law[,]'" she contends that this standard "can be repurposed to articulate the idea of manifest disregard for procedural norms[,]" which she claims, like arbitrary and capricious conduct, is "one species of misbehavior under § 10(a)(3) of the FAA." Pl.'s Mot. to Vacate, ECF No. 45 at 22 n.21. However, Dr. Andresen does not cite any authorities to support her argument, and thus, the Court rejects her attempt to link "misbehavior" under section 10(a)(3) to her self-created "idea of manifest disregard for procedural norms." *Id.*

enforced according to their terms.'" *Id.* (quoting *Stolt-Nielsen*, 559 U.S. at 682). The burden to prove the existence of unfair process during arbitration "falls on the challenger's shoulders, and it is 'onerous.'" *Id.* at 333 (quoting *Al-Harbi v. Citibank, N.A.*, 85 F.3d 680, 683 (D.C. Cir. 1996), *cert. denied*, 519 U.S. 981, 117 S. Ct. 432, 136 L. Ed. 2d 331 (1996)). This is because "[i]f it were easy to call into question the fairness of an arbitration, losing parties would have every reason to challenge the process in court[,]" *id.;* which would contradict "arbitration's essential virtue of resolving disputes straightaway" and would "open[] the door to the full-bore legal and evidentiary appeals that can rende[r] informal arbitration merely a prelude to a more cumbersome and time-consuming judicial review process," *Hall St.*, 552 U.S. at 588 (citation and internal quotation marks omitted).

Here, Dr. Andresen argues that Arbitrator Janofsky engaged in procedural "misbehavior" by: (1) refusing to allow her to correct a "drafting error" involving an alleged FCA retaliation claim in her "corrected" Statement of Claims; and (2) denying her permission, in the alternative, to formally amend her Statement of Claims to include this claim. Pl.'s Mot. to Vacate, ECF No. 45 at 21. Contrary to these arguments, however, the record shows that Arbitrator Janofsky "granted Dr. Andresen a 'fundamentally fair' opportunity to present reasons why an FCA

retaliation claim should be included" as an "eleventh-hour request" at such a late stage in the arbitration process—*i.e.*, after IntePros had filed its Phase One dispositive motion and long after the deadline had passed for Dr. Andresen to submit her Statement of Claims. *See* Def.'s Opp'n to Pl.'s Mot. to Vacate & Cross-Mot. to Confirm, ECF No. 55 at 25-26.

First, Dr. Andresen was permitted to present written arguments and "pertinent and material" evidence regarding her position that Arbitrator Janofsky should accept an FCA retaliation claim via the September 7, 2018 "corrected" Statement of Claims that Dr. Andresen emailed to the AAA case manager—nearly seven months after the scheduling order deadline. In her combined Phase One dispositive cross-motion and opposition to IntePros' Phase One dispositive motion (a briefing accompanied by approximately 300 hundred pages of evidentiary submissions), *see* Ex. 6 to Pl.'s Mot. to Vacate, ECF No. 45-7 at 1-325; Dr. Andresen argued that her original Statement of Claims "invoked" an FCA retaliation claim, but that if Arbitrator Janofsky viewed this claim as "new or different," she requested, for the first time, arbitrator consent to assert this claim as an amendment because she argued that it "involve[d] neither surprise nor prejudice to IntePros[,]" *id.* at 35-36. Dr. Andresen proffered similar arguments in her reply in support of her Phase One dispositive cross-motion, and also argued, as she

does now, that Federal Rule of Civil Procedure 15(a)'s "liberal standard" should govern Arbitrator Janofsky's decision regarding her proposed amendments to the Statement of Claims. *See* Ex. 8 to Pl.'s Mot. to Vacate, ECF No. 45-9 at 28-31.

Second, rather than refuse to receive Dr. Andresen's briefs and evidence, Arbitrator Janofsky considered them, alongside IntePros' submissions, *see* Ex. 5 to Pl.'s Mot. to Vacate, ECF No. 45-6 (IntePros' Phase One dispositive motion); Ex. 7 to Pl.'s Mot. to Vacate, ECF No. 45-8 (IntePros' reply to Dr. Andresen's cross-motion and her opposition to its Phase One dispositive motion); and she also heard the oral arguments presented by both parties on this issue at the May 29, 2019 telephonic hearing, Award, Ex. 2 to Def.'s Mot. to Dismiss, ECF No. 35-2 at 3. During this hearing, the parties mutually agreed that Arbitrator Janofsky could "decide the issues raised in the pending motions based solely on the written submissions and the telephonic hearing, without the necessity of holding an evidentiary hearing." *Id.* As such, following this hearing, Arbitrator Janofsky properly entered an award in favor of IntePros, in which she discussed and rejected several of Dr. Andresen's arguments for why an FCA retaliation claim should be included at that stage in the arbitration, including that Dr. Andresen "did not file her FCA retaliatory discharge claim within the scheduling order deadlines[;]" did not "mention or

124

reference" the FCA "whatsoever" in her original Statement of Claims; "never sought arbitrator consent, either to alter the scheduling order, or to add the FCA claim" (until the Phase One dispositive motion phase); and "disingenuous[ly]" characterized her amendment "as just a minor correction of a technical error" when such an "extensive" amendment "at th[at] point would [have] prejudice[d]" IntePros. *Id.* at 10-11. Ultimately, Arbitrator Janofsky concluded, based on the evidence, that Dr. Andresen was at fault for not following the AAA rules governing how to amend her Statement of Claims to properly plead an FCA retaliation claim in arbitration, and she dismissed that claim. *See id.*

As such, the Court concludes that Dr. Andresen has not met her "onerous" burden under 9 U.S.C. § 10(a)(3) to show unfair process in the way Arbitrator Janofsky considered and addressed her FCA retaliation claim arguments. *Al-Harbi*, 85 F.3d at 683. As explained above, Arbitrator Janofsky provided several reasons for denying Dr. Andresen's "untimely, unilateral attempt to amend" her Statement of Claims to include this claim, all of which were supported by the record. Award, Ex. 2 to Def.'s Mot. to Dismiss, ECF No. 35-2 at 11. Notably, Dr. Andresen did not formally ask for arbitrator consent to amend her Statement of Claims until her April 5, 2019 Phase One dispositive cross motion and opposition to IntePros' Phase One dispositive motion, *see* Ex. 6 to Pl.'s Mot. to Vacate, ECF No. 45-7 at 35-36; even

though she was put on notice nearly seven months earlier of AAA
Commercial Rule R-6(b)'s requirement to seek arbitrator consent
to amend by IntePros' objection to her September 7, 2018 email
to Ms. Beyer, in which IntePros explained why Dr. Andresen's
emailed "corrected" statement was "not appropriate[,]" Ex. 8 to
Def.'s Mot. to Dismiss Reply & Opp'n to Cross-Mot. to Litigate,
ECF No. 43-8 at 2. It was therefore unreasonable for Dr.
Andresen to "rel[y] upon Ms. Beyer's representation that the AAA
had received the change as a 'correction' and not an amendment"
or to "assume[] that the matter was concluded." Pl.'s Reply to
Def.'s Opp'n to Mot. to Vacate & Opp'n to Def.'s Cross-Mot. to
Confirm, ECF No. 63 at 15.

In addition, Dr. Andresen claims that she discovered the
"drafting error" in her Statement of Claims on May 29, 2018,
made her attorneys aware of it that same day, and following
their inaction, discharged them. *Id.* at 14-15. Thus, by her own
admission, ten months passed following her discovery of the
"error" before Dr. Andresen, as a then-*pro se* litigant, sought
arbitrator consent to amend. It is no excuse that her attorneys
misunderstood the law or the AAA Commercial Rules, or that they
"did not plead [her] FCA retaliation claim artfully," *id.* at 15
n.14; as such issues only show that the delay in moving to amend
her Statement of Claims was "not due to events outside of [her]
control" and that Arbitrator Janofsky had a "reasonable basis

126

for [her] decision[,]" *see Lykins v. Citicorp Credit Servs., Inc.*, No. 1:13-mc-11, 2013 WL 1987275, at *1-2 (S.D. Ohio May 13, 2013) (refusing to vacate an award pursuant to 9 U.S.C. § 10(a)(3) because it was reasonable for the arbitrator to conclude that the plaintiff's request to amend his arbitration complaint to add a retaliation claim was "too late" when he "waited at least six months after becoming aware of evidence" supporting that claim to move to amend, and he admitted that the delay "was caused by his own attorneys' misunderstanding of the arbitration rules").[27] As IntePros notes, "Dr. Andresen cannot appeal for clemency on the basis of the alleged failures of her attorneys, her freely-selected agents acting within the scope of their representation." Def.'s Opp'n to Pl.'s Mot. to Vacate & Cross-Mot. to Confirm, ECF No. 55 at 30 (citing *Irwin v. Dep't of Veteran Affs.*, 498 U.S. 89, 92, 111 S. Ct. 453, 112 L. Ed. 2d 435 (1990) (explaining that litigants are "bound by the acts of" their lawyers and are "considered to have notice of all facts, notice of which can be charged upon the[ir] attorney[s]" (citation and internal quotation marks omitted))).

---

[27] Dr. Andresen tries to distinguish the findings in this case, *see* Pl.'s Reply to Def.'s Opp'n to Mot. to Vacate & Opp'n to Def.'s Cross-Mot. to Confirm, ECF No. 63 at 17; but the Court is unpersuaded, as it views the facts from *Lykins v. Citicorp Credit Servs., Inc.*, No. 1:13-mc-11, 2013 WL 1987275 (S.D. Ohio May 13, 2013) as directly analogous to Dr. Andresen's untimely request to amend her Statement of Claims in arbitration.

Rather than "credibly claim" that she was "denied a 'fundamentally fair' . . . opportunity to present argument and evidence about adding an FCA retaliation claim[,]" IntePros argues, and the Court agrees, that "a close reading" of Dr. Andresen's arguments merely indicates her attempt to repeat claims she raised during arbitration, *see* Def.'s Opp'n to Pl.'s Mot. to Vacate & Cross-Mot. to Confirm, ECF No. 55 at 17 n.6, 28 (arguing that Dr. Andresen's vacatur petition "simply rehashe[s] arguments and points already made and disputed in the parties' [arbitration] briefings"); and to get the Court to "reconsider the merits" of Arbitrator Janofsky's decisions, which the Court is not permitted to do, *see Misco*, 484 U.S. at 36.

For example, Dr. Andresen argued in arbitration that Arbitrator Janofsky should have freely given her leave to amend her Statement of Claims pursuant to Federal Rule of Civil Procedure 15(a)'s "liberal" relation back standard because she alleged that her FCA retaliation claim arose "out of exactly the same conduct, transaction[,] or occurrence as [her] NDAA claim." *See* Ex. 8 to Pl.'s Mot. to Vacate, ECF No. 45-9 at 29-30 (Dr. Andresen's arbitration Phase One reply memorandum). Despite losing this argument, Dr. Andresen now reasserts it, admittedly exactly as she "stated in her [arbitration] papers and testified to during the [May 29, 2019] telephonic hearing," but this time under the guise of "misbehavior" by claiming that Arbitrator

Janofsky improperly disregarded Rule 15's "procedural norms." Pl.'s Mot. to Vacate, ECF No. 45 at 22-23. The Court declines to reassess the merits of this regurgitated argument. And, in any event it must fail because, as Dr. Andresen admits, the Federal Rules of Civil Procedure do not govern arbitrations conducted pursuant to the AAA Commercial Rules, *id.* at 22 n.21; nor are arbitrators required to follow the same procedural "niceties observed by the federal courts[,]" *Lessin*, 481 F.3d at 816 (citation and internal quotation marks omitted). If anyone disregarded "procedural norms," it was Dr. Andresen, who failed to observe AAA Rule R-6(b)'s requirements for adding new claims.

Similarly, Dr. Andresen contests Arbitrator Janofsky's conclusion that adding an FCA retaliation claim at that point in the arbitration would have prejudiced IntePros, Award, Ex. 2 to Def.'s Mot. to Dismiss, ECF No. 35-2 at 11; by reasserting the exact arguments she lost in arbitration, *compare* Ex. 6 to Pl.'s Mot. to Vacate, ECF No. 45-7 at 36 (arguing in arbitration that the inclusion of an FCA retaliation claim would not prejudice IntePros because there was "no additional discovery that IntePros could have taken, but was prevented from taking, by virtue of any belated assertion of this claim, particularly in *Phase One*" because Phase One was "limited to 'threshold' issues relating to exhaustion and employee status[,]" which are not required to assert an FCA retaliation claim), *and* Ex. 8 to Pl.'s

Mot. to Vacate, ECF No. 45-9 at 31 (same), *with* Pl.'s Mot. to
Vacate, ECF No. 45 at 23-24 (arguing now that Arbitrator
Janofsky's conclusions regarding prejudice were "unfair" because
"Phase One of [ ] arbitration was limited to questions of [Dr.
Andresen's] employment status and exhaustion of administrative
remedies[,]" which are not "requirements" of an FCA claim, and
because there was no "additional discovery specific to the FCA
claim that [IntePros] was prevented from taking for purposes of
the *threshold* Phase One motion"), *and* Pl.'s Reply to Def.'s
Opp'n to Mot. to Vacate & Opp'n to Def.'s Cross-Mot. to Confirm,
ECF No. 63 at 15-16 (same).

Dr. Andresen's "continued dispute about the legal validity
of [these] point[s] shows that [her] disagreement is over
whether the law was correctly applied, not over whether"
Arbitrator Janofsky "engaged in 'misbehavior by which the
rights' of [Dr. Andresen] 'were prejudiced' under § 10(a)(3)."
*Mesa Power*, 255 F. Supp. 3d at 188. In other words, Arbitrator
Janofsky "simply reached a legal conclusion [on prejudice] that
[Dr. Andresen] does not agree with[,]" *id.* at 189; which is not
grounds for the Court to interfere with the arbitration award,
even if Arbitrator Janofsky did err in some respects in her
prejudice analysis, *see id.* at 183 (prohibiting courts from
setting aside an arbitration award "for error, either in law or
fact[,]" so long as the award represents "the honest decision of

the arbitrator[], after a full and fair hearing of the parties"
(citations and internal quotation marks omitted)); *Misco*, 484
U.S. at 38 (disallowing courts from "hear[ing] claims of factual
or legal error by an arbitrator").

Accordingly, because Dr. Andresen has failed to meet her
burden to show that the arbitration proceedings "deviated
significantly from the [FAA's] standards of fair adjudication"
in regard to Arbitrator Janofsky's consideration of her
"drafting error"/Rule 15 amendment arguments for belatedly
including an FCA retaliation claim in her Statement of Claims,
*Republic of Argentina*, 894 F.3d at 332; the Court need not
address whether Arbitrator Janofsky was correct in rejecting
these arguments and "disallow[ing]" this claim, Award, Ex. 2 to
Def.'s Mot. to Dismiss, ECF No. 35-2 at 11.[28] As IntePros states,

---

[28] Were the Court to consider "the 'rightness' of the
arbitrator's decision," Def.'s Opp'n to Pl.'s Mot. to Vacate &
Cross-Mot. to Confirm, ECF No. 55 at 28; which it is not
required by the FAA to do in a vacatur petition, the Court notes
that it would likely endorse Arbitrator Janofsky's denial of Dr.
Andresen's FCA retaliation claim and her conclusion that Dr.
Andresen's characterization of these amendments to the Statement
of Claims as a simple drafting error was "disingenuous," Award,
Ex. 2 to Def.'s Mot. to Dismiss, ECF No. 35-2 at 10; as the
Court has similarly rejected Dr. Andresen's attempt to use the
"drafting error" narrative to include an FCA retaliation claim
in the Amended Complaint or in the proposed SAC as false and
misleading, *see supra* sections IV.A.1, IV.B.3. This reinforces
the Court's conclusion that it has no occasion to consider Dr.
Andresen's "newly articulated theory of FCA retaliation," *see*
Def.'s Opp'n to Pl.'s Mot. to Vacate & Cross-Mot. to Confirm,
ECF No. 55 at 30-31 n.8; including the question of whether the
Phase One arbitration issues of employment status and exhaustion

Arbitrator Janofsky "provided Dr. Andresen with a full and fair opportunity to prosecute her FCA retaliation claim, which was all that was required" according to 9 U.S.C. § 10(a)(3). Def.'s Opp'n to Pl.'s Mot. to Vacate & Cross-Mot. to Confirm, ECF No. 55 at 31.

> **b. Arbitrator Janofsky Did Not Engage in Misconduct or Misbehavior by Improperly "Walling" Herself Off from Pertinent and Material Evidence**

Dr. Andresen's second argument for vacatur under 9 U.S.C. § 10(a)(3) is that Arbitrator Janofsky "improperly walled herself off from hearing pertinent and material evidence" contained in the DOD IG's "Report on Investigation" that Dr. Andresen submitted as an exhibit in arbitration. Pl.'s Mot. to Vacate, ECF No. 45 at 25-26; *see* DoD IG Report of Investigation: Mr. David M. Bowen, ECF No. 46 (unredacted and under seal); Ex. I to Pl.'s Opp'n to Mot. to Dismiss & Cross-Mot. to Litigate, ECF No. 37-11 (redacted version of this exhibit). This report contains the findings of a DoD IG investigation related to Dr. Andresen's alleged "protected disclosures" that she made to the DoD IG about "improper collusion in contract procurement between [IntePros'] prior Vice President of Business Development . . .

---

of remedies apply to such a claim, contrary to Dr. Andresen's claims, *see* Pl.'s Mot. to Vacate, ECF No. 45 at 23-24.

and the prior Chief Information Officer" at DHA, David M. Bowen.
Pl.'s Mot. to Vacate, ECF No. 45 at 9-10.

Dr. Andresen argues that parts of the award's analysis on
her employment status as an independent contractor were directly
contradicted by the DoD IG's report, as well as by a letter she
submitted as another exhibit in arbitration from the DoD IG
Whistleblower Reprisal Investigations ("WRI") Directorate
indicating that "that office considered her to be an employee of
[IntePros] for purposes of maintaining her NDAA claim." *See id.*
at 26-29; Award, Ex. 2 to Def.'s Mot. to Dismiss, ECF No. 35-2
at 9. As such, Dr. Andresen contends that Arbitrator Janofsky
"inappropriately discount[ed]" her evidence, thereby exhibiting
bias in favor of IntePros, "misbehavior" under 9 U.S.C. §
10(a)(3), and "evident partiality" under 9 U.S.C. § 10(a)(2).
*See* Pl.'s Mot. to Vacate, ECF No. 45 at 26-28. IntePros responds
by arguing that Dr. Andresen's claims are nothing "more than
challenges to the arbitrator's considered conclusions[,]" as she
"fails to identify one instance when she tried to submit
evidence and argument and was thwarted in doing so." Def.'s
Opp'n to Pl.'s Mot. to Vacate & Cross-Mot. to Confirm, ECF No.
55 at 31-32.

The Court agrees with IntePros, as a close look at Dr.
Andresen's claims reveals that she is not arguing that

Arbitrator Janofsky "refused to hear or consider any evidence or argument" as required by FAA section 10(a)(3). *Id.* at 32.

First, Dr. Andresen takes issue with Arbitrator Janofsky's conclusion that "'[a]lthough [IntePros] wrote the description of the work [Dr. Andresen] was to perform for the [DoD], that fact is not fatal to [her] status as a contractor, because in a typical contract situation, a prime contractor would be expected to describe the work that its subcontractors would perform in the contract documents.'" Pl.'s Mot. to Vacate, ECF No. 45 at 26 (quoting Award, Ex. 2 to Def.'s Mot. to Dismiss, ECF No. 35-2 at 5). She argues that this conclusion was improper because the DoD IG's report stated that IntePros violated applicable government contracting regulations—the Federal Acquisition Regulations (the "FAR")—by being involved in writing the work statement for the contract services and then competing for those services, thereby causing it to "control[] the conditions of the position [Dr. Andresen] held even more than [was] permitted." *Id.* at 26, 26 n.27. However, this argument challenges the merits of this portion of Arbitrator Janofsky's reasoning on the employee versus independent contractor issue based on content contained in the DoD IG report. It does not allege, per the requirements of 9 U.S.C. § 10(a)(3), that Arbitrator Janofsky "refus[ed] to hear evidence pertinent and material to the controversy" contained in the DoD IG report, and instead touches on a topic

134

that had little, if any, "bearing on the question of employee status"—IntePros' alleged violation of the FAR, Def.'s Opp'n to Pl.'s Mot. to Vacate & Cross-Mot. to Confirm, ECF No. 55 at 32.

Rather, the portion of the award to which Dr. Andresen cites specifically indicates that Arbitrator Janofsky considered evidence addressing the issue of IntePros writing Dr. Andresen's work description. Despite this fact, Dr. Andresen attempts to bolster her argument by distinguishing between the terms "misbehavior" and "misconduct" as stated in 9 U.S.C. § 10(a)(3), and claiming that the statute prohibits both "misconduct"—"when an arbitrator refuses to hear pertinent and material evidence"— and "misbehavior"—when an arbitrator "wall[s] herself off from hearing" such evidence. Pl.'s Mot. to Vacate, ECF No. 45 at 19 n.13, 27 n.29; *see also* Pl.'s Reply to Def.'s Opp'n to Mot. to Vacate & Opp'n to Def.'s Cross-Mot. to Confirm, ECF No. 63 at 14 n.13, 20-21 (arguing that Arbitrator Janofsky did not commit "misconduct" but "misbehavior" because she engaged in "a walling [herself] off from evidence, not a blatant refusal to hear it"). The Court rejects Dr. Andresen's unsupported distinction between these terms, *see* Pl.'s Reply to Def.'s Opp'n to Mot. to Vacate & Opp'n to Def.'s Cross-Mot. to Confirm, ECF No. 63 at 14 n.13 (defining each term according to "Plaintiff's view"); especially since she has drawn her "wall" terminology from one inapposite case which referred to an arbitrator's improper use of a

"Chinese wall" in his attempt to ignore rather than investigate a conflict of interest he had in regard to his participation in that arbitration matter, *see* Pl.'s Mot. to Vacate, ECF No. 45 at 27 (citing *Applied Indus. Materials Corp. v. Ovalar Makine Ticaret Ve Sanayi, A.S.*, 492 F.3d 132, 134 (2d Cir. 2007)). There are no such similar facts here.

Second, Dr. Andresen also fails to show that Arbitrator Janofsky refused to consider the DoD IG WRI's letter stating that it considered Dr. Andresen an employee of IntePros for purposes of her NDAA claim. Instead, the award clearly indicates that Arbitrator Janofsky considered this letter but declined to follow "its bare conclusion as to [Dr. Andresen's] status" because it failed "to recite any facts[;]" provide information, if any, obtained from IntePros as to Dr. Andresen's status; or elaborate on what standard was applied to reach its overall conclusion that Dr. Andresen was an "employee" of IntePros. Award, Ex. 2 to Def.'s Mot. to Dismiss, ECF No. 35-2 at 9.

Dr. Andresen tries to salvage her argument by claiming that she told Arbitrator Janofsky during the telephonic hearing that prior to the DoD IG WRI's office issuing its letter, she had supplied that office "with material in support of [her] argument that she was [IntePros'] employee[,]" but that Arbitrator Janofsky "showed no interest in asking [Dr. Andresen] to describe this material in any way" or what it "consisted of,"

136

thereby "walling herself off" from it. Pl.'s Mot. to Vacate, ECF No. 45 at 28-29. However, this claim lacks merit, first because it does not address Arbitrator Janofsky's concern in the award that the DoD IG WRI's letter failed to discuss what information it obtained from IntePros—not Dr. Andresen—as to her employment status, and second, because Dr. Andresen does not allege that she asked to submit during arbitration the evidence she previously provided to the DoD IG WRI and that Arbitrator Janofsky denied her request. Instead, Dr. Andresen could have submitted this evidence alongside the many other exhibits she filed with her Phase One arbitration briefings, but she did not, and she cannot now claim that Arbitrator Janofsky "refused" to look at evidence that she never submitted in the first place. Pl.'s Reply to Def.'s Opp'n to Mot. to Vacate & Opp'n to Def.'s Cross-Mot. to Confirm, ECF No. 63 at 21 n.20.

Furthermore, Dr. Andresen's qualms with the arbitrator's "dismissive tone" and perceived "disinterest" are insufficient evidence of "misbehavior" under section 10(a)(3) or "evident partiality" under section 10(a)(2) (discussed further below). Pl.'s Mot. to Vacate, EC No. 45 at 28-29. Instead, the record indicates that in concluding that Dr. Andresen was an independent contractor and not IntePros' employee for purposes of negating her NDAA claim, Arbitrator Janofsky considered all the evidence presented written and orally by both parties, *see,*

137

*e.g., id.* at 28 n.31 (summarizing some of this evidence that Dr. Andresen produced as exhibits in arbitration); including the "preclusive effect" of the DoD IG's report and letter, Dr. Andresen's complaint to the DoD IG, and documentation from the Equal Employment Opportunity Commission determining that Dr. Andresen was not IntePros' employee but rather an independent contractor, Award, Ex. 2 to Def.'s Mot. to Dismiss, ECF No. 35-2 at 9; evidence which Dr. Andresen conveniently disregards in her vacatur petition.

This conclusion is not, contrary to Dr. Andresen's claims, negated by Arbitrator Janofsky's request during the telephonic hearing that IntePros email her a copy of the text of the 2013 version of the NDAA—to which it cited in its Phase One brief to argue that Dr. Andresen's contractual engagement was covered by that version of the statute—which did not yet offer NDAA protections to independent contractors. *See* Pl.'s Mot. to Vacate, ECF No. 45 at 29-30 (arguing that Arbitrator Janofsky sought out evidence from IntePros on the question of her "employment status vis-à-vis" IntePros but "walled herself off from learning evidence beneficial to [Dr. Andresen's] argument"); Pl.'s Reply to Def.'s Opp'n to Mot. to Vacate & Opp'n to Def.'s Cross-Mot. to Confirm, ECF No. 63 at 22 (arguing that Arbitrator Janofsky was "eager" to receive a copy of the prior version of 10 U.S.C. § 2409 but was disinterested in the

evidence that Dr. Andresen submitted to the DoD IG WRI on the topic of her employment status). Arbitrator Janofsky's request does not indicate "misbehavior" or "evident partiality" but rather her due diligence in verifying the parties' arguments and providing them with a reasoned and legally correct arbitration award. *See* Def.'s Opp'n to Pl.'s Mot. to Vacate & Cross-Mot. to Confirm, ECF No. 55 at 34 n.11.

Finally, Dr. Andresen argues that Arbitrator Janofsky "misbehaved by urgently requesting that the [p]arties send her emails expressly giving her permission to make her decision without an evidentiary hearing[,] . . . although she was aware [that] she did not have pertinent evidence upon which the DoD IG WRI . . . relied to determine that [Dr. Andresen] was [IntePros'] employee[.]" Pl.'s Mot. to Vacate, ECF No. 45 at 30-31. In conjunction with the above reasons rejecting Dr. Andresen's arbitrator "misbehavior" claims as to her DoD IG WRI evidence, the Court also rejects this argument because the record indicates, and Dr. Andresen "does not, and cannot, deny," Def.'s Opp'n to Pl.'s Mot. to Vacate & Cross-Mot. to Confirm, ECF No. 55 at 34; that both she and IntePros' counsel agreed at the beginning of the telephonic hearing that Arbitrator Janofsky could "decide the issues raised in the pending motions based solely on the written submissions and the telephonic hearing,

without the necessity of holding an evidentiary hearing[,]"
Award, Ex. 2 to Def.'s Mot. to Dismiss, ECF No. 35-2 at 3.

   As IntePros argues, and the Court agrees, Dr. Andresen
instead takes issue with Arbitrator Janofsky's "ensuing requests
for the parties to promptly memorialize their consent in an
email to the AAA, claiming that she felt pressured to do so."
Def.'s Opp'n to Pl.'s Mot. to Vacate & Cross-Mot. to Confirm,
ECF No. 55 at 34. However, Dr. Andresen orally consented to a
decision of the Phase One issues on the written submissions and
telephonic oral arguments, Award, Ex. 2 to Def.'s Mot. to
Dismiss, ECF No. 35-2 at 3; and she then complied with
Arbitrator Janofsky's request to memorialize her consent via
submission of a written email statement, *see* Ex. 3 to Def.'s
Opp'n to Pl.'s Mot. to Vacate & Cross-Mot. to Confirm, ECF No.
55-3 at 3. Dr. Andresen thus had two opportunities to object to
an arbitration decision on the papers and telephonic hearing and
to waiving any further evidentiary hearings, and she cannot now
belatedly claim that she did not object for fear that doing so
"would bias the arbitrator against her." Pl.'s Mot. to Vacate,
ECF No. 45 at 30. Furthermore, the Court agrees with IntePros
that it was not "unreasonable" for Arbitrator Janofsky to seek
the parties' consent to decide the Phase One issues without
holding an evidentiary hearing given the parties' lengthy Phase
One dispositive motion submissions (*i.e.*, briefings and

exhibits) and the lack of requests from either side during the telephonic hearing to either add more evidence or object to any existing evidence in the record. Def.'s Opp'n to Pl.'s Mot. to Vacate & Cross-Mot. to Confirm, ECF No. 55 at 35.

Ultimately, the Court concludes that the record before it, including the arbitration award itself, indicates that during arbitration, Dr. Andresen was provided with a full and fair opportunity to advance her evidence and arguments against IntePros, that she was never denied the opportunity to present "pertinent and material" evidence to the controversy, and that no arbitrator "misconduct" or "misbehavior" occurred during the telephonic hearing that could have prejudiced her rights. 9 U.S.C. § 10(a)(3). Accordingly, there is no basis for the Court to vacate the award pursuant to section 10(a)(3) of the FAA.[29]

### 3. The Arbitrator Did Not Exhibit Evident Partiality Pursuant to 9 U.S.C. § 10(a)(2) of the Federal Arbitration Act

Dr. Andresen's third argument for vacatur of the arbitration award is pursuant to 9 U.S.C. § 10(a)(2) of the FAA,

---

[29] Dr. Andresen also argues that Arbitrator Janofsky "was inappropriately cavalier" during arbitration, "once comparing arbitration to 'the Wild West.'" Pl.'s Mot. to Vacate, ECF No. 45 at 12 n.5; see Ex. 1 to Pl.'s Reply to Def.'s Opp'n to Mot. to Vacate & Opp'n to Def.'s Cross-Mot. to Confirm, ECF No. 63-2 at 1 ("Declaration of Dr. Jensine Andresen" attesting to Arbitrator Janofsky's "the Wild West" remark). Even assuming the truth of this allegation, it does not rise to "misbehavior" sufficient to vacate the award pursuant to 9 U.S.C. § 10(a)(3).

*see* Pl.'s Mot. to Vacate, ECF No. 45 at 31-47; which permits vacatur "where there was evident partiality or corruption in the arbitrators, or either of them[,]" 9 U.S.C. § 10(a)(2). This standard is designed to "impose[] duties on arbitrators with significant interests in the parties," and a district court's first step in considering whether "evident partiality" applies to vacate an arbitration award is asking whether an arbitrator's interest is "significant," as opposed to merely "trivial." *Republic of Argentina*, 894 F.3d at 334-35 (citing *Commonwealth Coatings Corp. v. Cont'l Cas. Co.*, 393 U.S. 145, 89 S. Ct. 337, 21 L. Ed. 2d 301 (1968)). "[A] challenger to an arbitrator's partiality has a steep slope to climb[,]" *id.* (citing *Al-Harbi*, 85 F.3d at 683); as "[i]t is well established that a mere appearance of bias is insufficient to demonstrate evident partiality[,]" *Owen-Williams*, 717 F. Supp. 2d at 19 (citation and internal quotation marks omitted). Instead, "[a] challenger can satisfy its heavy burden of proof only be presenting 'specific facts that indicate improper motives on the part of an arbitrator.'" *Republic of Argentina*, 894 F.3d at 335 (quoting *Al-Harbi*, 85 F.3d at 683).

Dr. Andresen argues that Arbitrator Janofsky showed "bias" rising to the level of evident partiality under 9 U.S.C. § 10(a)(2) for four main reasons, which amounted to ten total errors in the arbitration award. *See* Pl.'s Mot. to Vacate, ECF

No. 45 at 31-32, 47. She argues that Arbitrator Janofsky: (1)
"display[ed] confirmation bias in favor of [IntePros] at least
twice, relating to two factors of the hybrid employment test—
control over hours, and opportunity for profit and loss;" (2)
"often adopt[ed] [IntePros'] own language and arguments while
ignoring [Dr. Andresen's] arguments altogether;" (3) "cite[d] as
'facts' statements on which no evidence exists[;]" and (4)
interpreted the "actual facts" in a manner that was "biased" in
IntePros' favor. *Id.; see also* Pl.'s Reply to Def.'s Opp'n to
Mot. to Vacate & Opp'n to Def.'s Cross-Mot. to Confirm, ECF No.
63 at 23 (arguing that Arbitrator Janofsky "made 10 major
errors" that were all in IntePros' favor and did "not make a
single error in [Dr. Andresen's] favor," and that "[a] 10/10
track record in one party's favor certainly indicates bias") In
sum, Dr. Andresen argues that "a reasonable person can conclude
that [Arbitrator Janofsky] was biased, since a close textual
reading of [her] remarks suggests that [she] evaluated the
[parties'] pleadings with her mind already made up in favor of
[IntePros]." Pl.'s Mot. to Vacate, ECF No. 45 at 31.

In opposition, IntePros argues that "Dr. Andresen
fundamentally misconstrues and misrepresents" the standard under
section 10(a)(2), "has submitted no evidence of partiality[,]"
and attempts to disguise her disagreement with the merits of
Arbitrator Janofsky's "reasonable legal and factual findings as

143

'evident partiality' based on drummed-up grounds and perceived slights." Def.'s Opp'n to Pl.'s Mot. to Vacate & Cross-Mot. to Confirm, ECF No. 55 at 36-37. For the reasons discussed below, the Court agrees with IntePros.

### a. Dr. Andresen Misconstrues and Misrepresents the "Evident Partiality" Standard Under 9 U.S.C. § 10(a)(2)

Contrary to the "heavy burden of proof" required for vacatur pursuant to 9 U.S.C. § 10(a)(2), *Republic of Argentina*, 894 F.3d at 335; Dr. Andresen contends that evident partiality can simply be "inferred if an arbitration award had been 'biased' or 'inappropriate[,]'" Pl.'s Mot. to Vacate, ECF No. 45 at 31. However, in the D.C. Circuit, it is established that "a mere appearance of bias is *insufficient* to demonstrate evident partiality." *Hammad v. Lewis*, 638 F. Supp. 2d 70, 75 (D.D.C. 2009) (citation and internal quotation marks omitted) (emphasis added); and instead, Dr. Andresen is required to provide "specific facts" indicating improper motives on the part of Arbitrator Janofsky, *Al-Harbi*, 85 F.3d at 683.

The one case Dr. Andresen cites to support her statement, *Regnery Publishing, Inc. v. Miniter*, 601 F. Supp. 2d 192 (D.D.C. 2009), *aff'd*, 368 F. App'x 148 (D.C. Cir. 2010), says nothing about inferring evident partiality from evidence of bias in an arbitration award, and regardless, it analyzed vacatur pursuant to sections 10(a)(1) and 10(a)(4) of the FAA, not 10(a)(2). *See*

144

*id.* at 194-95 (explaining that the claimant's claim was *not* about whether "the arbitrator was biased" and that the claimant had failed to "meet the heavy burden of establishing that the arbitration award was inappropriate because he ha[d] not . . . demonstrated that 'the award was procured by corruption, fraud, or undue means' or that 'the arbitrator[] exceeded [his] powers, or so imperfectly executed them that a mutual, final, and definite award upon the subject matter submitted was not made'" (citing 9 U.S.C. § 10(a)(1) & (4))).[30]

Dr. Andresen takes her misinterpretation of section 10(a)(2)'s "evident partiality" standard a step further by using a non-binding case from the Court of Appeals for the Second Circuit ("Second Circuit"), *Morelite Construction Corp. v. New York City District Council Carpenters Benefit Funds*, 748 F.2d 79, 84 (2d Cir. 1984), to argue that evident partiality exists "'where a reasonable person would have to conclude that an arbitrator was partial to one party to the arbitration.'" Pl.'s

_____

[30] Although the words "evident partiality or corruption" from the text of 9 U.S.C. § 10(a)(2) appear in *Regnery*, as Dr. Andresen notes, *see* Pl.'s Reply to Def.'s Opp'n to Mot. to Vacate & Opp'n to Def.'s Cross-Mot. to Confirm, ECF No. 63 at 25-26 (citing *Regnery*, 601 F. Supp. 2d at 194-95); nothing in the actual analysis of that case addresses vacatur pursuant to section 10(a)(2). *Regnery* therefore does not, as Dr. Andresen contends, "establish[] a direct link between evident partiality and an award being 'inappropriate'" or "biased" pursuant to 9 U.S.C. § 10(a)(2). Pl.'s Reply to Def.'s Opp'n to Mot. to Vacate & Opp'n to Def.'s Cross-Mot. to Confirm, ECF No. 63 at 26.

Mot. to Vacate, ECF No. 45 at 31 (quoting *Morelite*, 748 F.2d at 84). Dr. Andresen argues that in her "view," *Morelite*'s "'reasonable person' standard does well to bring the 'clear, obvious, apparent' sense of the word 'evident' to the fore" in properly defining "what constitutes 'evident partiality[,]'" Pl.'s Reply to Def.'s Opp'n to Mot. to Vacate & Opp'n to Def.'s Cross-Mot. to Confirm, ECF No. 63 at 23-24; especially since it is "'often impossible[] to 'prove'" actual bias, Pl.'s Mot. to Vacate, ECF No. 45 at 31 (quoting *Morelite*, 748 F.2d at 84). However, the Court is unpersuaded by Dr. Andresen's use of *Morelite*, not only because it assessed the existence of evident partiality for "a father-son relationship between an arbitrator and the [p]resident of an international labor union, a district union of which [was] a party to the arbitration[,]" 748 F.2d at 84; facts which are extremely inapposite to the instant case, but also because it is "an out-of-circuit opinion" that differs from the law in this circuit, Def.'s Opp'n to Pl.'s Mot. to Vacate & Cross-Mot. to Confirm, ECF No. 55 at 36 n.13.

For comparison, in both *Morelite* and a D.C. Circuit case, *Republic of Argentina v. AWG Group LTD.*, 894 F.3d 327 (D.C. Cir. 2018), the Second Circuit and the D.C. Circuit divergently examined the Supreme Court's plurality decision in *Commonwealth Coatings Corp. v. Continental Casualty Co.*, 393 U.S. 145, 89 S. Ct. 337, 21 L. Ed. 2d 301 (1968), which left courts "in the dark

as to whether an 'appearance of bias' will suffice to meet the seemingly more stringent 'evident partiality' standard of 9 U.S.C. § 10." *Morelite*, 748 F.2d at 83. The Second Circuit in *Morelite* noted that much of the plurality opinion, written by Justice Black, "must be read as dicta," and "[a]gainst this murky backdrop of Supreme Court precedent," it turned to "prior decisions in" the Second Circuit "to delineate" its "reasonable person" standard for "'evident partiality' within the meaning of 9 U.S.C. § 10," a result which strikes a balance between "the mere 'appearance of bias' to vacate an arbitration award" and "proof of actual bias." *Id.* at 83-84. Meanwhile, the D.C. Circuit in *Republic of Argentina* noted that "the Justices could not agree on a single rationale" in *Commonwealth Coatings*, and it reviewed the differing rules proffered by Justice Black in the plurality opinion and Justice White in his concurrence. 894 F.3d at 334. The D.C. Circuit explained that while Justice Black's "rule would require arbitrators to disclose 'any dealings that might create an impression of possible bias[,]'" Justice White's rule would "relieve[] arbitrators from a duty to disclose trivial interests" and would require disclosure only when an arbitrator "'has a substantial interest in a firm which has done more than trivial business with a party [to the arbitration].'" *Id.* (citing *Commonwealth Coatings*, 393 U.S. at 147-52). Ultimately, the D.C. Circuit decided to follow Justice

147

White's rule for assessing evident partiality with a focus on the significance of an arbitrator's interest in the parties, as opposed to Justice Black's rule that focused on the possible "appearance of bias." *See id.* at 334-35.

Therefore, the standard for determining what constitutes "evident partiality" in the D.C. Circuit is not the Second Circuit's "reasonable person" standard for assessing bias, as Dr. Andresen contends, Pl.'s Reply to Def.'s Opp'n to Mot. to Vacate & Opp'n to Def.'s Cross-Mot. to Confirm, ECF No. 63 at 23, 27; but rather whether arbitrators have "'a substantial interest'" in the arbitration proceedings such that their participation would "'indicate[] improper motives,'" *Republic of Argentina*, 894 F.3d at 334-35 (citing *Commonwealth Coatings*, 393 U.S. at 150-52; *Al-Harbi*, 85 F.3d at 683). Accordingly, the Court rejects Dr. Andresen's "view" on the "reasonable person" standard and "[w]hat [she] likes about the *Morelite* . . . case," as it is not the law in this circuit. Pl.'s Reply to Def.'s Opp'n to Mot. to Vacate & Opp'n to Def.'s Cross-Mot. to Confirm, ECF No. 63 at 23-24.

### b. Dr. Andresen Has Failed to Demonstrate That Arbitrator Janofsky Had Improper Interests in the Arbitration Proceedings or Acted with Improper Motives

Using the governing D.C. Circuit standard for assessing evident partiality pursuant to 9 U.S.C. § 10(a)(2), the Court

next turns to the question of whether Dr. Andresen has met her "heavy" burden in "establish[ing] specific facts that indicate" Arbitrator Janofsky had any "significant," and thereby improper, interests in the arbitration proceedings, and acted with "improper motives" based on such interests. *Al-Harbi*, 85 F.3d at 683; *Republic of Argentina*, 894 F.3d at 335. IntePros argues that "Dr. Andresen has not presented any factual evidence that the arbitrator deciding the Award had 'a significant[] interest in the parties'" or acted with "any improper motive." Def.'s Opp'n to Pl.'s Mot. to Vacate & Cross-Mot. to Confirm, ECF No. 55 at 37 (quoting *Republic of Argentina*, 894 F.3d at 334). Instead, IntePros contends that "[n]o interest at all *is even alleged here*[,]" and that Dr. Andresen's evident partiality challenge under section 10(a)(2) must therefore fail. *Id.* (emphasis in original).

The Court agrees with IntePros that Dr. Andresen's petition fails to set forth "specific facts" that meet the "high standard" for vacatur pursuant to 9 U.S.C. § 10(a)(2). *Republic of Argentina*, 894 F.3d at 335. Despite allocating more than fifteen pages of her brief to advocating for vacatur pursuant to this FAA statutory ground, Dr. Andresen never alleges nor provides evidence that Arbitrator Janofsky had "significant" or "substantial" interests in the parties to the arbitration, as is required by the evident partiality standard in this circuit. *See*

149

*Republic of Argentina*, 894 F.3d at 334-35. In fact, Dr. Andresen
never alleges that Arbitrator Janofsky had any "degree of
interest" in the parties, let alone "a trivial interest" or
"remote" "connection" to them, which would still have been
insufficient "to satisfy the [FAA's] high standard of proof" for
demonstrating evident partiality on the part of an arbitrator.
*Id.* at 335-37. Instead of advancing facts indicative of
Arbitrator Janofsky's interests in either IntePros or Dr.
Andresen as an arbitration party that could "set[] out a factual
basis for concluding that [Arbitrator Janofsky] acted with
improper motives[,]" *Hammad*, 638 F. Supp. 2d at 75; Dr. Andresen
dedicates the entirety of this portion of her vacatur brief to
challenging the merits of the arbitration award based on her
improper "reasonable person" standard, *see* Pl.'s Mot. to Vacate,
ECF No. 45 at 31-47. However, as IntePros correctly argues, Dr.
Andresen's "disagreements with the merits of the arbitrator's
opinion" are "not proper grounds for a petition to vacate" under
section 10(a)(2). Def.'s Opp'n to Pl.'s Mot. to Vacate & Cross-
Mot. to Confirm, ECF No. 55 at 37; *see Misco*, 484 U.S. at 36-38.

Dr. Andresen digs herself deeper into a losing argument
when she claims in her reply brief, contrary to D.C. Circuit
law, that "improper interest[s] aris[ing] from an arbitrator's
prior relationship with one of the parties . . . is irrelevant
to [her] argument under 'evident partiality.'" Pl.'s Reply to

Def.'s Opp'n to Mot. to Vacate & Opp'n to Def.'s Cross-Mot. to Confirm, ECF No. 63 at 27. To the contrary, an arbitrator's "improper interest" in the parties is the wholesale criteria for succeeding on a claim of evident partiality under the FAA. For example, on a petition for vacatur pursuant to section 10(a)(2) in *Republic of Argentina*, the D.C. Circuit analyzed the significance of the arbitrator's interest when she had served on the board of directors of a financial services company that had passively invested over two billion dollars in parties to the arbitration. *See* 894 F.3d at 333-37. The D.C. Circuit concluded that the arbitrator's interest as "a passive investor" was merely a "trivial" interest rather than "a substantial one" "creat[ing] evident partiality," and it denied the petition on that basis. *Id.* at 336-37.

Similarly, in *Al-Harbi v. Citibank, N.A.*, 85 F.3d 680 (D.C. Cir. 1996), the D.C. Circuit refused to vacate an arbitration award when the arbitrator's former law firm had previously represented a party to the arbitration on matters unrelated to the arbitration dispute because it concluded that such an insufficient interest could not "indicate improper motives on [his] part." *See id.* at 682-83; *accord Hammad*, 638 F. Supp. 2d at 75 (denying vacatur when the plaintiff failed to provide "factually-based allegations of evident partiality" or "improper motives" by the arbitrator). Thus, as IntePros states, the D.C.

Circuit "has rejected petitions to vacate awards pursuant to
[s]ection 10(a)(2) even when the movant has demonstrated some
interest on [the] part of the arbitrator[,]" Def.'s Opp'n to
Pl.'s Mot. to Vacate & Cross-Mot. to Confirm, ECF No. 55 at 37;
and here, Dr. Andresen has not provided any facts or evidence
demonstrating even the slightest of interests by Arbitrator
Janofsky in the parties to the arbitration, let alone an
"improper" one, *Republic of Argentina*, 894 F.3d at 335.

### c. Dr. Andresen's Self-Created, Non-Cognizable Theories of Evident Partiality Constitute Impermissible Challenges to the Merits of the Arbitration Award

Instead of showing that Arbitrator Janofsky had some kind
of relationship with or connection to the arbitration parties
that would indicate a "significant" interest and evident
partiality capable of vacating the arbitration award, Dr.
Andresen creates her own "unrecognized theories" of evident
partiality. Def.'s Opp'n to Pl.'s Mot. to Vacate & Cross-Mot. to
Confirm, ECF No. 55 at 38. Specifically, Dr. Andresen argues
that Arbitrator Janofsky "demonstrate[d] evident partiality in
the form of . . . confirmation bias;" "unequal weighting of the
parties' arguments," including by "drawing heavily from
[IntePros'] language and arguments over" Dr. Andresen's language
and arguments; "citing as 'facts' statements on which no
evidence exists[;]" and interpreting facts in a biased manner in

favor of IntePros "without engaging in [an] independent analysis of her own." Pl.'s Mot. to Vacate, ECF No. 45 at 31-32, 47; Pl.'s Reply to Def.'s Opp'n to Mot. to Vacate & Opp'n to Def.'s Cross-Mot. to Confirm, ECF No. 63 at 24-25.

However, Dr. Andresen does not cite a single authority to support the existence of any of these "form[s]" of evident partiality under this circuit's law. *See, e.g.*, Pl.'s Mot. to Vacate, ECF No. 45 at 32 (tentatively claiming, without legal support, that "[c]onfirmation bias is *likely* one of the most robust proofs of evident partiality to be found" (emphasis added)), 36 (claiming, without legal support, that "[a]nother example of" evident partiality is when an arbitrator "consistently" and favorably weighs one party's arguments while "disregarding" those of the other party), 40-41 (arguing that evident partiality can be "display[ed] . . . by citing as 'facts' statements on which no evidence or testimony exists" but using an inapposite case about the APA's "arbitrary and capricious" standard to do so); Pl.'s Reply to Def.'s Opp'n to Mot. to Vacate & Opp'n to Def.'s Cross-Mot. to Confirm, ECF No. 63 at 24-25 (relisting her theories of evident partiality, again devoid of legal support or citation).

Rather, a close look at the lengthy portion of Dr. Andresen's brief elaborating on her section 10(a)(2) theories demonstrates that it merely replicates full passages from the

arbitration award in an attempt to challenge the reasoning and
the arbitrator's factual findings and legal conclusions;
"revisit[s]" arguments from "her papers" and testimony in
arbitration on which she already lost; and weaves in arguments
from earlier sections of her vacatur motion which the Court has
by now rejected.[31] *See* Pl.'s Mot. to Vacate, ECF No. 45 at 32-47.
IntePros provides a bulleted summary of Arbitrator Janofsky's
"findings and conclusions" that Dr. Andresen improperly disputes
pursuant to section 10(a)(2) of the FAA, including Arbitrator
Janofsky's conclusions regarding Dr. Andresen's work hours, her
opportunities for profit or loss, her lack of contact with
IntePros personnel, her negotiation with IntePros over the terms
of the subcontract, the nature of her work, the nature of

---

[31] For example, Dr. Andresen claims in a footnote, in a
conclusory manner and without legal support, that the existence
of confirmation bias indicates, in addition to evident
partiality under section 10(a)(2), that the "arbitrators do
their jobs imperfectly under [section] 10(a)(4)[.]" Pl.'s Mot.
to Vacate, ECF No. 45 at 32 n.36. However, the Court has already
rejected Dr. Andresen's arguments for vacatur pursuant to 9
U.S.C. § 10(a)(4), *see supra* section IV.C.1.; and in any event,
it "need not consider cursory arguments made only in a
footnote," *Hutchins v. Dist. of Columbia*, 188 F.3d 531, 539 n.3
(D.C. Cir. 1999); *see also CTS Corp. v. EPA*, 759 F.3d 52, 64
(D.C. Cir. 2014) (stating that "[a] footnote is no place to make
a substantive legal argument"). The same conclusion applies to
Dr. Andresen's footnote argument that the "arbitrary and
capricious" standard, whose application she argued for in the
context of section 10(a)(3), should also apply in analyzing
"bias and evident partiality," Pl.'s Mot. to Vacate, ECF No. 45
at 40 n.40; especially since the Court has already rejected the
use of this standard for "illuminating" the FAA's various
grounds for vacatur, *see supra* section IV.C.2.a.i.

IntePros' recruitment of Dr. Andresen, the requirement that Dr. Andresen provide and maintain her own business insurance, and IntePros' lack of control over the means and manner of Dr. Andresen's work performance. *See* Def.'s Opp'n to Pl.'s Mot. to Vacate & Cross-Mot. to Confirm, ECF No. 55 at 38-40 (comparing the challenges advanced in Dr. Andresen's vacatur petition with IntePros' arguments on these same subjects from its arbitration Phase One dispositive motion briefings); *see also* Pl.'s Mot. to Vacate, ECF No. 45 at 32-47 (providing many arguments for challenging the substance of the arbitrator's factual and legal conclusions).

IntePros' bulleted summary shows that instead of Dr. Andresen's various arguments being legally cognizable ways to demonstrate evident partiality under section 10(a)(2), they merely "constitute impermissible challenges to the merits of the arbitrator's award." Def.'s Opp'n to Pl.'s Mot. to Vacate & Cross-Mot. to Confirm, ECF No. 55 at 38. As noted throughout this Memorandum Opinion, the Court is not permitted to revisit the merits of arbitration awards, and it must uphold an award even if it rests on factual or legal errors, *see Misco*, 484 U.S. at 36-38; and "even if it offered no explanation at all because the alternative, requiring a particular level of detail for every response to each party's theories, would unjustifiably undermine the speed and thrift sought from arbitration

proceedings[,]" *Republic of Argentina*, 894 F.3d at 338 (citation and internal quotation marks omitted).

Accordingly, the Court declines to delve into a reconsideration of the substance of the numerous arbitration award conclusions that Dr. Andresen now disputes in-depth based on her non-cognizable theories of evident partiality, especially since her "only argument seems to be that, because [she] did not get the result [she] wanted, the only possible explanation must be that the [arbitrator] elected to base [her] decision solely on [the other party's arguments and] alleged misstatements." *See ARMA, S.R.O.*, 961 F. Supp. 2d at 265-66 (denying the petitioner's vacatur motion after finding its many "sundry complaints" with the arbitrator's conduct to be "so trivial that an extended analysis [was] not warranted"). As such, there is no basis for the Court to vacate the arbitration award pursuant to section 10(a)(2) of the FAA.

### 4. The Arbitrator's Award Does Not Violate Public Policy Pursuant to General Common Law

Dr. Andresen's final argument for vacatur of the arbitration award is that considerations of public policy make the award unenforceable. *See* Pl.'s Mot. to Vacate, ECF No. 45 at 47-52. Specifically, she argues that it is a "'[p]ublic law' right[]" pursuant to various federal laws that employers cannot discriminate or retaliate against their workers, and thus, any

employment contract that, by its terms, takes away this right or makes it waivable violates public policy. *Id.* at 48. Using this statement as a starting point, Dr. Andresen then argues that the arbitration award, which concluded, as a Phase One threshold determination, that she was an "independent contractor" and not IntePros' "employee" for purposes of disallowing her claims under the ADEA, Title VII, the FLSA, and the NDAA from moving forward to the merits, *see* Award, Ex. 2 to Def.'s Mot. to Dismiss, ECF No. 35-2 at 3-9, 11; cannot stand because it "compels [IntePros] to violate clear public policy . . . since it requires [IntePros] to withhold from [her] the [whistleblower] protections Congress intends for her to have under the NDAA against retaliation for making protected disclosures to the DoD IG" and "to withhold anti-discrimination protections [under Title VII and the ADEA] from anyone improperly classified as an independent contractor[,]" Pl.'s Mot. to Vacate, ECF No. 45 at 50-51. In other words, according to Dr. Andresen, the arbitration award violates public policy because its conclusion signifies that workers who "accept independent contractor status instead of employee status" can "lose their statutory protections simply because they signed independent contractor agreements." *Id.* at 51-52. As such, Dr. Andresen claims that in addition to "fall[ing] within the scope of multiple, statutory bases for vacatur" under the FAA, the

award can also be vacated "according to the public policy exception found in common law." *Id.* at 52.

IntePros counters that "[n]one of the authorities cited by Dr. Andresen . . . demonstrate[] that the 'public policy' basis for vacatur is still recognized" following the Supreme Court's 2008 decision in *Hall Street Associates, LLC v. Mattel, Inc.*, 552 U.S. 576, 128 S. Ct. 1396, 170 L. Ed. 2d 254 (2008), which emphasized "the exclusivity of the grounds set forth in [s]ection 10 to vacate an arbitration award under the FAA." Def.'s Opp'n to Pl.'s Mot. to Vacate & Cross-Mot. to Confirm, ECF No. 55 at 40. And, "[i]n any event," IntePros argues that Dr. Andresen's public policy arguments must fail because they are actually only challenges regarding the already-determined arbitrability of her NDAA, Title VII, and ADEA claims, and to "the merits of the arbitrator's decision[,]" in which Arbitrator Janofsky engaged in "a reasoned analysis of whether Dr. Andresen was an employee or not under the [governing] laws" and their standards. *Id.* at 40-41.

The Court begins by assessing and accepting the validity of Dr. Andresen's public policy exception as a reason for vacatur of an arbitration award under common law. The Supreme Court has recognized that a court may refuse to enforce an arbitrator's award under a contract, specifically under a collective bargaining agreement, as "contrary to public policy," because it

"is a specific application of the more general doctrine, rooted in the common law, that a court may refuse to enforce contracts that violate law or public policy." *Misco*, 484 U.S. at 42 (citing *W.R. Grace & Co. v. Local Union 759, Int'l Union of the United Rubber, Cork, Linoleum, & Plastic Workers of Am.*, 461 U.S. 757, 766, 103 S. Ct. 2177, 76 L. Ed. 2d 298 (1983) ("If the contract as interpreted by [the arbitrator] violates some explicit public policy, [courts] are obliged to refrain from enforcing it."); *Hurd v. Hodge*, 334 U.S. 24, 34-35, 68 S. Ct. 847, 92 L. Ed. 1187 (1948)); *see also Prestige Ford v. Ford Dealer Computer Servs., Inc.*, 324 F.3d 391, 396 (5th Cir. 2003) (following "the Supreme Court's lead" in recognizing "some circumstances in which a court may refuse to enforce an arbitration award that is contrary to public policy"), *cert. denied*, 540 U.S. 878, 124 S. Ct. 281, 157 L. Ed. 2d 141 (2003); *Nat'l Football League Players Ass'n v. Pro-Football, Inc.*, 857 F. Supp. 71, 75 (D.D.C. 1994) ("Decisions of arbitrators are given deference even if the arbitrator makes errors of fact and law, unless the arbitrator's award 'compels the violation of law or conduct contrary to accepted public policy.'" (quoting *Washington-Balt. Newspaper Guild, Local 35 v. Washington Post Co.*, 442 F.2d 1234, 1239 (D.C. Cir. 1971))), *vacated*, 56 F.3d 1525 (D.C. Cir. 1995), *aff'd in part and vacated in part on reh'g*, 79 F.3d 1215 (D.C. Cir. 1996). This public policy

exception "derives from the basic notion that no court will lend its aid to one who founds a cause of action upon an immoral or illegal act[.]" *Misco*, 484 U.S. at 42.[32]

However, "[s]uch public policy arguments, much like Hail Mary passes [in NFL football], are usually unsuccessful." *See Nat'l Football League*, 857 F. Supp. at 75-76 (calling public policy "the 'Hail Mary' of challenges to an arbitrator's decision"). This is because "a court's refusal to enforce an arbitrator's *interpretation* of [the relevant] contract[] is limited to situations where the contract as interpreted would violate 'some explicit public policy' that is 'well defined and dominant, and is to be ascertained 'by reference to the laws and

---

[32] The Court therefore rejects IntePros' counter argument that Dr. Andresen has failed to "demonstrate[] that the 'public policy' basis for vacatur is still recognized." Def.'s Opp'n to Pl.'s Mot. to Vacate & Cross-Mot. to Confirm, ECF No. 55 at 40. While the Court agrees with IntePros that the Supreme Court's decision in *Hall Street Associates, LLC v. Mattel, Inc.*, 552 U.S. 576, 128 S. Ct. 1396, 170 L. Ed. 2d 254 (2008) "stresse[d] the exclusivity of the grounds set forth in [s]ection 10 to vacate an arbitration award under the FAA[,]" Def.'s Opp'n to Pl.'s Mot. to Vacate & Cross-Mot. to Confirm, ECF No. 55 at 40; *see Hall St.*, 552 U.S. at 586-90 (concluding that FAA sections 10 and 11 "provide exclusive regimes for the review provided by the statute"); Dr. Andresen is not arguing that the public policy exception comes from the FAA. Rather, she argues that it "derives from common law." Pl.'s Reply to Def.'s Opp'n to Mot. to Vacate & Opp'n to Def.'s Cross-Mot. to Confirm, ECF No. 63 at 28. And, *Hall Street* specifically states that the Supreme Court was "speak[ing] only to the scope of . . . judicial review under §§ 9, 10, and 11 [of the FAA], [whilst] deciding nothing about other possible avenues for judicial enforcement of arbitration awards" outside of the FAA. 552 U.S. at 590.

legal precedents and not from general consideration of supposed public interests.'" *Misco*, 484 U.S. at 43 (citing *W.R. Grace*, 461 U.S. at 766 (quoting *Muschany v. United States*, 324 U.S. 49, 66, 65 S. Ct. 442, 89 L. Ed. 744 (1945))). Thus, for a court to refuse to enforce an arbitration award as contrary to public policy, the award must create an "explicit conflict with other 'laws and legal precedents'" as opposed to general public interests, and the violation of the alleged public policy "must be clearly shown." *Id.* (quoting *W.R. Grace*, 461 U.S. at 766); *see also Seymour v. Blue Cross/Blue Shield*, 988 F.2d 1020, 1025 (10th Cir. 1993) (stating that "a public policy violation sufficient to overturn [an] arbitrator's award" must amount to a violation of "a clearly expressed law").

Here, Dr. Andresen argues that the award creates an "explicit conflict" with the 2013 version of the NDAA, Title VII, and the ADEA because she contends that since it classified her as an independent contractor after failing to "consider economic realities," the award therefore "compels" IntePros to withhold from her the protections Congress "intends for her to have under" those statutes. *See* Pl.'s Mot. to Vacate, ECF No. 45 at 50-52; Pl.'s Reply to Def.'s Opp'n to Mot. to Vacate & Opp'n to Def.'s Cross-Mot. to Confirm, ECF No. 63 at 29. While "[v]oluntary compliance with" federal statutes "is an important public policy[,]" enforcement of Arbitrator Janofsky's

161

arbitration award "will not inappropriately affect this public policy[,]" *W.R. Grace*, 461 U.S. at 770-71; because all of these statutes "provide redress only for employees, and not for independent contractors[,]" Award, Ex. 2 to Def.'s Mot. to Dismiss, ECF No. 35-2 at 3; *see, e.g., Khaksari v. Chairman, Broad. Bd. of Governors*, 689 F. Supp. 2d 87, 91 (D.D.C. 2010) (explaining that "[i]ndependent contractors are not protected under either" Title VII or the ADEA, but employees are); *Wykosky v. ATCS, PLLC*, No. 22-1881, 2023 WL 4547992, at *3 (D.D.C. July 14, 2023) (stating that only employees, as opposed to independent contractors, are "covered by the" NDAA).

Pursuant to this threshold statutory requirement for advancing claims under the NDAA, Title VII, and the ADEA, Arbitrator Janofsky correctly engaged in an assessment of "the true nature of [Dr. Andresen's] employment" with IntePros and applied "the tests set out" under the various "federal anti-discrimination statutes," including the "most important factor"— "the extent of the employer's right to control the 'means and manner' of the worker's performance"—to "conclude as a matter of law that, although [Dr. Andresen's] engagement had some features found in an employer-employee relationship, it had more of the features of an independent contractor relationship[.]" Award, Ex. 2 to Def.'s Mot. to Dismiss, ECF No. 35-2 at 5; *Khaksari*, 689 F. Supp. 2d at 91. This assessment represents "a reasoned

analysis" of the primary Phase One issue that was the "central thrust of the Award." Def.'s Opp'n to Pl.'s Mot. to Vacate & Cross-Mot. to Confirm, ECF No. 55 at 41. Therefore, contrary to her claims now, Dr. Andresen is not legally entitled to the statutory anti-discrimination and anti-retaliatory whistleblower protections collectively provided by the NDAA, Title VII, and the ADEA, and as a result, no violation of "an explicit, well-defined and dominant public policy" is compelled by the arbitration award. *Prestige Ford*, 324 F.3d at 396; *Misco*, 484 U.S. at 43; *see also E. Associated Coal Corp.*, 531 U.S. at 66 (rejecting a public policy claim when the arbitration award "violate[d] no specific provision of any law or regulation").

Thus, rather than demonstrate a violation of a clearly established public policy like that inherent in an applicable federal statute, Dr. Andresen uses this common law basis for vacatur to inappropriately challenge the merits of Arbitrator Janofsky's determination that Dr. Andresen was an independent contractor and not IntePros' employee. As she states, "[t]he Award compels a public policy violation because of the way it is incorrect," and she urges the Court to "evaluate the merits of [the] arbitral decision" on this basis. Pl.'s Reply to Def.'s Opp'n to Mot. to Vacate & Opp'n to Def.'s Cross-Mot. to Confirm, ECF No. 63 at 29, 29 n.31 (emphasis in original); Pl.'s Mot. to Vacate, ECF No. 45 at 52. Such an argument "fall[s] well short

of establishing" any violation of an explicit public policy as required by the public policy exception,[33] *Prestige Ford*, 324 F.3d at 396; and "[i]n fact, enforcing the award here should encourage . . . voluntary compliance with federal employment discrimination law[,]" *W.R. Grace*, 461 U.S. at 771; because it is the law that such statutes apply only to employees and not independent contractors.[34] Instead, Dr. Andresen's challenge to

---

[33] So too does Dr. Andresen's argument that the award "directly contradicts this Court's Opinion" fail to establish vacatur pursuant to public policy grounds. *See* Pl.'s Reply to Def.'s Opp'n to Mot. to Vacate & Opp'n to Def.'s Cross-Mot. to Confirm, ECF No. 63 at 7, 30. Although the Court stated in its earlier Memorandum Opinion granting IntePros' motion to compel arbitration that Dr. Andresen's "status vis-à-vis IntePros [was] sufficiently analogous to the status of the employee in *Cole* [*v. Burns International Security Services*, 105 F.3d 1465 (D.C. Cir. 1997)] vis-à-vis his employer to categorize Dr. Andresen as an 'employee' as that term was understood in *Cole*[,]" *Andresen v. IntePros Fed., Inc.*, 240 F. Supp. 3d 143, 153 n.5 (D.D.C. 2017); this statement was made in a footnote to the Court's discussion of *Cole*'s "per se rule that arbitration agreements that contemplate an employee paying arbitral expenses other than those analogous to federal court filing fees and administrative expenses are unenforceable unless the arbitrator's fees are paid by the employer[,]" *id.* at 152. Therefore, it is inapplicable to Arbitrator Janofsky's analysis "on the threshold issue of [Dr. Andresen's] status as either an employee or independent contractor" under the relevant tests and federal statutes named in Dr. Andresen's Statement of Claims. Award, Ex. 2 to Def.'s Mot. to Dismiss, ECF No. 35-2 at 3.

[34] Although Dr. Andresen directs the Court to a case from this district court, which stated that the defendants' public policy argument was "intertwined with the merits" of the arbitrator's decision, that situation is not analogous to the instant case. *See* Pl.'s Reply to Def.'s Opp'n to Mot. to Vacate & Opp'n to Def.'s Cross-Mot. to Confirm, ECF No. 63 at 28; *Nat'l Football League Players Ass'n v. Pro-Football, Inc.*, 857 F. Supp. 71, 76 (D.D.C. 1994). In that case, the district court judge found that the defendants had presented a credible public policy argument

the correctness of Arbitrator Janofsky's analysis of her
employment status—veiled as a public policy challenge—must fail
because "courts are forbidden to use imprecise notions of public
policy which would allow ill-defined considerations to negate
the rule favoring judicial deference." *Gulf Coast Indus. Workers
Union v. Exxon Co., U.S.A.*, 991 F.2d 244, 249 (5th Cir. 1993)
(citing *Misco*, 484 U.S. at 43), *cert. denied*, 510 U.S. 965, 114
S. Ct. 441, 126 L. Ed. 2d 375 (1993). To allow Dr. Andresen to
generically invoke public policy concerns based solely on her
disagreements with Arbitrator Janofsky's conclusions would be to
"sanction a broad judicial power to set aside arbitration awards
as against public policy[,]" *Misco*, 484 U.S. at 43; which the
Court is not permitted to do pursuant to the "narrow" parameters
of this common law doctrine as described in Supreme Court
precedent, *E. Associated Coal Corp.*, 531 U.S. at 63.[35]

---

"based upon the law of Virginia" and concluded that it must
"review the merits of the arbitrator's decision *de novo* in order
to determine whether or not it compel[led] a violation of
Virginia law." *Id.* at 76. Here, however, Dr. Andresen has not
shown that the arbitration award contemplates a violation of the
2013 NDAA, Title VII, or the ADEA, as none of their protections
apply to independent contractors. Therefore, since the award
does not compel any public policy violation, there is no similar
basis here for the Court to review its merits.
[35] The Court thus concludes that it is unnecessary to consider
IntePros' contention that Dr. Andresen's public policy arguments
must fail because they are "in substance" "no more than"
challenges regarding the arbitrability of her NDAA, Title VII,
and ADEA claims. *See* Def.'s Opp'n to Pl.'s Mot. to Vacate &
Cross-Mot. to Confirm, ECF No. 55 at 40-41. Furthermore, the
Court agrees with Dr. Andresen that "[i]t is unclear" how

Ultimately, because Dr. Andresen has not demonstrated a valid or appropriate basis for vacating the arbitration award pursuant to 9 U.S.C. § 10 of the FAA or the public policy exception found in common law, the Court **DENIES** her petition for vacatur. *See* ECF No. 45.[36]

### 5. Because Dr. Andresen Has Not Shown That Vacatur Is Proper, the Court Grants IntePros' Cross-Motion to Confirm the Arbitration Award

Because Dr. Andresen's vacatur petition fails, the Court next turns to IntePros' cross-motion to confirm the arbitration award. IntePros moves for confirmation of the award pursuant to section 9 of the FAA, *see* Def.'s Opp'n to Pl.'s Mot. to Vacate & Cross-Mot. to Confirm, ECF No. 55 at 41-43; which states:

> If the parties in their agreement have agreed that a judgment of the court shall be entered upon the award made pursuant to the arbitration, and shall specify the court, then at any time within one year after the award is made any party to the arbitration may apply to the court so specified for an order confirming the award, and thereupon the court must grant

---

IntePros read her public policy arguments "as referring primarily to issues of arbitrability." Pl.'s Reply to Def.'s Opp'n to Mot. to Vacate & Opp'n to Def.'s Cross-Mot. to Confirm, ECF No. 63 at 29 n.32.

[36] In a footnote to her vacatur petition, Dr. Andresen states that she wishes to reassert her D.C. law claims under the DCHRA and the DCWPCL. Pl.'s Mot. to Vacate, ECF No. 45 at 8 n.3. Not only is a vacatur motion an inappropriate place for Dr. Andresen to attempt this, but also, as already discussed, she voluntarily dismissed these claims with prejudice in a consent order during arbitration, *see* Ex. 1 to Def.'s Mot. to Dismiss, ECF No. 35-1 at 2; and she has "not set forth any grounds challenging that consent order" in her motion to vacate, Def.'s Opp'n to Pl.'s Mot. to Vacate & Cross-Mot. to Confirm, ECF No. 55 at 8.

> such an order unless the award is vacated,
> modified, or corrected as prescribed in
> sections 10 and 11 of this title. If no court
> is specified in the agreement of the parties,
> then such application may be made to the
> United States court in and for the district
> within which such award was made.

9 U.S.C. § 9. The Supreme Court has interpreted this provision
to conclude that "[o]n application for an order confirming [an]
arbitration award, the court 'must grant' the order 'unless the
award is vacated, modified, or corrected,'" and it has stated
that "[t]here is nothing malleable about 'must grant,' which
unequivocally tells courts to grant confirmation in all cases,
except when one of the 'prescribed' exceptions applies." *Hall
St.*, 552 U.S. at 587; *see also Int'l Thunderbird Gaming Corp. v.
United Mexican States*, 473 F. Supp. 2d 80, 83 (D.D.C. 2007)
("[I]n the absence of a legal basis to vacate, this court has no
discretion but to confirm the award." (citing 9 U.S.C. § 9)),
*aff'd*, 255 F. App'x 531 (D.C. Cir. 2007).

Here, the parties' arbitration agreement specifies that
"[t]he arbitration award shall be final and binding upon the
parties[,] and judgment thereon may be entered in any court
having jurisdiction thereof." Sub Contractor Agreement,
Provision 9(f), Ex. A, ECF No. 12-1 at 6. Furthermore, the award
represents a "final" award subject to judicial confirmation. *See*
Award, Ex. 2 to Def.'s Mot. to Dismiss, ECF No. 35-2 at 11
("This award is in full satisfaction of all claims presented by

the parties in this arbitration."); *Michaels v. Mariforum Shipping, S.A.*, 624 F.2d 411, 413 (2d Cir. 1980) ("In order to be 'final,' an arbitration award must be intended by the arbitrators to be their complete determination of all claims submitted to them.").[37] Therefore, "[u]nder the plain language of 9 U.S.C. § 9, [the parties'] agreement permits [IntePros] to apply to the United States court in and for the district within which the award was made for confirmation of the award." *Owen-Williams*, 717 F. Supp. 2d at 21. Although the arbitration hearing took place telephonically, Award, Ex. 2 to Def.'s Mot. to Dismiss, ECF No. 35-2 at 3; the agreed upon locale for the hearing was Washington, D.C., *see* Exs. R & S to Pl.'s Opp'n to Mot. to Dismiss & Cross-Mot. to Litigate, ECF Nos. 37-20 at 1, 37-21 at 1 (determination by the AAA that "this matter shall be conducted in the original locale of Washington, D.C."). In addition, the Court has already determined that it has

---

[37] Dr. Andresen argues, via two sentences in a footnote, that Arbitrator Janofsky failed to make "a final award on the subject matter of the arbitration," and that this is a basis for vacatur pursuant to 9 U.S.C. § 10(a)(4) of the FAA. Pl.'s Mot. to Vacate, ECF No. 45 at 19 n.15. The Court declines to consider this unsupported argument made only in a footnote. *See Hutchins v. Dist. of Columbia*, 188 F.3d 531, 539 n.3 (D.C. Cir. 1999); *CTS Corp. v. EPA*, 759 F.3d 52, 64 (D.C. Cir. 2014); *White v. Four Seasons Hotel & Resorts*, 244 F. Supp. 3d 1, 5 (D.D.C. 2017). Regardless, the Court agrees with IntePros that "this argument is self-defeating[,] as it would leave the [C]ourt without jurisdiction to review [Dr. Andresen's vacatur] Petition." Def.'s Opp'n to Pl.'s Mot. to Vacate & Cross-Mot. to Confirm, ECF No. 55 at 42 n.15.

jurisdiction to simultaneously review IntePros' motion to dismiss, alongside Dr. Andresen's vacatur petition and IntePros' cross-motion for confirmation. *See supra* section IV.A.3; *see also Smiga*, 766 F.2d at 705 ("[A] court which orders arbitration retains jurisdiction to determine any subsequent application involving the same agreement to arbitrate, including a motion to confirm an arbitration award."). Thus, IntePros' "application for confirmation of the award to this Court is [ ] proper." *Owen-Williams*, 717 F. Supp. 2d at 21.

Furthermore, the Court has discussed and rejected each of Dr. Andresen's grounds for vacatur of the arbitration award, and Dr. Andresen has not asserted any grounds for modification. Because she "has not demonstrated that the arbitration award must be vacated or modified, the Supreme Court has made clear that this Court 'must grant' [IntePros'] application for an order confirming the arbitration award." *Id.* at 21 (citing *Hall St.*, 552 U.S. at 587). Accordingly, the Court **GRANTS** IntePros' cross-motion for confirmation of the arbitration award pursuant to 9 U.S.C. § 9, *see* ECF No. 55; and hereby confirms the award. Given this conclusion and in conjunction with its above reasoning, the Court also officially **GRANTS** IntePros' motion to dismiss. *See* ECF No. 35. Moreover, the Court dismisses this case and Dr. Andresen's stayed claims with prejudice so as to prevent Dr. Andresen from further attempting to circumvent the

arbitration outcome and revive her failed claims, which would "result[] in a repetitious waste of resources and time on the part of the parties" and the Court, *Barnes*, 42 F. Supp. 3d at 120; and would undermine "arbitration's essential virtue of resolving disputes straightaway[,]" *Hall St.*, 552 U.S. at 588. As such, the Court lastly **DENIES** as moot Dr. Andresen's motion to lift the stay in this action. *See* ECF No. 70.

### D. IntePros' Request for Time to Pursue Sanctions and an Award of Attorney's Fees and Costs Against Dr. Andresen

Finally, IntePros has requested in its various briefings that it be given two weeks after the dismissal of this case to pursue sanctions and reasonable attorney's fees and costs against Dr. Andresen related to opposing her vacatur petition, her cross-motion to litigate in opposition to IntePros' motion to dismiss, and her motion for leave to file a SAC because it contends that they "are without merit and should have never been pursued." *See* Def.'s Opp'n to Pl.'s Mot. to Vacate & Cross-Mot. to Confirm, ECF No. 55 at 43; Def.'s Mot. to Dismiss, ECF No. 35 at 6-7; Def.'s Opp'n to Pl.'s Mot. to File SAC, ECF No. 49 at 23. IntePros contends that even though she is a *pro se* litigant, Dr. Andresen "is well-aware of the costs caused by her litigiousness, [and] will make sprawling, meritless legal arguments in a specious effort to sustain her claims." Def.'s Mot. to Dismiss Reply & Opp'n to Cross-Mot. to Litigate, ECF No.

170

43 at 27. Dr. Andresen opposes IntePros' request for time to pursue sanctions and attorney's fees and costs, stating that she "has diligently read a significant amount of caselaw to find a legal path forward, and nothing about her effort has been frivolous." Pl.'s Reply to Def.'s Opp'n to Mot. to Vacate & Opp'n to Def.'s Cross-Mot. to Confirm, ECF No. 63 at 30.

Pursuant to Federal Rule of Civil Procedure 54, IntePros' claim for attorney's fees and costs "must be made by motion . . . no later than 14 days after the entry of judgment;" "specify the judgment and the statute, rule, or other grounds entitling [IntePros] to the award;" "state the amount sought or provide a fair estimate of it;" and "disclose, if the court so orders, the terms of any agreement about fees for the services for which the claim is made." Fed. R. Civ. P. 54(d)(2)(B)(i)-(iv); *see also* LCvR 54.2(a) (stating that if the district court does not enter an order and schedule a post-judgment status conference regarding the determination of attorney's fees, then "the parties are to proceed with motions for attorney's fees pursuant to Fed. R. Civ. P. 54(d)(2)"). Similarly, a motion for sanctions pursuant to Federal Rule of Civil Procedure 11 "must be made separately from any other motion and must describe the specific conduct that allegedly violates Rule 11(b)." Fed. R. Civ. P. 11(c)(2).

Therefore, pursuant to the governing local and federal rules, IntePros may request attorney's fees and costs and/or move for sanctions by no later than 14 days from the entry of judgment in this case.

## V.   Conclusion

The Court concludes by reiterating that "the scope of judicial review of an arbitrator's decision is the 'narrowest known in the law.'" *Nat'l Football League*, 857 F. Supp. at 75 (quoting *S. Pac. Transp. Co. v. United Transp. Union*, 789 F. Supp. 9, 13 (D.D.C. 1992)). "[W]hen parties agree to arbitration, they agree to accept whatever reasonable uncertainties may arise from the process[,]" and "[u]ndoubtedly one party will emerge from an arbitration feeling that they were in some way shortchanged. That, however, does not alter or affect the limited role of the courts in reviewing arbitration awards." *Prestige Ford*, 324 F.3d at 397.

Accordingly, for the foregoing reasons, the Court **GRANTS** IntePros' motion to dismiss, ECF No. 35; **DENIES** Dr. Andresen's cross-motion to permit litigation of her two retaliation claims in this district court, ECF No. 38; **DENIES** Dr. Andresen's motion for leave to file a SAC, ECF No. 42—which includes **DENYING** her motion for an extension of time to file her reply to IntePros' opposition to her motion to amend the complaint, ECF No. 60, and **GRANTING** IntePros' cross-motion to strike this untimely reply,

ECF No. 58; **DENIES** Dr. Andresen's motion to vacate the arbitration award, ECF No. 45; **GRANTS** IntePros' cross-motion to confirm the arbitration award, ECF No. 55; and **DENIES AS MOOT** Dr. Andresen's motion to lift the stay in this action, ECF No. 70. An appropriate Order accompanies this Memorandum Opinion.

      **SO ORDERED.**


     **Signed:**    **Emmet G. Sullivan**
               **United States District Judge**
               **September 12, 2024**